IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEBRASKA

| | |
|---|---|
| NICHOLE WALKINSHAW, ) <br> TYSHA BRYANT, ) <br> APRIL ENDICOTT, ) <br> HEATHER NABITY, ) <br> MEGHAN MARTIN, ) <br> ALANDREA ELLWANGER ) <br> TROY STAUFFER, and all other similarly ) <br> situated former or current employees of ) <br> Defendant. ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> CATHOLIC HEALTH INITIATIVES, ) <br> ) <br> Defendant. ) | Case No. <br><br> COMPLAINT and <br> DEMAND FOR JURY TRIAL |

COMES NOW the Plaintiffs, by and through their attorneys, and for all others similarly situated to the Plaintiffs and for their causes of action against the Defendant states as follows:

1. This is an action seeking redress for the violation of the rights guaranteed to Plaintiffs and all others similarly situated by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et. seq.*, the Nebraska Wage and Hour Act (WHA), Neb. Rev. Stat. §48-1201 *et. seq.*, and the Nebraska Wage Payment and Collection Act (NWPCA), Neb. Rev. Stat. §48-1228 *et. seq.*. Pursuant to Neb. Rev. Stat. §48-1206(5), an action to recover unpaid wages may be maintained in any court of competent jurisdiction by any one or more employees for and on behalf of himself, herself, or themselves and other employees similarly situated.

2. This Court has original jurisdiction over the federal law claims and pendent jurisdiction over the claims arising under Nebraska law.

3. Plaintiffs are all residents of the State of Nebraska.

4. Defendant Catholic Health Initiatives (CHI) is a foreign corporation licensed to do business and was doing business in Nebraska at all times alleged herein. CHI is headquartered in Englewood, Colorado. CHI owns and operates hospitals, medical facilities, clinics, and other health related businesses throughout the United States of America.

5. CHI has employed the named Plaintiffs and all persons similarly situated during the last four years at St. Elizabeth's hospital in Lincoln, Nebraska. St. Elizabeth's hospital is owned and operated by CHI. At all times alleged herein, CHI was engaged in interstate commerce.

6. Plaintiff Nichole Walkinshaw has been continuously employed by the Defendant and its predecessor since June 2000 through the present as an hourly rate Registered Nurse (RN) at its Lincoln, Nebraska hospital (St. Elizabeth's/CHI Health St. Elizabeth's). From April 2016 through the present, Plaintiff Walkinshaw has worked for Defendant as an Interventional Radiology Staff Nurse.

7. Since May 2016, Ms. Walkinshaw has consistently performed weekday on-call work for Defendant approximately one to two times per week (from 5:00 p.m. to 7:00 a.m. the following weekday). While performing on-call weekday work for Defendant, Ms. Walkinshaw typically responded and continues to respond to approximately zero to 3 calls, texts, or emails (or more) of varying lengths during this 14-hour shift. The on-call work performed by Ms. Walkinshaw required and continues to

require her to answer and respond to telephone calls, emails, and text messages relating to patient services and occasionally answer patient questions. From April 2016 through October 2018, Ms. Walkinshaw was paid $2.00 per hour to perform these weekday on-call services. As of November 2018, Defendant has paid Ms. Walkinshaw $3.00 per hour for 0 to 50 on-call hours worked and $4.00 per hour for 51 plus on-call hours worked.

8. Since May 2016, Ms. Walkinshaw has also performed weekend on-call work for Defendant approximately every four to six weeks. Weekend on-call work required and still requires Ms. Walkinshaw to be on-call from 5:00 p.m. Friday to 7:00 a.m. the following Monday. While performing weekend on-call work, Ms. Walkinshaw typically receives approximately 4 to 10 work related calls, emails, and/or texts messages of varying lengths. As noted in the preceding paragraph, the on-call work required and still requires Ms. Walkinshaw to answer and respond to patient related matters and occasionally speak with patients. Since May 2016, Defendant has paid Ms. Walkinshaw $2.50 per hour for each hour she was on-call between 5:00 p.m. Friday to 7:30 p.m. the following Sunday and $2.00 per hour from 7:30 p.m. Sunday to 7:00 a.m. the following Monday. Ms. Walkinshaw's work week often exceeded (and sometimes still exceeds) forty (40) hours per week when the active on-call work she performs is combined with the work she performs at the hospital.

9. Plaintiff Tysha Bryant has been continuously employed by the Defendant and its predecessor since August 2001 through the present as an hourly rate Registered Nurse (RN) at its Lincoln, Nebraska hospital (St. Elizabeth's/CHI Health St. Elizabeth's).

From September 2015 through the present, Ms. Bryant has worked for Defendant as an Interventional Radiology Staff Nurse.

10. Since October 2015, Ms. Bryant has consistently performed weekday on-call work for Defendant from every third weekday to once per week depending on staffing levels. Weekday on-call shift runs from 5:00 p.m. to 7:00 a.m. the following weekday. While performing on-call weekday work for Defendant, Ms. Bryant typically responded and still responds to approximately zero to 3 calls, texts, and/or emails (or more) of varying length during this 14-hour shift. The on-call work performed by Ms. Bryant required and still requires her to answer and respond to telephone calls, emails, and text messages relating to patient services and occasionally answer patient questions. From October 2015 through October 2018, Ms. Bryant was paid $2.00 per hour to perform these weekday on-call services. As of November 2018, Defendant has paid Ms. Bryant $3.00 per hour for 0 to 50 on-call hours worked and $4.00 per hour for 51 plus on-call hours worked.

11. Since October 2015, Ms. Bryant has also performed weekend on-call work for Defendant approximately every three to six weeks (depending on staffing levels). Weekend on-call work required and still requires Ms. Bryant to be on-call from 5:00 p.m. Friday to 7:00 a.m. the following Monday. While performing weekend on-call work, Ms. Bryant typically receives approximately 3 to 15 work related calls, texts and/or emails (or more) of varying lengths. As noted in the preceding paragraph, the on-call work required and still requires Ms. Bryant to answer and respond to patient related matters and occasionally speak with patients. Since October 2015, Defendant has paid Ms. Bryant $2.50 per hour for each hour she was on-call between 5:00 p.m. Friday to

7:30 p.m. the following Sunday and $2.00 per hour from 7:30 p.m. Sunday to 7:00 a.m. the following Monday.  Ms. Bryant's work week often exceeded (and sometimes still exceeds) forty (40) hours per week when the active on-call work she performs is combined with the work she performs at the hospital.

12.     Plaintiff April Endicott has been continuously employed by the Defendant and its predecessor since August 2005 through the present in various capacities at its Lincoln, Nebraska hospital (St. Elizabeth's/CHI Health St. Elizabeth's).  From April 2017 through the present, Ms. Endicott has worked for Defendant as an Interventional Radiology Staff Nurse.

13.     Since approximately May 2017, Ms. Endicott has consistently performed weekday on-call work for Defendant from one to two times per week depending on staffing levels. Weekday on-call shift runs from 5:00 p.m. to 7:00 a.m. the following weekday.   While performing on-call weekday work for Defendant, Ms. Endicott typically answers and responds to numerous telephone calls, texts, and/or emails of varying length during this 14-hour shift.    The on-call work performed by Ms. Endicott required and still requires her to answer and respond to telephone calls, emails, and text messages relating to patient services and occasionally answer patient questions.   From approximately May 2017 through October 2018, Ms. Endicott was paid $2.00 per hour to perform these weekday on-call services.    As of November 2018, Defendant has paid Ms. Endicott $3.00 per hour for 0 to 50 on-call hours worked and $4.00 per hour for 51 plus on-call hours worked.

14.     Since approximately May 2017 through the present, Ms. Endicott has also performed weekend on-call work for Defendant approximately every five to six weeks

(depending on staffing levels). Weekend on-call work required and still requires Ms. Endicott to be on-call from 5:00 p.m. Friday to 7:00 a.m. the following Monday. While performing weekend on-call work, Ms. Endicott typically receives anywhere from zero to dozens of work-related calls, texts and/or emails (or more) of varying lengths. As noted in the preceding paragraph, the on-call work required and still requires Ms. Endicott to answer and respond to patient related matters and occasionally speak with patients. Since approximately May 2017, Defendant paid Ms. Endicott $2.50 per hour for each hour she was on-call between 5:00 p.m. Friday to 7:30 p.m. the following Sunday and $2.00 per hour from 7:30 p.m. on Sunday to 7:00 a.m. the following Monday. Ms. Endicott's work week often exceeded (and sometimes still exceeds) forty (40) hours per week when the active on-call work she performs is combined with the work she performs at the hospital.

15. Plaintiff Heather Nabity has been employed by the Defendant and its predecessor from August 2005 through 2014 and from December 8, 2015 through the present as an hourly rate Registered Nurse (RN) at its Lincoln, Nebraska hospital (St. Elizabeth's/CHI Health St. Elizabeth's). From December 2015 through the present, Ms. Nabity has worked for Defendant as an Interventional Radiology Staff Nurse.

16. Since approximately January 2016, Ms. Nabity has consistently performed weekday on-call work for Defendant from one to two times per week depending on staffing levels. Weekday on-call shift runs from 5:00 p.m. to 7:00 a.m. the following weekday. While performing on-call weekday work for Defendant, Ms. Nabity typically answers and responds to numerous telephone calls, texts, and/or emails of varying lengths during this 14-hour shift. The on-call work performed by Ms. Nabity required and still requires her to answer and respond to telephone calls, emails, and text messages relating

to patient services and occasionally answer patient questions. From January 2016 through October 2018, Ms. Nabity was paid $2.00 per hour to perform these weekday on-call services. As of November 2018, Defendant has paid Ms. Nabity $3.00 per hour for 0 to 50 on-call hours worked and $4.00 per hour for 51 plus on-call hours worked.

17. Since approximately January 2016 through the present, Ms. Nabity has also performed weekend on-call work for Defendant approximately every four to six weeks (depending on staffing levels). Weekend on-call work requires Ms. Nabity to be on-call from 5:00 p.m. Friday to 7:00 a.m. the following Monday. While performing weekend on-call work, Ms. Nabity typically receives anywhere from one to dozens of work-related calls, texts and/or emails (or more) of varying lengths. As noted in the preceding paragraph, the on-call work required and still requires Ms. Nabity to answer and respond to patient related matters and occasionally speak with patients. Since approximately January 2016, Defendant has paid Ms. Nabity $2.50 per hour for each hour she was on-call between 5:00 p.m. Friday to 7:30 p.m. the following Sunday and $2.00 per hour from 7:30 p.m. on Sunday to 7:00 a.m. the following Monday. Ms. Nabity's work week often exceeded (and sometimes still exceeds) forty (40) hours per week when the active on-call work she performs is combined with the work she performs at the hospital.

18. Plaintiff Meghan Martin has been continuously employed by the Defendant and its predecessor since August 2016 through the present as an hourly rate Registered Nurse (RN) in the Defendant's interventional radiology department at its Lincoln, Nebraska hospital (St. Elizabeth's/CHI Health St. Elizabeth's).

19. Since approximately September 2016, Ms. Martin has consistently performed weekday on-call work for Defendant approximately one time per week. Weekday on-call shift runs from 5:00 p.m. to 7:00 a.m. the following weekday. While performing on-call weekday work for Defendant, Ms. Martin typically answers and responds to numerous telephone calls, texts, and/or emails of varying lengths during this 14-hour shift. The on-call work performed by Ms. Martin required and still requires her to answer and respond to telephone calls, emails, and text messages relating to patient services and occasionally answer patient questions. From September 2016 through October 2018, Ms. Martin was paid $2.00 per hour to perform these weekday on-call services. As of November 2018, Defendant has paid Ms. Martin $3.00 per hour for 0 to 50 on-call hours worked and $4.00 per hour for 51 plus on-call hours worked.

20. Since approximately September 2016 through the present, Ms. Martin has also performed weekend on-call work for Defendant approximately every four to six weeks (depending on staffing levels). Weekend on-call work required and still requires Ms. Martin to be on-call from 5:00 p.m. Friday to 7:00 a.m. the following Monday. While performing weekend on-call work, Ms. Martin typically receives anywhere from one to dozens of work-related calls, texts and/or emails (or more) of varying lengths. As noted in the preceding paragraph, the on-call work required and still requires Ms. Martin to answer and respond to patient related matters and occasionally speak with patients. Since approximately September 2016, Defendant has paid Ms. Martin $2.50 per hour for each hour she was on-call between 5:00 p.m. Friday to 7:30 p.m. the following Sunday and $2.00 per hour from 7:30 p.m. on Sunday to 7:00 a.m. the following Monday. Ms. Martin's work week often exceeded (and may occasionally still exceed) forty (40) hours

per week when the active on-call work she performs is combined with the work she performs at the hospital.

21.     Plaintiff Troy Stauffer was employed by Defendant and its predecessor from April 2004 through January 5, 2017 as an hourly rate Registered Nurse at its Lincoln, Nebraska hospital (St. Elizabeth's CHI Health).  From December 2013 through January 5, 2017, Mr. Stauffer was a RN in Defendant's interventional radiology department.

22.     Since approximately March 2013 through January 5, 2017, Mr. Stauffer consistently performed weekday on-call work for Defendant approximately one to four nights per week (depending on staffing levels).  Weekday on-call shift ran from 5:00 p.m. to 7:00 a.m. the following weekday.   While performing on-call weekday work for Defendant, Mr. Stauffer typically answered and responded to numerous telephone calls, texts, and/or emails of varying lengths during this 14-hour shift.   The on-call work performed by Mr. Stuaffer required him to answer and respond to telephone calls, emails, and text messages related to patient services and occasionally answer patient questions. From March 2013 through January 5, 2017, Mr. Stauffer was paid $2.00 per hour to perform these weekday on-call services.

23.     From approximately March 2013 through January 5, 2017, Mr. Stauffer also performed weekend on-call work for Defendant approximately every three to five weeks (depending on staffing levels).  Weekend on-call work required Mr. Stauffer to be on-call from 5:00 p.m. Friday to 7:00 a.m. the following Monday.   While performing weekend on-call work, Mr. Stauffer typically received anywhere from one to dozens of work-related calls, texts and/or emails (or more) of varying lengths.   As noted in the

preceding paragraph, the on-call work required Mr. Stauffer to answer and respond to patient related matters and occasionally speak with patients. From March 2013 through January 5, 2017, Defendant paid Mr. Stauffer $2.50 per hour for each hour he was on-call between 5:00 p.m. Friday to 7:30 p.m. the following Sunday and $2.00 per hour from 7:30 p.m. on Sunday to 7:00 a.m. the following Monday. Mr. Stauffer's work week often exceeded forty (40) hours per week when the active on-call work he performed was combined with the work he performed at the hospital.

24. Plaintiff Alandrea Ellwanger has been continuously employed by the Defendant and its predecessor since April 2014 through the present as an hourly rate Registered Nurse (RN) at its Lincoln, Nebraska hospital (St. Elizabeth's/CHI Health St. Elizabeth's).

25. Since approximately August 2016, Ms. Ellwanger has consistently performed RN weekday on-call work approximately one time per week in Defendant's Interventional Radiology Department. Weekday on-call shift runs from 5:00 p.m. to 7:00 a.m. the following weekday. While performing on-call weekday work for Defendant, Ms. Ellwanger typically answers and responds to numerous telephone calls, texts, and/or emails of varying lengths during this 14-hour shift. The on-call work performed by Ms. Ellwanger required and will still require her to answer and respond to telephone calls, emails, and text messages relating to patient services and occasionally answer patient questions. From August 2016 through October 2018, Ms. Ellwanger was paid $2.00 per hour to perform these weekday on-call services. As of November 2018, Defendant's policy provides that Ms. Ellwanger will be paid $3.00 per hour for 0 to 50 on-call hours worked and $4.00 per hour for 51 plus on-call hours worked.

26. Since approximately August 2016 through the present, Ms. Ellwanger has also performed weekend on-call work for Defendant approximately every four to six weeks (depending on staffing levels). Weekend on-call work required and still requires Ms. Ellwanger to be on-call from 5:00 p.m. Friday to 7:00 a.m. the following Monday. While performing weekend on-call work, Ms. Ellwanger receives anywhere from one to dozens of work-related calls, texts and/or emails (or more) of varying lengths. As noted in the preceding paragraph, the on-call work required and still requires Ms. Ellwanger to answer and respond to patient related matters and occasionally speak with patients. Since approximately August 2016, Defendant has paid Ms. Ellwanger $2.50 per hour for each hour she was on-call between 5:00 p.m. Friday to 7:30 p.m. the following Sunday and $2.00 per hour from 7:30 p.m. on Sunday to 7:00 a.m. the following Monday. As of November 2018, Defendant's policy provides that Ms. Ellwanger will be paid $3.00 per hour for 0 to 50 on-call hours worked and $4.00 per hour for 51 plus on-call hours worked. Ms. Ellwanger's work week often exceeded forty (40) hours per week when the active on-call work she performs is combined with the work she performs at the hospital.

27. In addition to the weekday and weekend on-call work performed, each of the named Plaintiffs and all other similarly situated current or former employees of the Defendant were required (and current employees are still required) to rotate (and work) holiday on-call duty. The holiday on-call shift was from 5:00 p.m. the day before the holiday commenced through 7:00 a.m. the day after the holiday concluded. Plaintiffs and all others similarly situated were paid $2.50 per hour for all on-call holiday hours worked. Although the named Plaintiffs and all others similarly situated actively took call during their assigned on-call duty, Defendant paid Plaintiffs and all similarly situated

current and former employees substantially less than the statutory minimum wage and less than their agreed upon hourly rate of pay. Defendant also failed to pay overtime wages at the rate of one and one-half times the employee's hourly rate to Plaintiffs and all other similarly situated current or former employees when the employee's combined work time exceeded forty (40) hours per week.

28. At all times alleged, the hourly rate of each of the Plaintiffs (and all others similarly situated) was well in excess of the federal statutory minimum wage of $7.25 per hour and Nebraska's minimum wage of $7.25 per hour (in 2015) and $9.00 per hour (from 2016 through the present). By paying the Plaintiffs and all other current or former employees who are similarly situated an hourly rate of between $2.00 to $4.00 per hour for on-call work performed, Defendant has violated the state and federal statutes noted herein.

29. Defendant's on-call policy required the on-call employee to: (a) provide a telephone number at which they can be reached or to carry a beeper; (b) refrain from being on-call in one department while being on-call for a different department; (c) refrain from working in one department while being on-call for a different department; (d) required the employee to report to work within 30 minutes of being called into work; (e) refrain from engaging in any conduct that would inhibit their ability to perform their work (f) be available all hours of the day or night to properly take and respond to calls and/or call back to the hospital.

30. During the time periods alleged herein, Defendant's on-call pay policy provided: "Work relating to the principal activities of a position that can be taken care of with a phone call or access to work from home will receive one and one-half times the

regular base rate [of the employee's pay] in 15-minute increments."   Defendant violated their own policies (as well as state and federal law) by paying Plaintiffs and all others similarly situated only $2.00 per hour for weekday on-call work performed and $2.50 per hour for weekend and holiday on-call work performed.

31. Defendant's failure to properly pay to the named Plaintiffs and all others similarly situated for on-call duty work performed violates the FLSA, WHA and NWPCA.  Defendant's violation of the federal and state statutes noted herein was willful.

32. The wages, compensation, and/or job-related benefits in dispute have been due and owing for more than thirty (30) days from the date that the named Plaintiffs and all others similarly situated should have been paid by Defendant for on-call work performed as described herein.

33. Upon information and belief, all others similarly situated would include all current or former hourly rate non-exempt employees who did not receive the statutory rate of pay and/or agreed upon wages for all active on-call work they performed for the Defendant from February 6, 2015 through the present at one or more of the Defendant's facilities noted below:

    a)    Saint Elizabeth Regional Medical Center;

    b)    Good Samaritan Hospital;

    c)    Saint Francis Medical Center;

    d)    Alegent Health- Bergan Mercy;

    e)    Mercy Hospital;

    f)    Alegent Health-Immanuel Medical Center;

  g)  Lakeside Hospital;

  h)  Midlands Hospital;

  i)  Nebraska Heart Hospital;

  j)  Saint Mary's Community Hospital;

  k)  Mercy-Corning Hospital;

  l)  Community Memorial Hospital;

  m)  Schuyler Memorial Hospital

  n)  Plainview Area Health System;

  o)  Lasting Hope Recovery Center;

  p)  Alegent Creighton Health;

  q)  ACH St. Joseph Mang. Care Services.

From February 6, 2015 through the present, Defendant may have wrongfully denied wages for on-call worked performed by current or former employees at other facilities Defendant owned and operated but are not specifically named above.

  34.  Pursuant to the FLSA, plaintiffs and all others similarly situated are entitled to recover from Defendant their hourly rate of pay for all actual work performed while on-call (or one and one half their hourly rate per the Defendant's policies), one and one-half times their hourly rate of pay for all work performed (including active on-call work and other work) that exceed forty (40) hours per week, liquidated damages in an amount equal to the wages recovered, pre- and post-judgment interest, attorney's fees, and costs.

  35.  Pursuant to Neb. Rev. Stat. §48-1232, Plaintiffs and all others similarly situated are due and owing wages for work performed while on-call, pre-and post-

judgment interest, attorney's fees, costs as well as an equal amount of liquidated damages payable to the Nebraska common school fund. Due to Defendant's willful conduct, double or treble damages payable to the Nebraska common school fund is appropriate.

36. All named Plaintiffs and all others similarly situated are entitled to lost wages, liquidated damages, contributions to retirement plans, pre- and post-judgment interest on wages and retirement contributions, attorney's fees, costs and any and all other relief allowed under law.

## COUNT I

The named Plaintiffs and all others similarly situated incorporate paragraphs 1 through 36 as if fully set forth herein.

37. As set forth above, Defendant has violated the Fair Labor Standards Act (FLSA) by failing to pay to Plaintiffs and all others similarly situated statutorily mandated wages, including straight time and overtime, for on-call duty work performed.

38. As a result of Defendant's illegal actions, the named Plaintiffs and all others similarly situated have sustained lost wages, contributions to retirement plans, interest on wages and retirement contributions, and have incurred attorney's fees and costs in bringing this action.

39. Liquidated damages are appropriate under the FLSA.

## COUNT II

The named Plaintiffs and all others similarly situated incorporate paragraphs 1 through 39 as if fully set forth herein.

40. Defendant has violated the Nebraska Wage Payment and Collection Act by refusing to pay wages to the named Plaintiffs and all others similarly situated for on-call work they performed.

41. As a result of Defendant's illegal actions, the named Plaintiffs and all others similarly situated have sustained lost wages, contributions to retirement plans, pre- and post-judgment interest on wages and retirement contributions, and have incurred attorney's fees and costs in bringing this action.

42. Pursuant to Neb. Rev. Stat. §48-1232, liquidated, double, or treble damages are payable to the Nebraska public school fund are appropriate.

## COUNT III

The named Plaintiffs and all others similarly situated incorporate paragraphs 1 through 42 as if fully set forth herein.

43. Defendant has violated the Nebraska Wage Act by refusing to pay wages to the named Plaintiffs and all others similarly situated for on-call work performed.

44. Pursuant to Neb. Rev. Stat. §48-1231, the named Plaintiffs request that the claims of all other similarly situated current or former employees be included in this action.

45. As a result of Defendant's illegal actions, the named Plaintiffs and all others similarly situated have sustained lost wages, contributions to retirement plans, pre- and post-judgment interest on wages and retirement contributions, and have incurred attorney's fees and costs in bringing this action.

WHEREFORE, the named Plaintiffs and all others similarly situated respectfully request that this Court assume jurisdiction herein as to all counts alleged herein and grant the following relief:

a. Certify that a class action may be brought against the Defendant on behalf of the named Plaintiffs and all other similarly situated persons who have been employed by the Defendants since February 6, 2015 at the facilities noted herein;

b. Appoint Nichole Walkinshaw, Tysha Bryant, and Troy Stauffer to serve as co- representatives of the class of current or former employees who have had their rights violated by the Defendant.

c. Declare Defendant's conduct to be violative of the legal rights of the named Plaintiffs and all others similarly situated;

d. Direct Defendant to pay to the named Plaintiffs and all others similarly situated all back wages, retirement contributions, pre- and post-judgment interest on wages and retirement contributions that are due and owing;

e. Enjoin Defendant from engaging in such illegal conduct as noted herein;

f. Award liquidated damages to the named Plaintiffs and all others similarly situated pursuant to the FLSA;

g. Pursuant to the NWPCA, award liquidated, double and/or treble damages to the Nebraska common public school fund;

h. Enjoin Defendant from retaliating against the named Plaintiffs and all others similarly situated; and

i. Award the named Plaintiffs and all others similarly situated costs and reasonable attorney's fees and such other and further relief as the Court deems just and reasonable and appropriate to correct the wrongs done to them.

BY: s/Kathleen M. Neary_____
POWERS LAW
Kathleen M. Neary    20212
Vincent M. Powers    15866
411 South 13th Street, Suite 300
Lincoln, NE  68508
(402) 474-8000
kathleen@vpowerslaw.com
powerslaw@me.com

DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury in Lincoln, Nebraska.

s/Kathleen M. Neary____
Kathleen M. Neary