IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NICHOLE WALKINSHAW, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SAINT ELIZABETH REGIONAL MEDICAL CENTER, COMMONSPIRIT HEALTH f/k/a CATHOLIC HEALTH INITIATIVES, and CHI NEBRASKA f/k/a CHI HEALTH,<br><br>Defendants. | 4:19-CV-03012<br><br>**MEMORANDUM & ORDER** |

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Filing 46, defendant CommonSpirit Health's Motion to Dismiss for Lack of Personal Jurisdiction, Filing 44, and Plaintiffs' Motion for Leave to Take Jurisdictional Discovery, Filing 50. For the reasons stated herein, the Court finds it has personal jurisdiction over defendant CommonSpirit and jurisdictional discovery is therefore unnecessary. The Court further finds Plaintiffs have adequately stated causes of action under the Fair Labor Standards Act, the Nebraska Wage and Hour Act, and the Nebraska Wage Payment and Collection Act and have stated a cause of action for breach of contract. Accordingly, all three motions are denied.

**I. BACKGROUND**

The following facts are those alleged in the Amended Complaint[1] and are assumed to be true for the purposes of Defendants' two pending motions. Plaintiffs consist of seven nurses

---

[1] Plaintiffs submitted a number of attachments to their brief opposing dismissal for lack of personal jurisdiction. Filing 49-1 to 49-9. "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)). Accordingly, to the extent the

1

employed at Saint Elizabeth Regional Medical Center ("SERMC"). Filing 25 at 7-8. SERMC is a Nebraska corporation and is directly owned by CHI-Nebraska d/b/a CHI-Health ("CHI-Health"). Filing 25 at 12. CHI-Health is a Nebraska corporation and, until recently, was a subsidiary of Catholic Health Initiatives ("CHI"). Filing 25 at 11. After a merger between CHI and another health system, Dignity Health, CHI-Health and SERMC became part of CommonSpirit Health ("CommonSpirit"). Filing 25 at 9. CommonSpirit is a corporation registered in Colorado and headquartered in Illinois. Filing 25 at 9.

The seven named plaintiffs, Nicole Walkinshaw, Tysha Bryant, April Endicott, Heather Nabity, Meghan Martin, Alandrea Ellwanger, and Troy Stauffer, have all worked for SERMC since at least February 2015. Filing 25 at 7-8. Since then, Defendants have followed an "On-Call Policy" which governs nurses' compensation for time spent on call. Filing 25 at 18. Pursuant to the on-call policy, nurses are required "to be available for work at times other than during their regular-scheduled shifts." Filing 25 at 18. This "On-Call Work" consists of responding to telephone calls, text messages, and emails from doctors and performing preparatory and follow-up work related to those communications. Filing 25 at 18. From February 6, 2015, until September 30, 2018, Defendants paid Plaintiffs $2.00 an hour for on-call work performed during weekdays and $2.50 per hour for on-call work on weekends. Filing 25 at 19. On June 1, 2017, Defendants adopted a written on-call policy ("2017 Policy"). Filing 25 at 19. According to the 2017 Policy, nurses were to be paid time and a half their regular rate for "[w]ork relating to the principal activities of [the] position that can be taken care of with a phone call or access to work from home."

---

attachments embrace matters beyond the scope of permissible considerations for this Motion to Dismiss, the Court has disregarded them. *See Sorace v. United States*, 788 F.3d 758, 767 (8th Cir. 2015) (quoting *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014)) ("A district court does not convert a motion to dismiss into a motion for summary judgment when, for example, it does not rely upon matters outside the pleadings in granting the motion.").

Filing 25 at 19. Despite the 2017 Policy, Plaintiffs allege they continued to be compensated for on-call work at a rate between $2.00 and $2.50 per hour. Filing 25 at 19.

In October of 2018, the on-call policy was amended ("2018 Policy"). Filing 25 at 21. The 2018 Policy had many of the same requirements as the 2017 Policy but changed on-call work compensation to "$3.00 per hour for 0 to 50 on-call hours and $4.00 per hour for 51-plus-on-call hours." Filing 25 at 21-22. The 2018 Policy was still in effect on June 24, 2019, the date of the filing of the Amended Complaint. Filing 25 at 21.

Plaintiffs bring claims against SERMC, CHI-Health, and CommonSpirit for alleged violations of the Fair Labor Standards Act (FLSA), the Nebraska Wage and Hour Act (NWHA), the Nebraska Wage Payment and Collection Act (NWPCA), and for breach of contract. Filing 25 at 47-56.

Defendants SERMC, CHI-Nebraska, and CommonSpirit filed a motion to dismiss all Plaintiffs' claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Filing 46. Defendant CommonSpirit filed a separate motion to dismiss all the claims against it for lack of personal jurisdiction. Filing 44. Plaintiffs filed a Motion for Leave to Take Jurisdictional Discovery, Filing 50, for purposes of refuting Defendants' arguments regarding lack of personal jurisdiction.

## II. ANALYSIS

### A. Standards of Review

1. *Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 192 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

2. *Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2)*

In order to defeat a motion for lack of personal jurisdiction, a plaintiff must plead "sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (alteration in original) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). When jurisdiction is at issue, "the nonmoving party need only make a prima facie showing of jurisdiction." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). The nonmoving party's prima facie showing is analyzed "not by the pleadings alone, but by the

affidavits and exhibits presented with the motions and in opposition thereto." *Dever*, 380 F.3d at 1072 (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 260 (8th Cir. 1974)). "[T]he court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Pangaea, Inc.*, 647 F.3d at 745 (quoting *Dakota Indus., Inc.*, 946 F.2d at 1387).

### B. Discussion

*1. Personal Jurisdiction over CommonSpirit*

As a preliminary matter, the Court must address whether it has jurisdiction over CommonSpirit. As a rule, Plaintiffs do not need to pass a high burden at this stage in the proceedings to establish jurisdiction over a defendant; only a prima facie case is required. *See Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (stating that for purposes of a motion to dismiss for lack of personal jurisdiction, "the plaintiff must make a prima facie showing" (citation omitted)). To assess whether a Court has personal jurisdiction over a nonresident defendant, "the Court must determine whether: (1) the requirements of the Nebraska long-arm statute are satisfied; and (2) the exercise of jurisdiction is permitted by the Due Process Clause of the Fourteenth Amendment." *Fastrich v. Cont'l Gen. Ins. Co.*, 2017 WL 3610535, at *3 (D. Neb. Aug. 21, 2017) (citing *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007)). Nebraska courts have interpreted the state's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016), to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). Thus, the Court need only determine whether the assertion of jurisdiction over CommonSpirit comports with constitutional limits.

5

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). "When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003) (citing *Helicopteros*, 466 U.S. at 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404). On the other hand, "if the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction." *Id.* (citing *Helicopteros*, 466 U.S. at 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404.) The Court reads Plaintiffs' Complaint and briefing as presenting only an argument for specific personal jurisdiction over CommonSpirit.[2]

Under either theory, "[t]he touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit. *Pecoraro*, 340 F.3d at 562 (citing *Clune v. Alimak AB*, 233 F.3d 538, 544 n.8 (8th Cir. 2000)).

---

[2] Plaintiff's Amended Complaint asserts the Court has personal jurisdiction over CommonSpirit "because Defendants transact business in and have significant contacts with this District, and because Plaintiffs' claims arise directly out of Defendants' substantial and systematic business operations in this District." Filing 25 at 4. While this could arguably be read as setting forth an argument for both general and specific personal jurisdiction, Plaintiff's brief only presents an argument in support of specific personal jurisdiction. *See* Filing 49 at 4.

The Eighth Circuit uses a five-factor test when evaluating a defendant's contacts with the forum state for purposes of determining whether personal jurisdiction exists. *Epps*, 327 F.3d at 648.

> Those five factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.

*Id.* (citing *Burlington Indus., Inc. v. Maple Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). "The first three factors are primary factors, and the remaining two factors are secondary factors." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). In making a determination, Courts should "look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *K-V Pharm.*, 648 F.3d at 592-93.

In *Epps*, the Eighth Circuit also explored another "wrinkle" in the situations where the defendant is a nonresident parent corporation. 327 F.3d at 648. The court in *Epps* explained that personal jurisdiction can be based exclusively on the activities of the nonresident corporation's in-state subsidiary, but only in situations where "the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." *Id.* at 649 (citing *Contractors, Laborers, Teamsters & Eng'rs Health Plan v. Hroch*, 757 F.2d 184, 190 (8th Cir. 1985); *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975)).

The principle stated in *Epps*, however, does not limit the exercise of personal jurisdiction over a nonresident parent corporation only to cases where the in-state subsidiary is an alter ego of the parent. In *Anderson v. Dassault Aviation*, 361 F.3d 449, 453 (8th Cir. 2004), the Eighth Circuit made clear that piercing the corporate veil under an alter-ego theory was not necessary if the

7

nonresident parent corporation had its own contacts with the forum state sufficient to establish personal jurisdiction. The Eighth Circuit held, "We conclude that [the parent company] has sufficient contacts with Arkansas to support an Arkansas court's assertion of personal jurisdiction over it whether or not [the subsidiary] is its alter ego." *Id.*

Here, all seven Plaintiffs have worked for SERMC in Nebraska during some point relevant to this litigation. Filing 25 at 7-8. SERMC is directly owned by CHI-Health. Filing 25 at 12. CHI-Health is a Nebraska corporation. Filing 25 at 11. According to the Amended Complaint, CHI-Health "created, implemented, and enforced the On-Call Policy governing the conditions and compensation of on-call time" and "directly employed the supervisors of all named Plaintiffs." Filing 25 at 12. Finally, CHI-Health was a subsidiary of CHI and is now part of CommonSpirit. Filing 25 at 11. "Within 36 months of the January 31, 2019 closing date, 'substantially all of CHI's regional and hospital corporations . . . will merge into' CommonSpirit.'" Filing 25 at 9. It is undisputed that CHI-Health is one of CommonSpirit's subsidiaries. Filing 45 at 1. According to Plaintiffs, CommonSpirit and CHI were responsible for issuing bi-monthly pay stubs to Plaintiffs and maintaining employment and compensation records for Plaintiffs. Filing 25 at 29-30.

In addressing the first factor, the nature and quality of CommonSpirit's contacts with Nebraska, Plaintiffs have pled enough facts to establish a prima facie case that CommonSpirit is subject to specific personal jurisdiction in Nebraska. For most of the timeframe alleged in the Amended Complaint, CHI was the parent company of CHI-Health. Filing 25 at 11. CHI was renamed CommonSpirit in January of 2019. Filing 25 at 5. CHI transferred its ownership of hospitals, medical facilities, clinics, and other health-related businesses throughout the country to CommonSpirit. Filing 25 at 5. CommonSpirit is the sole corporate member or controlling shareholder of CHI-Health and SERMC and employs Plaintiffs in Nebraska. Filing 25 at 10. While

8

mere ownership of a subsidiary is not enough to confer personal jurisdiction over a foreign corporation, Plaintiffs allege CommonSpirit has more involvement in Nebraska than a mere ownership interest. After the merger, CommonSpirit's operations in Nebraska continued to use the CHI name. Filing 25 at 9. CommonSpirit issued bi-monthly pay stubs to Plaintiffs. Filing 25 at 29-30. CHI and CommonSpirit have been and continue to be responsible for Plaintiffs' working hours including maintaining wage rates and hours of work performed by Plaintiffs. Filing 25 at 30.

In *Fastrich*, the parent corporation was an Ohio corporation with its principal place of business in Texas. 2017 WL 3610535, at *4. The parent corporation in *Fastrich* had "done nothing to avail itself of the Nebraska forum" other than "mere ownership" of the Nebraska-based subsidiary. *Id*. In contrast, Plaintiffs in the present case allege facts claiming that CommonSpirit was far more involved than being a mere owner of CHI-Health and SERMC. CommonSpirit appears to have some involvement in the payment and recordation of Plaintiffs' work. CommonSpirit does significant business in Nebraska which is not "fortuitous" and could have reasonably expected the nature of its contacts to give rise to liability in Nebraska.

The second and third factors, the quantity and relationship of the contacts to Plaintiffs' claims, also favors the conclusion that the District of Nebraska has personal jurisdiction over CommonSpirit. The underlying theme of Plaintiffs' claims is undercompensated overtime work. Filing 25. Plaintiffs allege that prior to the merger, CHI paid their salaries and that CommonSpirit has now taken over that duty. Filing 25 at 7, 10-11. The pleading standard under Fed. R. Civ. P. 12(b)(6) contemplates that plaintiffs will often be unable to prove definitively the elements of the claim before discovery, particularly in cases where the necessary information is within the control of the defendants. An obvious disadvantage for Plaintiffs is CommonSpirit was created less than a year ago and the amount of evidence tying it to this suit would likely be difficult to procure at

9

this time. However, the allegations and evidence support the reasonable inference that (1) prior to the merger, CHI paid the wages of nurses employed at its Nebraska hospitals and related health facilities, and (2) since the merger, CommonSpirit—which was formed by renaming CHI and through the "reorganization and renaming of CHI's current corporation"—has performed these functions. CommonSpirit, assuming it does pay the Plaintiffs, would reasonably have many contacts with Nebraska and those contacts relate to the core of this suit, thus establishing specific personal jurisdiction.

Finally, the last two factors, the interest of the forum state in providing a forum for its residents and convenience of the parties, also favor Plaintiffs. Nebraska courts have an interest in enforcing federal and state statutes designed to protect Nebraska workers as well as enforcing contracts whose breach has allegedly infringed on Nebraska citizens' rights. The convenience of the parties favors Plaintiffs as well. All the named Plaintiffs work in Nebraska. As a multi-state corporation which performs millions of dollars of business in Nebraska it cannot be said that CommonSpirit is unduly inconvenienced by litigating a suit in this forum.

Therefore, the Court determines it has specific personal jurisdiction over defendant CommonSpirit based on CommonSpirit's alleged contacts with Nebraska in relation to the subject matter of the present lawsuit. Accordingly, it is not necessary to proceed on the theory of piercing the corporate veil. *See Anderson*, 361 F.3d at 453.[3] The Court denies CommonSpirit's Motion to Dismiss under 12(b)(2).

2. *Failure to State a Claim under the FLSA*

---

[3] The Court acknowledges that discovery may reveal additional facts informing whether CommonSpirit is a proper Defendant in this case. If so, nothing in this Order precludes the parties from raising these issues in a subsequent motion.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69, 133 S. Ct. 1523, 1527, 185 L. Ed. 2d 636 (2013). It provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a)(1). Employees have a private right of action against an employer who violates the minimum-wage or overtime provisions of the Act. 29 U.S.C. § 216(b). Plaintiffs here assert Defendants violated the FLSA's overtime provision.

The level of detail necessary to adequately plead a FLSA overtime claim is a "difficult question—one that has 'divided courts around the country.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Nakahata v. N.Y.–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013)). Several courts have held that it is "sufficient to plead coverage, that the employee worked more than 40 hours in one workweek, and that the employee was not paid overtime compensation." *Hugler v. Cilantros Mexican Bar & Grill, LLC*, 2017 WL 3995543, at *3 (D. Neb. Sept. 8, 2017); *see also Sec'y of Labor v. Labbe*, 319 Fed. Appx. 761, 763-64 (11th Cir. 2008) (holding that a complaint alleging the employer was covered by the FLSA and that the employer repeatedly "fail[ed] to pay covered employees minimum hourly wages and to compensate employees who worked in excess of forty hours a week at the appropriate rates" was sufficient, even if "not overly detailed"). Under this standard, "plaintiffs are not required to allege a *particular* week in which they worked over forty hours and were not compensated for overtime." *Hugler*, 2017 WL 3995543, at *3 (citing *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017)). In contrast, other circuits have required more detail from plaintiffs asserting an FLSA

11

claim, holding that plaintiffs must allege facts demonstrating a specific week in which they worked more than forty hours and were not compensated. *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014) ("We agree with our sister circuits that in order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek.").

The Eighth Circuit has not addressed the pleading standard under the overtime provision of the FLSA. *See Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 962 (8th Cir. 2015) (noting "[t]he proper pleading standard for FLSA claims is a matter of first impression in this circuit," but declining to reach the question because the plaintiff's complaint was insufficient on other grounds). The District of Nebraska has previously taken the position that the less-detailed pleading standard applies to overtime FLSA claims. *See Hugler*, 2017 WL 3995543, at *3. Thus, Plaintiffs are required "to plead coverage, that the employee worked more than 40 hours in one workweek, and that the employee was not paid overtime compensation;" they need not plead a specific workweek in which they worked more than forty hours. *See id.*

Applying this standard, Plaintiffs' Amended Complaint sufficiently alleges facts that fulfill the required elements for a FLSA overtime claim at this stage in the proceedings. Plaintiffs allege Defendants are a covered employer and that no exemptions apply. Filing 25 at 48. Each of the seven Plaintiffs also allege that they were employed by Defendants during the timeframe of the current suit. Filing 25 at 7-8. Plaintiffs Walkinshaw, Bryant, Nabity[4], and Stauffer each allege they

---

[4] In their Amended Complaint, Plaintiffs appear to have "Copy/Pasted" paragraph 85 from paragraph 73. This is problematic because it alleges the same eight-day period for plaintiff Nabity as that alleged for plaintiff Bryant. Defendants attack this eight-day range as disqualifying to state a claim under the FLSA. However, both plaintiffs Bryant and Nabity allege elsewhere in the Amended Complaint that they worked on average in excess of 40 hours a week. Filing 25 at 32, 35. As we are at the pleading stage, the Court need not rely on paragraph 85 alone and will construe the Amended Complaint as a whole as adequately stating a claim for both plaintiff Bryant and plaintiff Nabity.

"typically" or "on average" worked more than forty hours for which they were not compensated in compliance with the FLSA. Filing 25 at 30-39. Plaintiffs Walkinshaw, Endicott, Martin, and Stauffer allege specific weeks in which they worked more than forty hours without pay for time and a half, a level of detail which exceeds the minimum pleading requirements. *See Hugler*, 2017 WL 3995543 at *3; Filing 25 at 30-39. Plaintiff Ellwanger neither alleges that she ever worked more than forty hours in a week, nor does she allege a specific week in which she was denied overtime pay. Filing 25 at 37. However, Ellwanger is not seeking to be a named Plaintiff for the purposes of Count I. Filing 48 at 15 n.2. Combined, plaintiffs Walkinshaw, Bryant, Nabity, Endicott, Martin, and Stauffer allege that, as Defendants' employees, they worked over forty hours in one or more weeks and were not properly compensated for their overtime. The Court finds these allegations are sufficient to "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); *see also Davis*, 765 F.3d at 243 (holding "a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks, would suffice" to state an FLSA claim).

Defendants point to various perceived flaws in the pleadings including use of averages, determination and calculation of workweeks, and a purported lack of detail regarding how time and a half is to be calculated. First, the prohibition against the use of averages under 29 C.F.R §778.104 is not the pleading standard for the FLSA; it states that employers cannot escape liability for overtime wages by averaging hours across workweeks instead of paying employees overtime on a weekly basis. As set forth above, Plaintiffs need only to allege coverage under the FLSA, that

13

the employee worked more than forty hours in a workweek, and the employee was not paid overtime. *See* Hugler, 2017 WL 3995543, at *3; *see also* Landers, 771 F.3d at 646 (stating that even under the more rigorous pleading standard, "plaintiffs in these types of cases cannot be expected to allege with mathematical precision[] the amount of overtime compensation owed by the employer" (international quotation marks omitted)). Second, the FLSA expressly allows for workweeks to begin on different days for different employees. 29 C.F.R. §778.105 ("For purposes of computing pay due under the [FLSA] . . . different workweeks may be established for different employees or groups of employees."). Defendants point to the fact that "the referenced weeks do not all start on the same day of the week" and claim it is improbable that "the Medical Center varied its workweek during the relevant period." Filing 47 at 9. How Defendants may have defined a given plaintiff's workweek is a question of fact which is not before the Court at this stage of the proceedings and which has no bearing on whether Plaintiffs have plausibly stated a claim under the FLSA under the relevant standard set forth above.

Third, Defendants complain that Plaintiffs do not provide information about the rates of pay for all hours worked. Filing 47 at 10. This again misses the mark. Even assuming this was true, Plaintiffs need not provide specifics at this time. It is enough to allege that Plaintiffs were employees that worked more than forty hours in a week and were not paid overtime compensation. *See* Hugler, 2017 WL 3995543, at *3. Plaintiffs allege each of their normal hourly rates, the length of each Plaintiffs' normal work week, the additional on-call hours, the rate of pay for that on-call work, and some Plaintiffs even list specific weeks in which they were not paid overtime.[5] Filing 25 at 30-39. For the above stated reasons, Defendants' motion to dismiss Count I is denied.

---

[5] In their reply, Defendants claim that with respect to plaintiffs Nabity and Stauffer, "the numerical values cited in [Plaintiff's] Opposition are nowhere to be found in Plaintiff's Amended Complaint." Filing 57 at 5, n.9. Defendants provide no citation for this allegation in contravention of NECivR 7.1(b)(2)(A) which states, "A factual assertion in

3. *Failure to State a Claim under the NWHA*

Plaintiffs' second cause of action alleges Defendants violated certain sections of the Nebraska Wage and Hours Act ("NWHA"). Filing 25 at 50-51. The NWHA requires an employer to pay their employees a minimum wage of eight dollars an hour between January 1, 2015, through December 31, 2015, and nine dollars an hour thereafter. Neb. Rev. Stat. § 48-1203 (Reissue 2010). Defendants do not deny that Plaintiffs are entitled to a minimum wage under the NWHA. Instead, the parties dispute whether an hour-by-hour (where a worker must be paid a minimum wage for each hour worked) or a weekly approach (where a worker's total weekly pay divided by the number of hours worked that week must equal at least the minimum wage) to calculating minimum wage is appropriate.

Defendants urge this Court to take a weekly approach to calculating wages under the NWHA while Plaintiffs argue this Court has previously required that employees be paid a minimum wage for each hour they work. Defendants claim there is a split of authority within the District of Nebraska. The crux of Defendants' argument that Nebraska courts have, in some cases, employed the weekly approach is a single text order in *Lopez v. Tyson Foods, Inc.*, 8:06-CV-00459 (D. Neb. May 23, 2011). Filing 47 at 11 n.5. Defendants claim that ECF text minute entry #359 in that case demonstrates that the court used a weekly approach.

In *Lopez*, the plaintiffs asserted a minimum-wage claim under the NWHA. During trial, the defendant–employer moved to dismiss the NWHA claim as a matter of law. In its brief, the defendant urged the court to adopt the weekly approach, but the crux of its argument for dismissal

---

the opposing brief must cite to the pertinent page of the pleading, affidavit, deposition, discovery material, or other evidence on which the opposing party relies." The Court finds Defendants' unsupported claim in this regard to be untrue. The only difference between the hours Nabity and Stauffer assert in their Amended Complaint and those asserted in their brief in opposition are that Plaintiff's Amended Complaint separates out weekend overtime from weekday overtime while the brief adds these hours into the single category of overtime. *Compare* Filing 25 at 35, 38, *with* Filing 48 at 14. Defendants' attempt to create an inconsistency where there is none is unconvincing and detracts from the persuasiveness of its other, more ethically sound arguments.

was that the plaintiffs' expert witness had presented no evidence—hourly *or* weekly—to prove the plaintiffs were paid below minimum wage. *Lopez*, 8:06-CV-00459, at ECF 356, pg. 18. The text minute entry granting dismissal of plaintiffs' NWHA claim as a matter of law contains neither explanation nor analysis. Defendants argue it is clear that the Court based its decision on a legal analysis adopting the weekly approach. Defendants' argument is disingenuous in the context of the accompanying briefing. It is far more plausible that the Court dismissed the NWHA claim because the plaintiffs failed to present adequate evidence than it is to believe the Court adopted a new legal standard in a text minute entry.

Furthermore, the same Judge who heard the arguments in *Lopez* later also expressly addressed the NWHA pleading standard issue in *Petrone v. Werner Enters., Inc.*, 121 F. Supp. 3d 860, 872 (D. Neb. 2015). In analyzing whether the NWHA should apply an hourly or a weekly approach, Senior Judge Lyle Strom stated that while the Eighth Circuit applied the weekly approach to FLSA claims from *United States v. Klinghoffer Bros. Realty Corp.*, 285 F. 2d. 487, 490 (2nd Cir. 1960), in *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986), "no court in Nebraska has applied the federal *Klinghoffer* [weekly] rule to the state Wage and Hour Act." *Petrone*, 121 F. Supp. 3d at 872. To be sure, Judge Strom would not have made such a statement had he intended the text minute entry in *Lopez* to stand for the adoption of the weekly approach. *Petrone* answered in no uncertain terms that "calculations under the Nebraska Wage and Hour Act will be based on an hour-by-hour basis, whereas the *Klinghoffer* rule shall be applied to the FLSA violations." 121 F. Supp. 3d at 872. To contend there is a split in this District flouts Defendants' duty of candor to the Court.

Therefore, Defendants' motion to dismiss claim II is denied.

4. *Failure to State a Claim under the NWPCA*

The Nebraska Wage and Payment and Collection Act specifies that an "employer shall pay all wages due its employees on regular days designated by the employer or agreed upon by the employer and employee" Neb. Rev. Stat. § 48-1230(1) (Supp. 2015). Under the NWPCA, an employee can institute a suit for unpaid wages which are not paid within thirty days of the regular payday designated or agreed upon by the parties. Neb. Rev. Stat. § 48-1231 (Reissue 2010). As part of Count II, Plaintiffs claim that Defendants' failure to pay Plaintiffs appropriate wages within thirty days of their regular paydays violated the NWPCA. Filing 25 at 55. Count III in the Amended Complaint asserts that the 2017 Policy obligated Defendants to pay Plaintiffs for On-Call work at the rate of "one and one-half the regular base rate in 15-minute increments." Filing 25 at 52. The 2017 policy applied to nurses at SERMC, among other places. Filing 25 at 52-53. As alleged in the Amended Complaint, Defendants did not make these payments to Plaintiffs at any time, let alone within 30 days of their regular paydays. Filing 25 at 55.

Defendants claim they are not subject to Neb. Rev. Stat. § 48-1231(1) because the wages Plaintiffs seek were not previously agreed to by Defendants. Filing 47 at 12-13. Under the NWPCA, "Nebraska courts require a plaintiff to show the disputed wages were previously agreed to by a defendant." *Morales v. Greater Omaha Packing Co.*, Inc., No. 08 Civ. 161, 2008 WL 5255807, at *2 (D. Neb. Dec. 15, 2008) (citing *Freeman v. Cent. States Health & Life Co. of Omaha*, 2 Neb. App. 803, 515 N.W.2d 131, 134–35 (1994)). "However, the agreement need only be that the defendant agreed 'to pay plaintiffs at the appropriate rate of pay for the duties they were performing.'" *Id.* (quoting *Hawkins v. City of Omaha*, 261 Neb. 943, 958, 627 N.W.2d 118, 130 (2001)).

In this case, the parties' employment relationship shows that there was at least some agreement with regard to terms, conditions, and rate of payment. Filing 25 at 19. "Under liberal

17

notice pleading standards in federal courts, the plaintiffs need not allege anything more specific at this stage of the proceedings." *Morales*, 2008 WL 5255807, at *2. Taking the Amended Complaint as true, Plaintiffs have alleged that Defendants paid Plaintiffs at a rate both below the "appropriate rate of pay for the duties" performed by Plaintiffs and below the minimum wage.

Defendants attack Plaintiffs' third cause of action because Plaintiffs failed to identify the "regular base rate" on which their claim hinges. Filing 47 at 13. In fact, Plaintiffs each plead their regular rates of pay specifically. Filing 25 at 31-39. Plaintiffs have sufficiently plead enough facts to make Defendants' alleged violation of the NWPCA plausible and therefore Defendants' motion to dismiss the NWPCA claim contained in Count II and Count III is denied.

5. *Failure to State a Claim for Breach of Contract*

Plaintiffs' breach-of-contract claim is similarly based on the 2017 on-call policy. Filing 25 at 56-60. As alleged in the Amended Complaint, Defendants and Plaintiffs both adhered to every aspect of the 2017 on-call policy from June 1, 2017, to September 30, 2018 with the exception of Defendants' alleged failure to pay overtime. Filing 25 at 59. The provision in the 2017 on-call policy which stated, "work relating to the principle [sic] activities of [nurses'] position[s] that can be taken care of with a phone call or access to work from [home]" would be paid at the rate of "one and one-half times the regular base rate in 15-minute increments." Filing 25 at 60.

> In order to prove a breach of contract under Nebraska law, at a minimum one must prove the following: (1) the parties entered into a contract; (2) the terms of the contract; (3) the defendant breached the contract in one or more of the ways alleged by the plaintiff; (4) the breach of contract was the proximate cause of some damage to the plaintiff; and (5) the nature and extent of the damage.

*Entergy Ark., Inc. v. Nebraska*, 226 F. Supp. 2d 1174, 1179-80 (2002) (citing *Nebraska Jury Instructions*, Instruction 15.01 ¶ B, at 838–39 (West 2d ed. 2001)).

The thrust of Defendants' argument is that the creation of an employment policy did not de facto create a mutually assented-to contract. In Nebraska, "[t]o create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." *Linscott v. Shasteen*, 288 Neb. 276, 281, 847 N.W.2d 283, 289 (2014) (citing *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011)). "A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances." *Id.* (citing *City of Scottsbluff*, 282 Neb. 848, 809 N.W.2d 725).

Construing the facts in the light most favorable to Plaintiffs, there is enough information in the Amended Complaint to survive a motion to dismiss. Plaintiffs allege the 2017 Policy was agreed to by the parties and it mutually bound the parties to specific obligations including overtime work and pay. Filing 25 at 56-60. Plaintiffs allege Defendants breached the contract and caused damages to them by failing to pay them at the rate of one-and-a-half-time pay for the overtime work they performed pursuant to the contract. Filing 25 at 56-57. This adequately states a claim for breach of contract under Nebraska law. *See Entergy Arkansas*, 226 F. Supp. 2d at 1179-80.

6. *Class Certification*

Finally, Defendants move to dismiss the Amended Complaint because Plaintiffs fail to demonstrate facts to establish a class action. The class certification issue is premature at this stage in the proceedings. Although Plaintiffs' Amended Complaint purports to be a class action, Plaintiffs have yet to move for class certification. The Court will defer any judgment on the merits of class certification until the appropriate motion is filed by Plaintiffs.

Accordingly,

IT IS ORDERED:

1. Defendant CommonSpirit Health's Motion to Dismiss under Fed. R. Civ. P. 12(b)(2), Filing 44, is denied;

2. Plaintiffs' Motion for Leave to Take Jurisdictional Discovery, Filing 50, is denied as moot;

3. Defendants' Motion to Dismiss under Fed. R. Civ. Pro 12(b)(6), Filing 46, is denied.

Dated this 20th day of December, 2019.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge