## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **NICHOLE WALKINSHAW, TYSHA BRYANT, APRIL ENDICOTT, HEATHER NABITY, MEGHAN MARTIN, ALANDREA ELLWANGER, TROY STAUFFER, and all other similarly situated former or current employees of Defendants,** ) ) ) ) ) ) ) ) | **Case No. 4:19-cv-03012-BCB-SMB** |
| **Plaintiffs,** ) | |
| **v.** ) | |
| ) | |
| **COMMONSPIRIT HEALTH f/k/a CATHOLIC HEALTH INITIATIVES, CHI NEBRASKA d/b/a CHI HEALTH, and SAINT ELIZABETH REGIONAL MEDICAL CENTER,** ) ) ) ) ) ) | |
| **Defendants.** ) | |

## DEFENDANTS'[1] BRIEF IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

---

[1] CommonSpirit Health f/k/a Catholic Health Initiatives ("CommonSpirit") joins in this Opposition to Plaintiffs' Motion for Conditional Certification subject to its objection that it is not subject to personal jurisdiction in this Court, which it timely raised (and intends to re-raise in response to the Corrected Second Amended Complaint). (*See* Dkt. 44, 60)  By joining this brief and otherwise participating in this litigation, CommonSpirit does not waive its objections to personal jurisdiction for any purpose, including appeal.

**TABLE OF CONTENTS**

I.      FACTUAL BACKGROUND ............................................................................................ 2

II.     LEGAL STANDARD ..................................................................................................... 9

        A.      Plaintiffs' testimony demonstrates their Complaint—on its fourth iteration—
                remains riddled with inaccuracies and is unreliable. ............................................ 10

        B.      Plaintiffs can satisfy neither an intermediate nor a more lenient standard. .......... 13

        C.      Plaintiffs' sworn testimony precludes satisfaction of either standard. ................. 16

III.    ARGUMENT .................................................................................................................. 17

        A.      No common *and* unlawful policy exists—the Policy here is *lawful*...................... 18

        B.      No nurse outside St. Elizabeth's IR Department in the period 2016-2018 is
                similarly situated to Plaintiffs. .............................................................................. 21

        C.      Similarly situated individuals do not exist—there are no opt-in plaintiffs........... 25

        D.      Individualized issues predominate, rendering treatment as a collective action
                inappropriate. ......................................................................................................... 27

IV.     PLAINTIFFS' PROPOSED NOTICE AND METHOD OF DELIVERY ARE
        INAPPROPRIATE**.** ....................................................................................................... 30

V.      CONCLUSION .............................................................................................................. 32

i

Plaintiffs present the Court with a veritable case study demonstrating when conditional certification must be denied.  The seven Named Plaintiffs ("Plaintiffs") gave dispositive sworn testimony demonstrating that while *they* may be similarly situated to one another, their Department was an anomaly.  They represent a small, single, unique department at St. Elizabeth.  Not one Plaintiff was able to identify a nurse outside of Plaintiffs' Department who performed "On-Call Work"[2] and was directed not to report it (and was thus not compensated for it), which is the crux of Plaintiffs' Fair Labor Standards Act ("FLSA") claim for which conditional certification is sought.

Plaintiffs were registered nurses in the Interventional Radiology Department ("IR Department") at St. Elizabeth at some time between 2016 and 2019.  Their Department Director went rogue.  He established a practice that was in *direct violation* of Defendants' *lawful* Policy ("Policy").[3]  Plaintiffs admit they have *no knowledge* of Defendants' written *lawful* Policy being violated in any other Department at St. Elizabeth, much less at any other CHI Health or CommonSpirit facility.  Plaintiffs' sworn testimony trumps their counsel's assertions and arguments otherwise.  Plaintiffs' Motion lacks a good faith basis in fact, as does their Complaint.

---

[2] Plaintiffs and Defendants have agreed to use the term "On-Call Work" to describe the work at issue in this case, which is work performed remotely outside of a hospital setting during an on-call shift. On-Call Work consists of work performed "relating to the employees' positions and activities as nurses and consisting of, for example, phone calls, emails, and text messages, and responding to and following up on them while they are 'on-call'." (Dkt. 66 at 3)  This is *not* a case involving a violation of the FLSA based on an alleged failure to compensate for time spent "engaged to wait."  *See, e.g.*, *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720 (8th Cir. 2001) (setting out the test used in this Circuit for determining whether downtime during an on-call shift must be compensated).  Plaintiffs have testified that they were properly compensated for all work performed during on-call shifts, except for On-Call Work. (Ex. E, July 23, 2020 Deposition of Plaintiff April Endicott ("Endicott Depo.") at 56:22-57:5; Ex. B, July 23, 2020 Deposition of Plaintiff Tysha Bryant ("Bryant Depo.") at 20:21-24; Ex. E, July 30, 2020 Deposition of Plaintiff Meghan Martin ("Martin Depo.") at 13:2-6; Ex. F, July 30, 2020 Deposition of Plaintiff Heather Nabity ("Nabity Depo.") at 16:8-25; Ex. H, July 30, 2020 Deposition of Plaintiff Nichole Walkinshaw ("Walkinshaw Depo.") at 19:4-19; Ex. G, July 30, 2020 Deposition of Plaintiff Troy Stauffer ("Stauffer Depo.") at 12:16-24, 13:12-23)

[3] "Policy" refers to the policy across CHI Health entities to compensate nurse employees at 1.5 times their regular rate for time spent performing On-Call Work, as set forth in its written on-call policies. (Ex. A, Austin Dec. at ¶¶ 6-14, Ex. 2, 3, 4, 5)

Plaintiffs' Motion also ignores important, fundamental legal precedent. First, Plaintiffs request the Court analyze Defendants' common *lawful* Policy as courts analyze a common *unlawful* policy. No legal authority supports their erroneous analysis, particularly where Plaintiffs' testimony contradicts the very assumption Plaintiffs' counsel urges upon this Court— an enterprise-wide *lack of compliance* with Defendants' *lawful* Policy. Furthermore, while a court often looks to "substantial allegations" in a complaint, Plaintiffs' sworn testimony contradicts and undercuts material assertions in their Complaint—even after *four* iterations, including now a "Corrected" complaint, which Plaintiffs' testimony demonstrates remains factually incorrect. Their Complaint – in *any* iteration – cannot be relied on in the face of Plaintiffs' contradictory testimony. Plaintiffs' testimony and the law permit just one result— Plaintiffs' Motion must be denied.

I.   **FACTUAL BACKGROUND**: **The following 10 Facts Demonstrate that St. Elizabeth's IR Department was small, unique and led by a rogue Director whose authority was limited to that Department and who *violated* St. Elizabeth's *lawful* On-Call Work Policy.**

The issue before the Court is extraordinarily narrow and discrete, particularly in the context of the Plaintiffs who are seven homogeneous IR nurses in a single, small department seeking certification of a collective of over 600 nurses of various specialties, across dozens of distinct departments, two states and 15 entities—with different supervisors, directors and entity leadership. Contrary to Plaintiffs' account—and their 200-paragraph Complaint—the issue here is factually narrow and straightforward.

The following Ten Facts demonstrate the misguided nature of Plaintiffs' pursuit of conditional certification. While conditional certification is often considered a low bar, *there is a bar* – which Plaintiffs cannot meet. (If there weren't a bar or a gate or a threshold, then there would literally be no reason parties engage in briefing. The Plaintiffs are asking the Court to just be a rubber stamp; i.e., acting as though the Court has no power, or meaningful role, in this

2

process.)  Indeed, these Ten Facts independently demonstrate that conditional certification is unwarranted and unjust.  Each Fact is supported by sworn testimony, largely the testimony of Plaintiffs.  The Ten Facts and supporting evidence demonstrate that Plaintiffs' Department was an island, separate and distinct, and operating under a Director who refused to follow the law of the land.[4]  It was an anomaly.  A good faith factual basis for requesting certification is lacking:

**Fact 1:**        **A lawful Policy has governed On-Call Work continuously at St. Elizabeth since at least December 2012, in various but substantively similar written iterations.**  (Ex. A, Austin Dec. at ¶¶ 6-14)[5]

- The Policy requires employees report On-Call Work performed remotely during an on-call shift: "Calls need to be tracked on a Time Edit Log and turned into the Supervisor/Director before the end of the pay period."  (*Id.* at Ex. 2, 3, 4, 5)

- The Policy requires compensation for reported work at 1.5 times the nurse's regular hourly rate in 15-minute increments: "Situations where work can be taken care of over the phone or remotely without coming in to the facility will be paid a guaranteed minimum of 15 minutes or actual time worked, whichever is greater, at one and one-half times base rate."[6]  (*Id.*)

- Plaintiffs claim—in *blatant, direct violation of the Policy*—their Department Director and supervisors prohibited them from reporting On-Call Work.  (*See*

---

[4] Ex. A, Declaration of Aaron Austin ("Austin Dec.") at ¶ 19 ("The Interventional Radiology Department Director's failure to properly execute the On-Call Policies became a subject of performance management for the Interventional Radiology Director, who ultimately was involuntarily separated from St. Elizabeth employment.")

[5] The policy bundle covers the Relevant Time Period at St. Elizabeth.  The remainder of the On-Call Policies in effect at CHI Health facilities during the Relevant Time Period (Ex. A, Austin Dec. at ¶ 21 and Ex. 11) are also all, on their face, facially lawful. Plaintiffs have not argued otherwise.

[6] Notably, the rate of pay for these Plaintiffs was in the range of $29 to $40 per hour. (Ex. A, Austin Dec. at ¶ 14; Complaint at ¶¶ 73, 78, 85, 91, 98, 105, 110)  Thus, the rate of pay for On-Call Work for Plaintiffs, when applied properly, is $10.88 to $15 *per 15-minute increment*.  (Ex. A, Austin Dec. at ¶ 14)  The Policy directs payment well beyond any FLSA obligation.  While Plaintiffs' counsel makes noise about the $2-$4 hourly rate for on-call shifts, those are shifts in which Plaintiffs are available, but *perform no work.*  If work is performed during an on-call shift, nurses are paid at either their hourly rate or a higher differential *in every instance.*  (Ex. A, Austin Dec. at ¶¶ 12-14, Ex. 2, 3, 4, 5)  The Policy here at issue is but one example of paying at a *much higher hourly rate* when work is performed during an on-call shift. (*Id.*)

3

Plaintiffs' Corrected Second Amended Class Action Complaint, Dkt. 115, at ¶ 124(a) and (d); *see also supra* fn. 4)

**Fact 2:** **St. Elizabeth trains its nurses that all work performed must be recorded and reported, and St. Elizabeth's February 2016 to September 2018 Time Edit Logs reflect literally thousands of time-edits, including for On-Call Work.** (Ex. A, Austin Dec. at ¶¶ 15-16)

- St. Elizabeth nurses use Kronos (a computerized system) to track time when the nurses clock-in and clock-out. The Kronos system allows nurses to edit their time worked to capture compensable work performed remotely (when not at the facility). Long hand time edit logs and email previously were used for this purpose. (Ex. A, Austin Dec. at ¶ 17) Nurses received training on the expectation that all time be reported and the use of time edit logs. (*Id.* at ¶¶ 15-16; Ex. F, Nabity Depo. 93:24-95:19, 188:8-189:20, 191:20-193:19; Ex. D, Endicott Depo. 175:4-176:6; Ex. E, Martin Depo. 117:24-118:13; Ex. B, Bryant Depo. 244:7-245:20; Ex. C, July 28, 2020 Deposition of Plaintiff Alandrea Ellwanger ("Ellwanger Depo.") at 109:15-110:2; Ex. H, Walkinshaw Depo. 95:10-96:10)

**Fact 3:** **All seven Plaintiffs worked as registered nurses in the IR Department at St. Elizabeth in the period from 2016 through 2019; their knowledge of On-Call Work is limited to that Department.** (*See* Complaint at ¶¶ 11–17)

- Each Plaintiff testified to a lack of knowledge of how On-Call Work is compensated in *any* other Department at St. Elizabeth or at *any* other entity identified in their Complaint.[7] Plaintiffs present *absolutely no good faith factual basis* for their counsel leaping to the unsupported conclusion that the *lawful* Policy uniformly was violated enterprise-wide.

**Fact 4:** **The IR Department at St. Elizabeth employed approximately four to seven nurses at any given time from 2016 through 2019.** (Ex. A, Austin Dec.at ¶ 19)

- In contrast, through this time period, the CHI Health hospitals identified in Plaintiffs' Motion employed approximately 660 other medical nurses who worked on-call shifts during that time, including approximately 245 such medical

---

[7] *See* Ex. D, Endicott Depo. 91:31-92:7, 281:24-282:10; Ex. B, Bryant Depo. 107:4-8, 112:7-13, 116:8-12, 257:12-17; Ex. E, Martin Depo. 15:7-10, 25:14-25, 211:2-12; Ex. F, Nabity Depo. 234:4-8, 236:7-12; Ex. H, Walkinshaw Depo. 71:18-72:11, 101:14-19; Ex. C, Ellwanger Depo. 24:10-25:7, 26:14-27:10; 178:9-23, 200:20-201:5, 204:24-205:3; Ex. G, Stauffer Depo. 52:3-5, 53:23-25, 55:6-8, 71:14-18, 72:12-19, 79:2-25.

nurses at St. Elizabeth. (*See* Dkt. 100-16, Ex. 1O, at 7–8 and Dkt. 100-17, Ex. 1P, at 7–8)

**Fact 5:**         **The IR Department Director, whose responsibility begins and ends in**

**the IR Department, prohibited IR nurses (Plaintiffs) from reporting On-Call Work.**  (Ex.

A, Austin Dec. at ¶ 19)

- The Plaintiffs all attribute the prohibition on reporting time directly to—and only to—the IR Department Director and their direct supervisors, two of whom are Named Plaintiffs.  (Ex. H, Walkinshaw Depo. 177:16-19; Ex. G, Stauffer Depo. 21:2-8, 14-22, 22:9-16; Ex. B, Bryant Depo. 137:16-24; Ex. C, Ellwanger Depo. 155:4-8; *see also infra* fn. 21)

- The IR Department Director has no supervisory authority over any nurse other than those working in the St. Elizabeth IR Department.  (Ex. A, Austin Dec.at ¶ 19; Ex. G, Stauffer Depo. 91:22-92:1; Ex. F, Nabity Depo. 68:16-20)

**Fact 6:**         **The nursing responsibilities in the IR Department are unique,**

**especially the On-Call Work performed in the Department.**  (Ex. F, Nabity Depo. 79:19-24,

81:16-22, 88:14-21, 200:10-202:8; Ex. D, Endicott Depo. 49:3-11, 159:24-160:1, 166:15-24,

167:9-10; Ex. B, Bryant Depo. 226:21-24, 245:17-20)

- CHI Health has produced over 500 pages of job descriptions for various kinds of nurses employed in various departments across the entities identified in the Complaint. (Ex. A, Austin Dec. at ¶ 5, Ex. 1)  Even within a given Department, there are various levels of nurses.  (*Id.*)

- Several Plaintiffs worked in other St. Elizabeth departments or at another CHI Health entity prior to their work in the IR Department, but not a single Plaintiff has ever performed On-Call Work in any department other than the IR Department at St. Elizabeth. (Ex. D, Endicott Depo. 21:7-9; Ex. B, Bryant Depo. 89:12-17, 164:12-165:245; Ex. F, Nabity Depo. 29:13-21; Ex. G, Stauffer Depo. 52:3-55:8, 70:18-71:18)

- In the IR Department physicians, at that time, worked directly with the on-call nurses, which is unusual, and the calls and text messaging between IR nurses and physicians was directly the result of the specific and unique nature of the procedures performed in the IR Department.  (Ex. D, Endicott Depo. 49:3-11; Ex. F, Nabity Depo. 79:19-24, 88:14-21)

- IR Department nurses were distinct from other "floor" or charge nurses, and nurses in the IR Department needed specific training to work in the department. (Ex. D, Endicott Depo. 159:24-160:1, 166:15-24, 167:9-10; Ex. B, Bryant Depo.

5

245:17-20) The work in the IR Department was "sophisticated" and, as a result, other nurses could not take on-call shifts for the IR Department due to the unique training and knowledge necessary to complete On-Call Work.  (Ex. B, Bryant Depo. 226:21-24; Ex. F, Nabity Depo. 81:16-22)

**Fact 7:**   **Plaintiffs have no knowledge of any Director (other than their own St. Elizabeth IR Director) prohibiting nurses from reporting On-Call Work.**

- Plaintiffs testified they have no firsthand knowledge of how On-Call Work works or doesn't work in other departments including how the Policy applies in other departments, whether On-Call Work is permitted in other departments, whether On-Call Work is performed in other departments, and how On-Call Work is reported and paid in other departments; Plaintiffs' knowledge is limited to the IR Department and the face of the *lawful* Policy.  (Ex. D, Endicott Depo. 281:25-282:10; Ex. B, Bryant Depo. 107:4-8, 112:7-13, 115:15-24, 116:80-12, 257:12-17; Ex. E, Martin Depo. 14:6-21, 15:7-10, 17:15-22, 25:14-26:22, 93:19-94:1, 131:1-7, 133:22-134:1, 211:2-12; Ex. F, Nabity Depo. 73:16-21, 234:4-8, 236:7-12; Ex. H, Walkinshaw Depo. 61:13-17, 62:15-63:10, 71:18-72:11, 101:14-19, 177:20-24; Ex. G, Stauffer Depo. 71:19-22, 72:2-19, 74:14-76:5, 78:3-19, 79:2-25; 82:1-9, 109:10-17; Ex. C, Ellwanger Depo. 178:9-23, 200:20-201:5)

**Fact 8:**   **In Fall 2018, the IR Department's prohibition on reporting On-Call Work was discovered by leadership outside the IR Department and promptly corrected, and since at least the end of October 2018, all Plaintiffs who performed On-Call Work have been compensated consistent with the *lawful* Policy.**  (Ex. A, Austin Dec. at ¶ 20; Ex. D, Endicott Depo. 56:22-57:5; Ex. B, Bryant Depo. 154:20-25, 159:6-11; Ex. E, Martin Depo. 199:17-23; Ex. F, Nabity Depo. 74:18-23, 75:2-7; Ex. H, Walkinshaw Depo. 189:19-23; *see also* Pl.'s Motion, Dkt. #99, at 10 n.3 and *supra* fn. 4)

- Plaintiffs employed in the IR Department through December 2018 had an opportunity to participate in an IR Department audit to capture pre-November 2018 unreported On-Call Work for a period of two years prior, but Plaintiffs elected to pursue this litigation instead.  (Ex. D, Endicott Depo. 66:2-67:5; Ex. E, Martin Depo. 174:16-179:18; Ex. B, Bryant Depo. 169:18-170:21; Ex. H, Walkinshaw Depo. 140:20-141:3; Ex. F, Nabity Depo. 169:5-170:3)

**Fact 9:**   **Plaintiffs' FLSA claim is for *overtime pay* only – specifically, instances in which Plaintiffs claim their unreported On-Call Work brought their compensable hours over the 40-hour FLSA threshold, which Plaintiffs acknowledge requires highly**

6

74080296

**individualized evidence and analysis.** (Ex. D, Endicott Depo. 255:24-256:8; Ex. G, Stauffer Depo. 127:6-21; Ex. C, Ellwanger Depo. 178:20-180:6; Ex. H, Walkinshaw Depo. 179:14-183:18, 210:9-212:3)

- Plaintiffs acknowledge that each Plaintiff's experience with On-Call Work is unique to a given Plaintiff. (Ex. D, Endicott Depo. 255:1-256:8; Ex. E, Martin Depo. 25:14-25, 211:2-12, 244:1-17; Ex. F, Nabity Depo. 236:7-12; Ex. H, Walkinshaw Depo. 71:18-72:4; Ex. G, Stauffer Depo. 79:2-21; Ex. C, Ellwanger Depo. 28:15-20)

- Plaintiffs acknowledge that they are unaware of how a determination could be made of what they may be owed and that any such analysis would be highly individualized, depending in part on the veracity and existence of records retained by each Plaintiff.[8] (Ex. D, Endicott Depo. 255:1-256:8; Ex. E, Martin Depo. 244:17-250:2; Ex. F, Nabity Depo. 86:4-88:1; Ex. H, Walkinshaw Depo. 178:5-12; Ex. C, Ellwanger Depo. 179:7-180:6; Ex. G, Stauffer Depo. 128:15-129:7)[9]

- Furthermore, Plaintiffs worked different schedules – such as Nabity at a full-time schedule of 32 hours a week (Ex. F, Nabity Depo. 93:1-10) in contrast with Walkinshaw and Bryant, who worked part-time since approximately 2016 at approximately 20 hours a week. (Ex. H, Walkinshaw Depo. 55:21-24; Ex. B, Bryant Depo. 201:1-20)

> **Fact 10:** **Eighteen months have passed since Plaintiffs filed and publicized this lawsuit, and not one nurse has joined the action.[10]**

---

[8] Several Plaintiffs testified they have not retained records reflecting the performance of much of the On-Call Work they claim to have performed. (Ex. D, Endicott Depo. 112:23-113:11; Ex. B, Bryant Depo. 217:3-6, 251:8-252:8; Ex. C, Ellwanger Depo. 170:21-171:1; Ex. H, Walkinshaw Depo. 109:24-110:5; Ex. F, Nabity Depo. 24:16-25:17)

[9] Plaintiffs themselves have acknowledged the extreme complexity of determining damages in this situation, which will require determining whether On-Call Work was performed, whether it was reported, whether it was compensated, whether the work took a nurse's workweek hours beyond 40 hours, amongst other considerations. (*See, e.g.*, Ex. D, Endicott Depo. 255:1-256:8; Ex. E, Martin Depo. 244:17-250:2; Ex. F, Nabity Depo. 86:4-88:1; Ex. H, Walkinshaw Depo. 178:5-12; Ex. C, Ellwanger Depo. 179:7-180:6)

[10] Though Plaintiffs seek to create evidence regarding a limited number of other departments at St. Elizabeth, in particular the Endoscopy Department, their testimony demonstrates the lack of a factual foundation for such assertions. Plaintiffs lack any firsthand knowledge outside of the IR Department at St. Elizabeth. (*See* Ex. D, Endicott Depo. 81:9-16; Ex. B, Bryant Depo. 105:11-107:23; Ex. H, Walkinshaw Depo. 73:14-74:4, 101:14-19; Ex. C, Ellwanger Depo. 16:4-8, 17:18-18:12; Ex. E, Martin Depo. 34:7-22)

- In February 2019, Plaintiffs publicized the filing of their lawsuit in Nebraska, in which twelve of the CHI Health facilities at issue are located, but not *one* nurse has opted in to this action. *See, e.g.*, Lori Pilger, *Nurses Sue CHI Health Alleging Hospital Violates Law with On-Call Pay Rate*, LINCOLN JOURNAL STAR (Feb. 8, 2019), https://journalstar.com/news/local/crime-and-courts/nurses-sue-chi-health-alleging-hospital-violates-law-with-on/article_b17070f3-343a-5a22-b534-729b55702938.html; Julie Anderson, *Lincoln Nurses Sue CHI Health, Alleging They Were Not Paid Proper Wages for On-Call Hours*, OMAHA WORLD HERALD: LIVE WELL NEBRASKA (Feb. 9, 2019), https://omaha.com/livewellnebraska/lincoln-nurses-sue-chi-health-alleging-they-were-not-paid-proper-wages-for-on-call/article_fb8cb22c-2753-55a2-99ef-f9618e9547e6.html.

- Plaintiffs also testified that there were social media postings about the lawsuit. (Ex. E, Martin Depo. 63:25-65:14; Ex. B, Bryant Depo. 126:10-127:16)

- Not one of the seven Plaintiffs can identify another nurse (outside the St. Elizabeth IR Department) who has performed On-Call Work and was directed not to report that On-Call Work or was not paid for the On-Call Work.  (Ex. E, Martin Depo. 74:19-75:4; Ex. H, Walkinshaw Depo. 66:8-13, 69:18-25, 70:23-71:17; Ex. G, Stauffer Depo. 127:22-25; Ex. B, Bryant Depo. 230:4-19; Ex. D, Endicott Depo. 279:24-280:6)

In short, Plaintiffs' allegations (in contrast to their counsel's assertions) are well-defined and limited to their own Department at St. Elizabeth.  There is *no factual basis* for extending Plaintiffs' unique circumstance or their rogue Director's violation of St. Elizabeth's *lawful* Policy to any other department or entity.  ***Plaintiffs have no good faith factual basis to assert a violation of the lawful Policy outside of their St. Elizabeth IR Department.***  Their assertions concern their own Department—only.  Their counsel's assertions are not evidence, and certainly are not a basis – particularly in the face of Plaintiffs' sworn testimony – for conditional certification.  There is no factual basis for conditional certification.

Accordingly, the Plaintiffs have not and cannot meet the burden for conditional certification of over 600 nurses in dozens of departments across 15 facilities, subject to the direction of different supervisors, directors, and entity leadership.  Simply put, this case is about the Named Plaintiffs, and only the Named Plaintiffs – and whatever events occurred that led

8

Plaintiffs to believe their Director was violating CHI Health's lawful policy.  *See supra* fn. 4.

Accordingly, their Motion must be denied.

## II.   LEGAL STANDARD:   While an intermediate standard applies, the Court must consider the evidentiary record, which demonstrates that Plaintiffs lack a factual and legal basis for seeking certification—even if a more lenient standard is applied.

As a threshold matter, the Court must determine the appropriate legal standard to apply in

analyzing Plaintiffs' request for conditional certification.   While the exact stringency of

Plaintiffs' burden is unsettled in the Eighth Circuit, precedent in the Eighth Circuit and across

federal circuits requires the Court to consider the actual facts and evidentiary record, which

readily demonstrate that this is a case in which conditional certification must be denied.  *See,

e.g.*, *Saleen v. Waste Mgm't, Inc.*, 649 F. Supp.2d 937, 942 (D. Minn. 2009) (noting that where

plaintiffs took "aim at such a large [potential collective] without any direct evidence that they

[had] been victimized by a companywide policy" and conducted "some discovery to justify their

request for conditional certification," the Court was "unwilling, in the context of [the] case, to

ignore [the defendant's] evidence"); *Saleen v. Waste Mgm't, Inc.*, Civ. No. 08-4959 (PJS/JJK),

2009 WL 1664451, at *8 (D. Minn. June 15, 2009) ("It is incumbent on a court at the conditional

certification stage to review all the evidence before it…Were such a complete review avoided…a

court would abandon its duty to determine whether the matter before it is an appropriate case for

collective treatment."); *Howe v. Johnny's Italian Steakhouse, L.L.C.*, No. 4:16-CV-00086-SMR-

HCA, 2018 WL 6521496, at *5–7 (S.D. Iowa Sept. 11, 2018) (discussing and compiling cases

across jurisdictions regarding the nuanced and case-by-case considerations necessary for

determining an appropriate conditional certification standard); *West v. Border Foods, Inc.*, Civ.

No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *7 (D. Minn. July 10, 2006) ("[N]either the

remedial purposes of the FLSA, nor the interests of judicial economy would be advanced if we

were to overlook facts which generally suggest that a collective action is improper."); *Bunyan v.*

9

*Spectrum Brands, Inc.*, No. 07-CV-089-MJR, 2008 WL 2959932, at \*4 (S.D. Ill. July 31, 2008) ("[A court] cannot close its eyes to the amount of discovery already performed.").

In this instance, there are two significant factors that must guide the Court's analysis: First, the Parties have engaged in extensive discovery, including obtaining sworn deposition testimony of all seven Plaintiffs; and second, the Plaintiffs' testimony repeatedly demonstrates that the Court cannot blindly rely on the veracity of assertions in the Complaint. Any application less than an intermediate standard, accordingly, would be unjust – as it would negate Plaintiffs' sworn testimony that establishes, without equivocation, that Plaintiffs' knowledge and assertions are limited to the Plaintiffs' own discrete, limited IR Department at St. Elizabeth and the dictate of the its rogue Director. Furthermore, Plaintiffs chose to affirmatively engage in discovery and so to apply a lesser standard would let Plaintiffs have their cake and eat it too. *See infra* fn. 14.

### A. Plaintiffs' testimony demonstrates their Complaint—on its fourth iteration—remains riddled with inaccuracies and is unreliable.

Whatever standard this Court applies, the Court must look beyond the allegations contained in Plaintiffs' Complaint. Regardless of which version, Plaintiffs' Complaint cannot be relied upon. The record evidence, particularly Plaintiffs' sworn testimony, demonstrates that the Complaint repeatedly makes erroneous assertions that lack a good faith basis in fact—assertions that Plaintiffs, through clear, specific testimony, have controverted or otherwise admitted are untrue. The Complaint is more than 200 paragraphs. Every assertion lacking a factual basis cannot separately be set forth here. The Factual Summary (*supra*) provides a holistic view of how far afield the Complaint is from Plaintiffs' actual knowledge and experience.

Here, Defendants provide a few specific examples to underscore the Complaint's lack of veracity, which renders reliance on the Complaint's assertions unjust, whether substantial or

otherwise.  Too many of them are remarkably untrue given Plaintiffs' own testimony.  The Court

must look beyond the Complaint[11] to the actual evidence in considering Plaintiffs' Motion:

- **Inaccurate Alleged Failure to Compensate.**  Plaintiffs' deposition testimony uniformly contradicts repeated assertions in the Complaint that Defendants failed to properly compensate Plaintiffs for On-Call Work beginning in and **after October 2018**.  Every Plaintiff employed through October 2018 testified that she was properly compensated for all On-Call Work performed after October 2018. (*See e.g.,* Complaint at ¶¶ 55, 98, 135, 145;[12] Corrected Complaint at ¶¶ 55, 98, 135, 145; Ex. D, Endicott Depo. 56:22-57:5; Ex. B, Bryant Depo. 154:20-25, 159:6-11; Ex. E, Martin Depo. 199:17-23; Ex. F, Nabity Depo. 74:18-23, 75:2-7; Ex. H, Walkinshaw Depo. 189:19-23)

- **Inaccurate Alleged Failure to Retain Records.**  Plaintiffs' deposition testimony uniformly contradicts repeated assertions in the Complaint that Defendants failed to maintain records of Plaintiffs' On-Call Work beginning in and **after October 2018**, even though each Plaintiff employed after October 2018 testified that in October 2018 she began reporting On-Call work and was compensated for that work.  (*See e.g.,* Complaint at ¶¶ 56, 59; Corrected Complaint at ¶¶ 56, 59; Ex. D, Endicott Depo. 56:22-57:5; Ex. B, Bryant Depo. 154:20-25, 159:6-11; Ex. E, Martin Depo. 199:17-23; Ex. F, Nabity Depo. 74:18-23, 75:2-7; Ex. H, Walkinshaw Depo. 193:19-23)[13]

- **Impossible Alleged 8-Day Weeks.**  The Complaint repeatedly asserts an impossibility by making recurring assertions of eight-day workweeks in an effort to claim unpaid overtime.  Blatantly false assertions cannot be accepted by the Court merely because counsel, surely in error, included them in the Complaint. (*See e.g.,* Complaint at ¶¶ 74, 80, 93; Corrected Complaint at ¶¶ 74, 80, 93)

- **Erroneous Use of Averages.**  Plaintiff Martin controverted Paragraphs 96, 97, and 99 of the Complaint (Corrected Complaint at ¶¶ 96, 97, 99) that make assertions regarding her

---

[11] The Court should consider all allegations in the Complaint with caution as the number of inaccuracies, on even the most basic topics such as the length of a workweek, brings into question the veracity throughout.  Plaintiff Bryant, in fact, testified that there may indeed be other factual inaccuracies in the Complaint beyond those she identified in her deposition.  (Ex. B, Bryant Depo. 20:10-12)  Plaintiffs' apparent effort to correct some of the inaccuracies by filing a "Corrected Second Amended Class Action Complaint" hardly scratches the surface of the problems with the Complaint.

[12] Plaintiffs have filed four operative Complaints.  Defendants' citations to the Complaint in this section of the Brief are to the Second Amended Complaint (Dkt. 110) which was proposed and unopposed (but not yet filed) prior to the Plaintiffs' Depositions.  Plaintiffs have since filed that Complaint and in quick succession a Corrected Second Amended Complaint.  To aid the Court, for these record citations, the initial paragraph citations are to paragraphs in the Second Amended Complaint that was used as an exhibit in the depositions – the later paragraph cites are to the Corrected Second Amended Complaint.

[13] Furthermore, St. Elizabeth produced such records maintained in the form of payroll records, time detail reports and time edit logs.  (Ex. A, Austin Dec. ¶18, Ex. 10)

average regular workweek hours and hours performing On-Call Work.  Martin testified that she has no knowledge of the factual basis for those assertions, and confirmed that the hours are less than 40 in any event and so fail to allege an overtime violation.  (Ex. E, Martin Depo. 136:22-140:22)  The same is true for the averages alleged in Paragraph 104 (Corrected Complaint at ¶ 104), as related to Plaintiff Ellwanger's average hours worked, which do not reach 40 hours and fail to allege an overtime violation.  These assertions lack a good faith basis in fact and cannot be relied on.

- **Inaccurate Assertions of On-Call Work (Plaintiff Martin).**  Plaintiff Martin's deposition testimony directly and explicitly controverts the allegations in Paragraphs 100 and 101 (Corrected Complaint at ¶¶ 100, 101) regarding Plaintiff Martin's time performing allegedly uncompensated On-Call Work.  She testified/admitted that during the dates and times set forth in those Paragraphs, she actually was clocked-in to the Kronos timekeeping system and was compensated for that work.  (Ex. E, Martin Depo. 246:25-247:10)

- **Erroneous Assertions Regarding Failures of Defendant.**  Paragraph 106 (Corrected Complaint at ¶ 106) includes a footnote regarding Defendants' purported failure to produce time records for the entire time period for Plaintiff Ellwanger.  Yet, St. Elizabeth produced those records for Plaintiff Ellwanger on July 14, 2020 at bates range SERMC_0004000-0004039.  These documents were produced several weeks *prior* to Plaintiffs' filing of the Second Amended Complaint on July 31, 2020 (Dkt. 110) and the subsequent filing of the Corrected Second Amended Complaint on August 10, 2020 (Dkt. 115).

- **Inaccurate Assertions of On-Call Work (Plaintiff Stauffer).**  Plaintiff Stauffer contradicted assertions about his alleged time spent performing On-Call Work in Paragraph 109 (Corrected Complaint at ¶ 109).  (Ex. G, Stauffer Depo. 112:23-113:23)  He admitted that the averages in the Complaint were inaccurate depictions of the amount of time spent performing On-Call Work for the majority of the time at issue.  (*Id.*)

- **Inaccurate Assertions of Overtime Work (Plaintiff Stauffer).**  Plaintiff Stauffer disavowed Paragraph 112 (Corrected Complaint at ¶ 112) that alleges Stauffer performed overtime On-Call Work.  (Ex. G, Stauffer Depo. 116:10-16)  Rather, Stauffer testified that he worked only 24.5 hours total that workweek.  (*Id.*)

Following the Plaintiffs' depositions, eighteen months into the litigation, Plaintiffs filed their fourth operative complaint, styled "Corrected Second Amended Complaint."  As indicated above, however, it remains riddled with illogical assertions, inconsistencies, and admittedly false and inaccurate statements.  In the face of the record evidence, including Plaintiffs' unequivocal testimony regarding the inaccurate assertions, to take the allegations in Plaintiffs' Complaint at face value would be unjust.  It was served *after* Plaintiffs' Depositions, for which Plaintiffs and

12

their counsel were present; yet, material, misleading assertions were not corrected.  The Court should not rely on assertions in the Complaint given its lack of veracity.

      **B.**    **Plaintiffs can satisfy <u>neither</u> an intermediate nor a more lenient standard.**

In collective actions arising under the FLSA, the plaintiffs bear the burden of demonstrating that conditional certification is appropriate, requiring the plaintiffs to "demonstrate they and the potential opt-ins were together victims of a single unlawful decision, policy, or plan." *Fontenot v. McNeil Industrial, Inc.*, No. 4:17-CV-3113, 2018 WL 5724863, at \*2 (D. Neb. Sept. 19, 2018).  Defendants acknowledge this Court typically uses a two-step analysis, which involves conditional and then final certification.[14]  *Id.*; *see generally Oliphant v. Sprint Corp.*, No. 8:18-CV-353, 2019 WL 2088052 (D. Neb. Apr. 26, 2019).  The two steps, however, are unnecessary here given the extensive evidentiary record, particularly Plaintiffs' testimony that completely undercuts any "collective" assertions in their Complaint – and any good faith basis for seeking certification.

Nonetheless, Courts typically apply either a "lenient" or "intermediate" standard when evaluating conditional certification, dependent on the amount of information the plaintiffs have gathered to that point.  *See, e.g.*, *Clenenden v. Steak N Shake Ops., Inc.*, No. 4:17-cv-01506-JAR, 2018 WL 4679728, at \*2 (E.D. Mo. Sept. 28, 2018) (noting that where plaintiffs have a

---

[14] The protections afforded by and the due process considerations applicable to a Rule 23 Class Action should similarly apply to Rule 16 collective actions.  *See, e.g.*, *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-cv-592 FDW-DSC, 2011 WL 4351631, at \*8 (W.D.N.C. Sept. 16, 2011) (relying on *Dukes*, a Rule 23 class action, in denying conditional certification of an off-the-clock collective action).  Moreover, the two-step certification process has no basis in the statute and contradicts the Federal Rules of Civil Procedure and the Rules Enabling Act, 28 U.S.C. § 2072.  This is especially true here where such expansive discovery has taken place between the parties, and Plaintiffs chose not to seek conditional certification prior to that discovery being conducted and they have used documents produced in discovery to support to their Motion.  *See, e.g.*, *McClean v. Health Systs., Inc.*, No. 11–03037–CV–S–DGK, 2011 WL 6153091, at \*4 (W.D. Mo. Dec. 12, 2011) ("It would be inequitable to allow plaintiffs to rely on documents generated by discovery in support of their 'Motion for Conditional Certification' and then to allow plaintiffs to proceed with the more lenient standard applied in cases where the parties have not yet begun discovery.")

13

significant amount of information, "courts have applied an intermediate standard that requires something more than substantial allegations of an FLSA-violating policy but something less than full-blown proof of being similarly situated: 'modest factual support'"); *Howe*, 2018 WL 6521496 (applying varying "intermediate" approaches dependent on the number of potential opt-in plaintiffs identified); *Ezell v. Acosta, Inc.*, No. 4:16-CV-879 RLW, 2018 WL 3763834 (E.D. Mo. Aug. 8, 2018) (applying heightened standard where parties had "exchanged interrogatories, conducted depositions, exchanged a large number of documents, and filed contentious motions to compel and a protective order").[15]   There is no singular definition of what an "intermediate" or "heightened" standard necessarily entails.   Generally, it requires the court to compare the allegations in the complaint with the evidence actually presented "to determine whether Plaintiffs have made [a] sufficient showing ***beyond*** their original allegations."   *Sutton-Price*, 2013 WL 3324364, at \*4 (emphasis added); *see also Clenenden*, 2018 WL 4679728, at \*2 (same) (quoting *Kayser v. Sw. Bell Tel. Co.*, 912 F. Supp. 2d 803, 812 (E.D. Mo. 2012)).

Here, that comparison readily demonstrates a heightened standard is necessary and has not—and cannot—be met because Plaintiffs' testimony demonstrates that (a) their knowledge is limited to the St. Elizabeth IR Department nurses (themselves) and (b) the assertions in the four iterations of their Complaint, including the "Corrected Second Amended Complaint," are unreliable and in many instances contradict Plaintiffs' sworn testimony.

Even if the Court determines a more lenient standard is appropriate, Defendants still prevail – the standard does not change the record evidence.   At a bare minimum, Plaintiffs must establish a "colorable basis" that conditional certification is appropriate and that "putative class members are the victims of a single decision, policy, or plan."   *Oliphant*, 2019 WL 2088052, at

---

[15] *See also Sutton-Price v. Daugherty Sys., Inc.*, No. 4:14-cv-1943, 2013 WL 3324364, at \*4 (E.D. Mo. July 1, 2013); *Settles v. General Electric*, No. 12-00602-CV-W-BP, 2013 WL 12143084, at \*2 (E.D. Mo. Feb. 19, 2013); *Adams v. Hy-Vee, Inc.*, No. 11-00449, 2012 U.S. Dist. LEXIS 98590 (W.D. Mo. May 22, 2012).

14

*2 (quoting *Morales v. Greater Omaha Packing Co.*, No. 8:08-CV-161, 2009 WL 1650016, at *4 (D. Neb. June 9, 2009)).  Plaintiffs must additionally show that they are "similarly situated to those [they] seek[] to represent with respect to job requirements and pay provisions." *Id.* (citing *Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 496 (D. Neb. 2009)).  Such a standard is neither "invisible" nor "toothless."   *Settles*, 2013 WL 12143084, at *2; *Rowe v. Hosp. Housekeeping Sys., LLC*, No. 17-9376, 2018 WL 733228, at *2 (E.D. La. Feb. 6, 2018).

Plaintiffs' testimony precludes such a showing.  Plaintiffs' testimony is that their St. Elizabeth IR Department Director prohibited them from reporting On-Call Work, which is an express, direct violation of a common *lawful* Policy.  When St. Elizabeth learned of the IR Department's deviance from the *lawful* Policy, it was corrected (Ex. A, Austin Dec. at ¶ 20; Ex. D, Endicott Depo. 56:22-57:5; Ex. B, Bryant Depo. 154:20-25, 159:6-11; Ex. E, Martin Depo. 199:17-23; Ex. F, Nabity Depo. 74:18-23, 75:2-7; Ex. H, Walkinshaw Depo. 189:19-23; *see also* Pl.'s Motion, Dkt. #99, at 10 n.3), and the Director was subjected to performance management for filing to properly execute the *lawful* Policy (*supra* fn. 4).

Plaintiffs' Complaint identifies no other instance of management of any Defendant (St. Elizabeth, CHI Health or CommonSpirit Health) prohibiting nurses from reporting On-Call Work or directing the common *lawful* Policy be violated.  Plaintiffs testified repeatedly and with clarity that they have no personal knowledge of any violation outside their Department.[16] Plaintiffs point to no precedent permitting the Court to disregard their sworn testimony. Plaintiffs cannot satisfy even the lenient standard.[17]

---

[16] Plaintiff Bryant testified that she understood the use of "nurse" in the Complaint to mean Interventional Radiology nurse – a nurse in her department – not nurses throughout St. Elizabeth, CHI Health or CommonSpirit Health.  (Ex. B, Bryant Depo. 209:13-210:4)

[17] Plaintiffs had every opportunity to conduct discovery, and did so.  Defendants fully responded to Plaintiffs' discovery requests, and produced over 5,000 bates labeled pages of documents.  Any issues with Defendants' production were resolved between the parties; thus, Plaintiffs cannot now credibly claim not to have received the evidence needed for their Motion.

15

## C.    Plaintiffs' sworn testimony precludes satisfaction of either standard.

The intermediate standard normally requires the Court to compare the allegations in the complaint with the evidence actually presented "to determine whether Plaintiffs have made [a] sufficient showing beyond their original allegations." *Sutton-Price*, 2013 WL 3324364, at \*4 (emphasis added); *see also Clenenden*, 2018 WL 4679728, at \*2 (same) (quoting *Kayser*, 912 F. Supp. 2d at 812). The intermediate standard works to "balance the record developed in discovery against procedural and equitable concerns." *Howe*, 2018 WL 6521496, at \*6 (collecting cases applying the intermediate standard); *see also Richard Allen, et al. v. Pinnacle Entm't, Inc., et al.*, Case No. 17-00374-CV-W-GAF, Order Dkt. #150 (W.D. Mo. July 24, 2018) (Fenner, J.) (applying an intermediate standard where substantial discovery had taken place, especially in relation to the issue of conditional certification); *Fraticelli v. MSG Holdings, L.P.*, No. 13 Civ. 6518(JMF), 2014 WL 1807105, at \*1-3 (S.D.N.Y. May 4, 2014) (noting the intermediate standard helps correct the imbalance that can exist between the evidence gathered by plaintiffs and the burdens imposed on an employer defending "an FLSA claim involving a large and broadly defined collective"). Here a balancing of equitable concerns requires foregoing reliance on the Complaint. Rather the record evidence developed in discovery must be relied upon, and it permits but one result: conditional certification must be denied.

Under either burden, the *seven* Plaintiffs from one Department are required to show that they are "similarly situated" to the more than *six hundred* current and former nurses they wish to represent—nurses subject to the direction of dozens of different supervisors, directors and entity leadership, in dozens of departments in over a dozen entities, performing wide-ranging and varied tasks. In order to do so, they must show they were (together, across all entities and departments) victims of a common policy or plan *that violated the FLSA. See, e.g.*, *Larson v. Isle of Capri Casinos, Inc.*, No. 16-00902-CV-W-ODS, 2018 WL 6495074, at \*16 (W.D. Mo. Dec. 10, 2018) (in order to certify a collective action across a number of locations it must be

16

demonstrated with some evidence that *all* employees at *all* locations were similarly situated); *Ezell*, 2018 WL 3763834 (where no evidence showed a *company-wide* policy but rather showed claims arose from a variety of circumstances based on plaintiffs' choices and beliefs and instructions from different supervisors, conditional certification was inappropriate); *Stagner v. Hulcher Servs.*, No. 16-1036, 2017 WL 3166841 (W.D. Mo. July 25, 2017); *Settles*, 2013 WL 12143084, at \*2.[18]

Plaintiffs cannot do so here. The common policy relied upon by Plaintiffs is a *lawful* Policy, and even the factually inaccurate Complaint fails to assert that any leader other than the Plaintiffs' IR Department Director at St. Elizabeth expressly directed nurses to violate the *lawful* Policy by not reporting their On-Call Work. Unlike the other 600+ nurses across the enterprise, Plaintiffs worked in a department with a rogue Director. That's it. Beginning and end. Their testimony and *factual* assertions go no further than their single, discrete, isolated Department.

## III.    ARGUMENT

Plaintiffs' Motion must be denied because Plaintiffs have not and cannot meet the burden necessary for conditional certification: (1) they are not subject to a common policy that violates the FLSA; in fact no unlawful policy exists; the Policy here is *lawful;* (2) Plaintiffs and the individuals in the proposed collective are not similarly situated; no nurse outside St. Elizabeth's IR Department in the period 2016-2018 is similarly situated to Plaintiffs; and (3) individual determinations would predominate the determination of any liability as to any collective member. Accordingly, their Motion must be denied.

---

[18] *See also, e.g.*, *Jost v. Commonwealth Land Title Ins. Co.*, No. 4:08CV734, 2009 U.S. Dist. LEXIS 5623, at \*10-12 (E.D. Mo. Jan. 27, 2009); *Thompson v. Speedway SuperAmerica, LLC*, No. 08–CV–1107(PJS/RLE), 2009 WL 130069 (D. Minn. Jan. 20, 2009); *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007).

17

### A.   No common *and* unlawful policy exists—the Policy here is *lawful*.

To establish conditional certification is warranted, the Plaintiffs must establish the existence of a common policy or plan that violated the FLSA. *See, e.g.*, *Larson*, 2018 WL 6495074, at \*16. Where the policy pointed to—as is the case here—does not facially violate the FLSA, Plaintiffs "must submit evidence the *reason* why the employees were not compensated…is…because of a ***corporate*** decision to ignore [the] published policies and refuse to pay" the employees properly. *Saleen*, 2009 WL 1664451, at \*4 (emphasis added); *see also Thompson*, 2009 WL 130069, at \*2 (noting that absent a published corporate policy not to compensate for work performed, plaintiffs should "establish a colorable basis that such a policy-to-violate-the policy exists"); *see also id.* (denying conditional certification where complaints regarding alleged unlawful policy came from only a tiny fraction of the putative class and the complaints were very weak evidence of a nationwide corporate policy); *Wacker v. Personal Touch Home Care, Inc.*, No. 4:08-CV-93-CDP, 2008 WL 4838146, at \*4 (E.D. Mo. Nov. 6, 2008) ("Where there is no evidence of a company-wide policy, company-wide certification is inappropriate."). "Although written policies are not dispositive that an actual plan or practice exists, written policies are relevant considerations when assessing workers' arguments about the existence of a company wide policy." *Richardson v. Wells Fargo Bank, N.A.*, Case No. 4:11-cv-00738, at \*4 (S.D. Tex. Feb. 2, 2012) (internal citations omitted); *see also Burch v. Quest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007) (noting a written policy dictating overtime pay can factor against conditional certification).

Plaintiffs have not asserted that any or all Defendants have a corporate policy to ignore the *lawful* Policy, and their testimony belies any argument otherwise that may be asserted in Reply. Plaintiffs admittedly have no knowledge of any violation of the *lawful* Policy – other than their rogue Director's dictate that they not report On Call Work—for which the Director

18

suffered a consequence.  (*See supra* fn. 4)  Thus, Plaintiffs have absolutely no good faith basis to now claim an enterprise wide *policy to violate a lawful policy.*

At the center of Plaintiffs' allegations is the *lawful* Policy that applied at various times in various nuanced iterations to various entities in this litigation.  The *lawful* Policy *always* required employees to record and report On-Call Work and be compensated for such work.  Plaintiffs do not and have not challenged the lawfulness of the On-Call Policy; it is *facially lawful* under the FLSA.  In fact, it compensates nurses at 1.5 times their regular hourly rate for On-Call Work regardless of the number of hours worked in a workweek.  Plaintiffs have never claimed otherwise.  Rather, Plaintiffs allege an *overtime* violation of the FLSA.  They claim that because their IR Director prohibited them from reporting On-Call Work, proper overtime for compensable work could not be properly calculated and paid.  That is the alleged FLSA violation.  In other words, Plaintiffs seek to establish they were not properly compensated for overtime as a result of a ***policy to violate* the valid *lawful* Policy**.

Fatally, this theory is based exclusively on the Plaintiffs' alleged experience within the IR Department at St. Elizabeth, given their Director's express prohibition on reporting On-Call Work.  This isolated allegation does not establish a policy outside of their IR Department at St. Elizabeth, much less a policy throughout St. Elizabeth or across 15 different facilities, and dozens of departments at those facilities.  Plaintiffs have testified that they have *no knowledge* of how On-Call Work was handled or compensated in *any department other than their own.* Absolutely no evidence exists to show any broader decision not to comply with the On-Call Policies governing payment for On-Call Work.  Absent such evidence, conditional certification should be denied.  *See Saleen*, 2009 WL 1664451, at *4–5 (denying conditional certification where evidence failed to show a single, decision, policy or plan by which the corporate entity refused to compensate employees for time worked through meal breaks);  *Thompson*, 2009 WL

19

130069, at *2 (conditional certification denied when allegations came from a limited group who failed to show their lack of compensation was "not because of human error or a rogue store manager" but because of a "corporate decision to ignore…published policies" and refuse payment); *see also Saleen*, 649 F. Supp. 2d at 941 (noting that "the mere fact that some employees of a large corporation were not properly compensated under the FLSA does not provide a 'colorable basis' to infer the existence of a *companywide* policy" and "in any large corporation, there are going to be local managers who are ignorant of corporate policies, or who misunderstand corporate policies, or who intentionally violate corporate policies in order to make their own performance look better" (emphasis added)).

Furthermore, time edit logs produced by Defendants (Ex. A, Austin Dec. at ¶ 18, Ex. 10) demonstrate that nurse employees knew how to record On-Call Work performed remotely, did so, and were compensated for it.  There simply is *no* evidence that there was a corporate or enterprise-wide decision, policy, plan, or practice not to compensate nurses for On-Call Work. No evidence exists because it simply was not occurring elsewhere. The evidence—both the policy itself and the time edit logs—demonstrates the common policy was exactly the opposite: *Employees were instructed to record such time, did so, and were compensated for it in the normal course.*  And, when leadership learned the St. Elizabeth IR Department Director was acting in contravention of the *lawful* Policy, (a) the St. Elizabeth IR Department quickly was brought into compliance and (b) the Director's failure to properly effectuate the Policy became a subject of performance counseling that ultimately resulted in involuntary termination.  That evidence demonstrates that the *lawful* Policy was effectuated in the *lawful* manner reflected on the face of the Policy. Accordingly, conditional certification of the proposed collective must be denied.

74080296

**B.** **No nurse outside St. Elizabeth's IR Department in the period 2016-2018 is similarly situated to Plaintiffs.**

To conditionally certify a collective, Plaintiffs must show that all employees in the proposed collective are similarly situated, particularly where, as here, the proposed collective works across a number of widespread and disparate locations. *Larson*, 2018 WL 6495074, at *16; *see also Oliphant*, 2019 WL 2088052, at *2; *Martinez*, 265 F.R.D. at 496. This task is especially burdensome in "off-the-clock" overtime cases when, as here, the proposed collective worked under different supervisors and different conditions, and performed different tasks. *See, e.g.*, *West*, 2006 WL 1892527, at *8 (noting that where "off-the-clock" claims require significant individual considerations, they are inappropriate for conditional certification and compiling cases); *see also Velasquez v. HSBC Finance Corp.*, 266 F.R.D. 424, 428 (N.D. Cal. 2010) (noting that "off-the-clock" overtime cases are generally more difficult to show the proposed collective members were victims of a single decision policy or plan); *Castle v. Wells Fargo Fin., Inc.*, No. 06-4347, 2008 WL 495705, at *2-5 (N.D. Cal. Feb. 20, 2008) (denying conditional certification where plaintiffs alleged they had been denied off the clock hours worked under a variety of circumstances and where the plaintiffs had failed to identify a company-wide policy and practice).

In *Larson*, for example, the plaintiff only had knowledge of working conditions for table games dealers (like herself) and other hourly workers at the Kansas City casino location she worked. 2018 WL 6495074, at *16. Her deposition testimony confirmed that she had "**no** knowledge regarding the working conditions of any employees other than" those in her same position at the casino in which she worked. *Id.* (emphasis added). Accordingly, the court denied conditional certification as to employees in any position at any of the other casino locations the named plaintiff sought to include—all subsidiary casinos of the parent corporation nationwide, at which she had never worked and had no personal knowledge. *Id.* If a plaintiff cannot show that

21

individuals outside of the department or location in which the plaintiff worked were subject to the same working conditions and expectations, they cannot be similarly situated to those outside the department—and as a result, conditional certification cannot extend outside the department either. *See Brooks v. C.H. Robinson Int'l, Inc.*, No. 16-CV-0939-CV-W-BP, 2018 WL 5818377 (W.D. Mo. July 6, 2018) (denying conditional certification where plaintiffs lacked knowledge of job titles outside of the single region in which they worked); *Santana v. Fishlegs, LLC*, No. 13-cv-01628, 2013 WL 5951438 (S.D.N.Y. Nov. 7, 2013) (limiting conditional certification only to restaurants about which plaintiff and declarants had personal knowledge).

Here, Plaintiffs cannot demonstrate that they are similarly situated to hundreds of nurses outside of the IR Department at St. Elizabeth when Plaintiffs have, by their own admission, no personal knowledge whatsoever about any other nurses' experiences.[19] To be clear, the Plaintiffs have disclaimed having any knowledge of nurses outside of St. Elizabeth's IR Department performing On-Call Work and whether any such work was compensated or not compensated.[20]

---

[19] Plaintiffs' depositions unambiguously revealed that Plaintiffs lack any personal and/or firsthand knowledge regarding On-Call Work outside of the St. Elizabeth IR Department. The FLSA does not provide license to seek collective certification merely because a homogeneous group of individuals appear to have similar, colorable individual claims. There must be a *good faith basis in law and in fact* for seeking certification of a collective, as is the case for *all litigation* to ensure proceedings are not unreasonably, vexatiously multiplied. 28 U.S.C. § 1927 provides the Court discretion to evaluate and determine an appropriate consequence for such behavior: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Following the depositions, Plaintiffs had an obligation to withdraw their Motion. Instead, Plaintiffs' doubled-down in a superficial effort to "correct" assertions in the Complaint while maintaining many inaccurate materially false assertions as demonstrated *supra*. Their "correction" underscores their obligation, but failed meaningfully to address the real issue – proceeding to seek certification of a collective while lacking any basis in fact and in the face of Plaintiffs themselves impeaching material provisions of their own Complaint. *See Blackwell v. United Drywall Supply, Inc.*, No. 1:07-CV-2351-ODE, 2009 WL 10672531, at *3 (N.D. Ga. Aug. 27, 2009) (28 U.S.C. § 1927 sanctions were not warranted where plaintiffs *withdrew* a motion for conditional certification after discovering evidence suggesting that no collective action would be possible and stipulated they would file no more motions to amend their complaint).

[20] It again must be noted Plaintiffs' FLSA claims are limited only to *overtime*, thus even if On-Call Work were being performed elsewhere (which there is no evidence it was), such work

In their Complaint, Plaintiffs seem to boldly, speciously declare that the mere existence of other nurses working under the CHI Health umbrella establishes that they are similarly situated.  But, of course, it does not.  The Policy here at issue was *lawful*, not unlawful.

The Plaintiffs differ from the other nurses at virtually every turn.  Plaintiffs worked in one department at one hospital entity in Lincoln, Nebraska.  They worked under a Director (and other supervisors)[21] who prohibited reporting On-Call Work only in that one IR Department.  They represent approximately 1% of the entire proposed collective they seek to conditionally certify.  *See*, *e.g.*, *Saleen*, 649 F. Supp. 2d at 942 (denying certification of a national class when plaintiffs' declarations only came from 1% of the putative class members).  And no other nurse has joined the proposed collective.

Yet, Plaintiffs seek to include in the collective hundreds of nurse employees at over a dozen separate entities in hundreds of departments, under the supervision of dozens of other supervisors, working in different medical nursing positions with different responsibilities and duties, performing various and numerous different tasks, on the basis of *only* Plaintiffs' allegations and declarations, which include no firsthand knowledge outside of the IR

---

would only be relevant if it took a nurse's workweek hours beyond 40.  *See also infra* fn. 24 (not all departments are even permitted to schedule nurses on on-call shifts).

[21] At least one Named Plaintiff, Heather Nabity, also has worked in a supervisory role over the nurses in the St. Elizabeth IR Department.  (Ex. F, Nabity Depo. 41:20-42:11) Plaintiff Stauffer also had some supervisory authority over the other nurses in the IR Department when he served as Lead Nurse.  (*Id.*; Ex. B, Bryant Depo. 26:1-10; Ex. G, Stauffer Depo. 20:5-9) Their work in such positions, wherein they would be making decisions regarding the recording of time worked during on-call shifts and the compensation for such time worked, creates an inherent conflict with them and the other Named Plaintiffs, who allege supervisors prevented them from being properly compensated for On-Call Work.  Such conflicts between supervisors and subordinate employees may render a class or collective unsustainable.  *See, e.g.*, *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1311 (M.D. Ala. 2002) (finding inherent conflict precluded conditional certification where crewmen sought to include supervisor in collective); *see also Ellerd v. Cnty. of Los Angeles*, 2009 WL 982077 (C.D. Cal. Apr. 9, 2009) (finding counsel could not adequately represent social workers *and* their supervisors).  Plaintiff Nabity also is seeking pay for calls specifically related to her supervisory role, which again highlights the differences even amongst the Named Plaintiffs, let alone the difference between the Named Plaintiffs and the proposed collective's members.  (Ex. F, Nabity Depo. 178:11-179:5)

23

Department—other than knowledge On-Call Work was *not* performed in other departments in which they had worked. *See, e.g.*, Ex. D, Endicott Depo. 21:7-9; Ex. B, Bryant Depo. 89:12-17, 164:12-165:245; Ex. F, Nabity Depo. 29:13-21; Ex. G, Stauffer Depo. 52:3-55:8, 70:18-71:18; *c.f. Chin v. Tile Shop, LLC*, 57 F. Supp.3d 1075, 1083–84 (D. Minn. 2014) (finding support for certification of a broad collective where declarations provided from employees in *at least 6 stores* in **3** states and **5** additional store managers at **15** stores in *at least 5 states*); *Hampton v. Maxwell Trailers & Pick-Up Accessories, Inc.*, No. 18-CV-110 HEA, 2020 WL 1888798 (E.D. Mo. Apr. 16, 2020) (included declarations from *three* separate locations).

Notably, there exists a distinction between on-call shifts and On-Call Work. The majority of nurses eligible for on-call shifts are unable to perform any of their duties or tasks remotely – *the very—and **only**—type of work at issue in this lawsuit*. *See, e.g.*, *Morales*, 2009 WL 1650016, at *6 ("The plaintiffs have failed to meet their burden with regard to warehouse and maintenance department employees or hourly employees in the slaughter cooler, fabrication cooler, foot room, and cattle driver area. The evidence does not support a finding that these employees *who are not compensated under the* [allegedly unlawful] gang time system, are similarly situated to the plaintiffs." (emphasis added)). The mere fact that a nurse worked an on-call shift does not mean the nurse performed On-Call Work.

By including these hundreds of medical nurses employed in numerous departments across 15 entities, Plaintiffs seek conditional certification of a collective that is not similarly situated to Plaintiffs—*i.e.*, the collective consists of individuals in different positions, with different supervisors, different job duties, different training, different orientations, etc., with no evidence any of these additional nurses even performed On-Call Work, or were directed not to report any On-Call work performed. Plaintiffs have offered no evidence, for example, that an operating room nurse at Mercy-Council Bluffs Hospital has *anything* in common with a St.

24

Elizabeth IR nurse. The differences that exist within the collective are multitudinous—and are heightened even more so because the type of work at issue here occurs extremely rarely—if *at all*—in the majority of the departments, including the majority of those where medical nurses are eligible to work on-call shifts.[22]

There is no evidence (nor even assertions with a good faith basis in fact) of On-Call Work being unreported and unpaid in other departments or facilities – because it was not happening. Plaintiffs do not have personal knowledge of nurses other than themselves even performing On-Call Work—even in other departments in which the Plaintiffs have worked at St. Elizabeth or other CHI Health facilities. Unequivocally, all Plaintiffs testified they have absolutely no knowledge of On-Call Work being performed at any entity other than St. Elizabeth, which knowledge is limited to their isolated IR Department. They, likewise, lack knowledge as to whether and/or how any On-Call Work—if it is ever even performed—is compensated. Plaintiffs know their own experiences in the IR Department at St. Elizabeth. They know nothing else. That is insufficient to support conditional certification of the purported collective.

Accordingly, conditional certification must be denied.

**C.      Similarly situated individuals do not exist—there are no opt-in plaintiffs.**

Why have none of the hundreds of other nurses clamored to opt in to this collective despite the passage of eighteen months since this lawsuit was filed? Even despite the wide-

---

[22] Plaintiffs misconstrue Defendants' Answer to Interrogatory No. 7. *See* Dkt. 100-16, Ex. 1O, at 7–8 and Dkt. 100-17, Ex. 1P, at 7–8. This Answer provides *only* the number of nurses who worked an on-call shift during the time period at issue across the fifteen entities included in Plaintiffs' Complaint—the question Plaintiffs asked. That number is *not* limited to those nurses who performed On-Call Work during those on-call shifts, a number which undoubtedly is much smaller and is virtually impossible to identify in an "off-the-clock" case centered on an allegation of failing to follow a facially lawful policy. As Plaintiffs have provided no evidence of any nurses performing On-Call Work without proper compensation but themselves, their allegations cannot reasonably be interpreted to extend beyond the IR Department at St. Elizabeth.

25

spread publicity when the lawsuit was filed?  The answer is obvious: no nurses outside of the IR Department at St. Elizabeth are similarly situated to the Named Plaintiffs.

The law supports this conclusion.  Specifically, Plaintiffs must do more than raise the mere existence of other allegedly similarly situated individuals—they must show other such individuals seek to join the lawsuit.  *See Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164–65 (D. Minn. 2007) (noting that a named plaintiff "must proffer some evidence that other similarly situated individuals ***desire*** to opt in to the litigation") (emphasis added); *see also Howe*, 2018 WL 6521496 (rejecting conditional certification where after 1.5 years of discovery, the plaintiff had only spoken with *two* individuals who expressed interest in joining the litigation). Without any evidence that others actually seek to join this litigation, there is "no basis upon which the Court could conclude that the action" is "an 'appropriate case' for collective-action treatment."  *Parker*, 492 F. Supp. 2d at 1165, 1166 (compiling cases requiring evidence that other individuals seek to join the lawsuit to allow for conditional certification of a proposed collective); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) ("Others' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants.").

Courts must "avoid the 'stirring up' of litigation through unwarranted solicitation." *Valcho v. Dallas Cty. Hosp. Dist.,* 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008) (quoting *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995)); *Sloane v. Gulf Interstate Field Servs., Inc.*, Case No. 16-1571, 2017 WL 1105236, at *7 (M.D. Pa. March 24, 2017).  In addition, Plaintiffs must show others seek to join the litigation "to ensure…the collective action mechanism is being used appropriately to promote judicial efficiency rather than as a tool to

26

burden a defendant and create settlement pressure." *Herron v. Peveto Cos., Ltd.*, No. H-15-766, 2016 WL 3166850, at *2 (S.D. Tex. June 7, 2016).

As earlier noted, Plaintiffs have presented the Court with a veritable case study as to when conditional certification is inappropriate. Quite simply, no one other than Plaintiffs are interested in opting-in to this lawsuit, and Plaintiffs represent a teeny-tiny fraction of the proposed collective they seek to represent—and their experiences in the St. Elizabeth IR Department do not represent the experiences of any other nurses employed by Defendants. The Court should decline Plaintiffs' invitation to "stir up" litigation that amounts to an unwarranted solicitation. *Valcho*, 574 F. Supp. 2d at 622; *Sloane*, 2017 WL 1105236, at *7. Accordingly, conditional certification should be denied.

### D. Individualized issues predominate, rendering treatment as a collective action inappropriate.

Even among the Named Plaintiffs, individualized issues exist and predominate such that Plaintiffs' Motion must be denied. "Courts have ruled that where FLSA claims require significant individual determinations and considerations, they are inappropriate for conditional certification under section 216(b)." *Hinojos v. Home Depot, Inc.,* 2006 WL 3712944, at *2 (D. Nev. 2006); *see also Martinez*, 265 F.R.D at 497 ("If a trial would require 'individualized determinations to resolve the claims of each plaintiff, certification as a collective action may be inappropriate.'") (quoting *Purdham v. Fairfax Cty. Pub. Schs.*, 629 F. Supp. 2d 544, 551 (E.D. Va. 2009)). "Opt-in plaintiffs performing different jobs who are subject to different job actions with various decisions by different supervisors made on a decentralized employee-by-employee or team-by-team basis are not appropriate for class treatment." *King v. West Corp.*, No. 8:04-CV-

27

74080296

381, 2006 WL 118577, at *15 (D. Neb. Jan. 13, 2006) (citing *Koren v. SUPERVALU, Inc.*, 2003 WL 1572002, * 16 (D. Minn. 2003)).[23]

Even if Plaintiffs could establish a common, unlawful policy applicable across the proposed collective, which they cannot for the reasons previously set forth, an examination on a nurse-by-nurse, instance-by-instance basis over the look-back period of at least two years would be necessary to determine the extent of any liability or damages. Plaintiffs themselves have conceded the complexity, rigorousness, and individualized nature of such a task. (Ex. D, Endicott Depo. 255:1-256:8; Ex. E, Martin Depo. 244:17-250:2; Ex. F, Nabity Depo. 86:4-88:1; Ex. H, Walkinshaw Depo. 178:5-12; Ex. C, Ellwanger Depo. 179:7-180:6) For example, both Plaintiffs Walkinshaw and Martin specifically admitted that each nurse's situation would be unique. (Ex. H, Walkinshaw Depo. 178:5-7; Ex. E, Martin Depo. 245:17-20)

Specifically, the Court would have to examine the training of each nurse employee at each location and department, the reporting decisions of each nursing employee, and the participation of any such nurse employee in On-Call Work, as very few nurses across CHI Health are even eligible or able to perform On-Call Work.[24] To make any liability and damages

---

[23] *See King*, 2006 WL 118577, at *15 (gathering cases where individual issues in regard to factual situations, including facts regarding amount of time worked, various supervisors and decisions, day-to-day tasks, etc., precluded treatment as a collective action); *see also Richardson*, 2012 WL 334038, at *4 (where only three or four managers supervising a minimal number of the proposed collective allegedly required or condoned unpaid off-the-clock work, the court found it "clear that resolution of each plaintiff's claim [would] require individualized inquiries about his or her specific manager's policies and practices"); *Castle*, 2008 WL 495705, at *5 (finding differing policies and practices in branches and districts and the various circumstances under which unpaid overtime was allegedly worked weighed against conditional certification); *see also id.* (collecting cases denying conditional certification in "off the clock" cases where individual issues predominated).

[24] Only certain nurse employees are even eligible to work on-call shifts; even fewer of those nurses would ever need to—or be able to—perform any work remotely. (Ex. A. Austin Dec. at ¶¶ 10-13) Plaintiffs have acknowledged they have no firsthand knowledge of whether any nurses outside the IR Department at St. Elizabeth even participate in On-Call Work whatsoever though they have attempted to introduce endoscopy as a department that might. At best, a couple of Plaintiffs testified that Endoscopy *employees* (as opposed to nurses) might. There is certainly *no testimony* that any nurse outside the IR Department was prohibited from

determination for any individual nurse, both Plaintiffs and Defendants agree that the Court will have to perform a complicated inquiry on a nurse-by-nurse basis:

- First, the Court must determine whether a nurse was working an on-call shift.

- Then, it must be determined if during that on-call shift the nurse performed any On-Call Work. For each *potential* instance of On-Call Work, the Court must determine if the nurse performed compensable work related to her nursing position without returning to the hospital; that is, did the nurse receive a phone call, text message, email, or perform some other task remotely?

- If the answer is in the affirmative, for each instance of On-Call Work, the length of time spent performing such work must be determined.

- Then it must be determined whether the nurse was already clocked into the Kronos timekeeping system such that she was already receiving pay for the compensable work. If the nurse was not, the Court must determine whether the nurse already received compensation for that time worked (because a time card edit was properly submitted and appropriate compensation was paid).

- Lastly, because Plaintiffs' claim pursuant to the FLSA involves *only* overtime, it will then have to be determined whether any uncompensated On-Call Work (the actual minutes of the compensable work time) resulted in the nurses' total time worked in the applicable workweek to exceed over 40 hours and only if so, calculate any overtime wages owed to the nurse.

(*See generally* Ex. D, Endicott Depo. 255:1-256:8; Ex. E, Martin Depo. 244:17-250:2; Ex. F, Nabity Depo. 86:4-88:1; Ex. H, Walkinshaw Depo. 178:5-12; Ex. C, Ellwanger Depo. 179:7-180:6)  This process must be repeated for every instance of On-Call Work.

Moreover, given the significant number of individual determinations that would be required to resolve each nurse's claims, there likewise would be a significant number of individualized defenses to those claims, again rendering this litigation inappropriate for treatment as a collective action. *See, e.g.*, *King*, 2006 WL 118577, at *15. Case-by-case examinations

---

reporting On-Call Work. *See supra* fn. 7. This lends itself to a situation which would require the Court to determine which nurse employees were eligible to work on-call shifts and which of them were able to, and *did*, perform any of their work tasks remotely – leading not only to individualized inquiries, but also rendering the proposed collective overbroad on its face, as merely working an on-call shift or being subject to the On-Call Policies does not mean a nurse performed, or could perform, On-Call Work (and, further, whether such work pushed them into overtime hours for a workweek).

must occur to determine whether individuals made decisions of their own accord regarding their reporting or recording of On-Call Work and the time spent doing so. *See, e.g.*, *Saleen*, 2009 WL 1664451, at \*5 (noting conditional certification inappropriate where opt-ins gave wide-ranging reasons as to why they failed to record when they worked through lunch breaks). Case-by-case examinations must also occur to determine whether any such On-Call Work would fall within a *de minimis* exception under the FLSA. *See* 29 C.F.R. § 785.47; *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 468 (S.D.N.Y. 2011) (noting the extent to which work was *de minimis* would "necessarily vary widely according to the particular situation of each individual plaintiff" and thus weighed "heavily against proceeding" as a collective action).

Simply put, what amounts to essentially endless individualized determinations and individualized potential defenses render this case inappropriate for collective treatment.

## IV.   PLAINTIFFS' PROPOSED NOTICE AND METHOD OF DELIVERY ARE INAPPROPRIATE.

Plaintiffs' proposed notice is fundamentally flawed. If the Court grants conditional certification, the Court should direct the parties to meet and confer within thirty days on the form of the Notice and Consent to Join Form.

If the Court chooses, however, to revise the Notice, it should, at least:

- **Limit the collective period.** The appropriate collective period should be three years from the date the Court enters any conditional certification order. *Holaway v. Stratasys, Inc.*, No. CV 12-998, 2012 WL 12895690, at \*4 (D. Minn. Oct. 30, 2012).

- **Limit the notice period to 45 days.** There is no legitimate reason for the notice period to be open for two months (60 days). *See Martinez*, 265 F.R.D. at 501 (reducing plaintiffs' proposed 120-day notice period to 45 days); *Greenwald v. Phillips Home Furnishings, Inc.*, No. 4:08-cv-1128, 2009 WL 1025545 (E.D. Mo. Apr. 15, 2009) (approving a 45-day opt-in period).

- **Limit the collective definition.** The initial definition of the proposed notice includes no reference to "On-Call Work" or work performed remotely, which is the only type of work at issue in this litigation. Rather, the definition is overbroad and includes a reference to performing "work while on call," which could include *any* work during an on-call shift, including call-back work (when a nurse physically returns to a hospital, clocks-in using Kronos,

30

and is not engaged in On-Call Work), which is *not* at issue in this litigation.  Likewise, the notice does not properly refer to potential collective members to exclude those who properly reported and were paid for On-Call Work, none of whom should be allowed to join the litigation.  Plaintiffs' proposed consent to join form includes the same errors.

- **Limit the Notice to the FLSA claim at issue.**  The proposed notice refers to Plaintiffs' state law claims, which are not the subject of Plaintiffs' Motion for Conditional Certification, nor should they be part of any notice of conditional certification.  Likewise, the proposed notice refers to potential recovery of a "penalty," but the FLSA does not provide for any such penalty; accordingly, any reference to penalty should be deleted from the notice.

- **The Notice should not contain legal advice.**  Sections 3 and 4 of Plaintiffs' proposed notice include legal advice, including information regarding timing of filing consent to join forms, evidence required to establish a claim, and the effect of any prior settlement agreements with Defendants.  Such information is beyond that which is appropriate for inclusion in a Court-ordered notice, and should be deleted from the notice.

- **The Notice should not promise any recovery.**  In Section 5 of the proposed notice, the language reads as follows: "If Plaintiffs recover money from Defendants, you *will* be able to receive a share."  (emphasis added)  The Court-approved notice should not promise any such recovery, and should instead read, "…you *may* be able to receive a share" to account for the possibility that a collective member may not have any uncompensated On-Call Work.

- **The Court cannot evaluate and approve Plaintiffs' proposed website "To be inserted."**  Defendants cannot meaningfully respond to Plaintiffs' proposed website, which includes no information beyond "To be inserted."  Plaintiffs fail to identify what information they propose including on the website such that neither the Court, nor Defendants, can evaluate the proposed website.  This, alone, demonstrates why the parties should be ordered to meet and confer regarding all aspects of a proposed notice.  To the extent the Court allows any such website, it should be limited to the exact same information included on any Court-approved "paper notice."

- **The collective list should be limited to information needed to effectuate notice (*i.e.,* names and home addresses), and dissemination of notice should be limited to First Class Mail.**  Plaintiffs want to use regular mail *and* email to provide notice and to then send reminder notices through regular mail and email.  This is excessive and unwarranted.  *See Sharma v. Burberry Limited*, 52 F. Supp.3d 443, 464 (E.D.N.Y. 2014) (denying request for email notice).  Not only is email notice unnecessary, it is not practical given that Defendants do not actively maintain a listing of personal email addresses for employees.  Likewise, Defendants should not be required to provide partial Social Security Numbers or phone numbers for returned notices as class administrators routinely engage in skip-tracing methods without such information.  *See Christiansen v. Glazer*, No. 12-01283, 2013 WL 12142838, at *5 (W.D. Mo. Sept. 4, 2013) (denying disclosure of social security numbers); *Littlefield v. Dealer Warranty Servs.*, *LLC*, 679 F. Supp. 2d 1014, 1018 (E.D. Mo. 2010) (denying request for employees' personal telephone numbers).  To the extent such information is required for returned notices, providing such information to Plaintiffs' counsel within five calendar days is not reasonable, and any such time period should be extended to at least seven (7) business days.

31

• **A reminder notice is not necessary.**  A reminder notice could be seen as judicial endorsement of the litigation.  *Latcham v. U.S. Pizza Co., Inc.*, No. 4:16-CV-00582, 2017 WL 5662350, at *3 (E.D. Ark. June 5, 2017).  Accordingly, no reminder notice should be ordered by the Court.

• **Add language.**  The Notice should provide that "[i]f you join this lawsuit, you will be a party plaintiff and you may be required to respond to written questions, produce documents related to your claims, testify under oath during a deposition or in court about your work habits, or any combination of those things." *See Knaack v. Armour-Eckrich Meats, LLC*, 991 F. Supp.3d 1052, 1061 (D. Minn. 2014).

• **Plaintiffs' proposed consent to join form should include the correct collective definition.**  As a threshold matter, Plaintiffs' proposed consent to join wholly fails to mention the word "nurse."  Likewise, the consent to join form includes a vague and undefined reference to "was compensated under the hourly rate of pay," which is not part of the collective definition in any way.  The consent to join form should be edited to mirror the collective definition approved by the Court.

• **The consent to join form must be limited to the Court-approved collective.** Plaintiffs' proposed consent to join form includes the language, "I also consent to join any separate or subsequent action to assert my claims against CommonSpirit Health, CHI Nebraska, SERMC and/or any related entities or persons potentially liable," which, on its face, is overbroad.  Plaintiffs cannot circumvent the opt-in procedures required under Section 216(b) utilizing this proposed language for *future* actions, which are not conditionally certified or certified in any shape or form by the Court.

## V.    CONCLUSION

The Named Plaintiffs complain that they did not enjoy the benefit of a *lawful* Policy that was intended to pay them generously for On-Call Work, which – in theory – could have impacted their eligibility for overtime under the FLSA.  Plaintiffs uniformly acknowledge the *lawful* Policy, and uniformly testified that **in their IR Department at St. Elizabeth their IR Director** prohibited them from reporting On-Call Work.  They point to *no other potential violation* of the *lawful Policy* because there was no violation outside of St. Elizabeth's IR Department. That is the beginning and end of the story.  The *lawful* Policy itself, evidence regarding training, evidence of completed time edit logs, evidence of remedying the IR Department deviance, and counseling of the IR Department Director all in are *direct contradiction* of Plaintiffs' unsupported theory of an enterprise wide policy to violate the *lawful*

32

Policy. Conditional certification is inappropriate and unjust. The common On-Call Work Policy was *lawful,* and Plaintiffs provide no evidence of a violation of that *lawful* Policy outside the St. Elizabeth IR Department. The evidence is otherwise. Plaintiffs (arguably) are similarly situated to one another, and (inarguably) that is it.

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Conditional Certification and for such other relief as the Court deems appropriate given the record evidence set forth herein.

Respectfully submitted,

POLSINELLI PC

By: */s/ Karen K. Cain*
KAREN K. CAIN (admitted D. Neb. 2.14.19)
JASON N.W. PLOWMAN (NE #26652)
EMMA R. SCHUERING (admitted D. Neb. 2.14.19)
MATTHEW P.F. LINNABARY (admitted D. Neb. 2.14.19)
900 W. 48th Place, Ste. 900
Kansas City, MO 64112
(816) 753-1000
Fax: (816) 753-1536
kcain@polsinelli.com
jplowman@polsinelli.com
eschuering@polsinelli.com
mlinnabary@polsinelli.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF COMPLIANCE

Defendants offer this Certificate of Compliance in accordance with Local Rule 7.1(d)(3). Defendants' Brief in Opposition to Plaintiffs' Motion for Conditional Certification contains **12,688** words and complies with the word limits of Local Rule 7.1(d)(1)(A). Undersigned counsel relied on the word-count function of Microsoft Word 2010 to calculate the number of words contained in Defendants' Brief, and the function was applied to include the caption, headings, footnotes, and quotations.

*/s/    Karen K. Cain*
Attorney for Defendants

33

74080296

## CERTIFICATE OF SERVICE

The undersigned hereby certify that on the 24th day of August, 2020, a true and correct copy of the above and foregoing was electronically filed with the Clerk of the Court by using the Court's eFiling System, which sends a notice of electronic filing constituting service to the following:

Kathleen M. Neary
Vincent M. Powers
Powers Law
411 South 13th Street, Ste. 300
Lincoln, NE  68508
(402) 474-8000
Kathleen@vpowerslaw.com
Vince@vpowerslaw.com

ATTORNEYS FOR PLAINTIFFS

R. Joseph Barton
Vincent Cheng
Block & Leviton LLP
1735 20th Street NW
Washington, DC 20009
(202) 734-7046
jbarton@blockesq.com
vincent@blockesq.com

Vincent Cheng
Block & Leviton LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
vincent@blockesq.com

ATTORNEYS FOR PLAINTIFF

 _/s/     Karen K. Cain_                            _____ 
Attorney for Defendant

34