IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NICHOLE WALKINSHAW, et al.,

                Plaintiffs,

      vs.

SAINT ELIZABETH REGIONAL MEDICAL
CENTER, COMMONSPIRIT HEALTH f/k/a
CATHOLIC HEALTH INITIATIVES, and CHI
NEBRASKA f/k/a CHI HEALTH,

                Defendants.

**4:19-CV-3012**

**MEMORANDUM & ORDER**

## I.  INTRODUCTION

This case involves Plaintiffs, nurses employed by Defendants, claiming they have been improperly compensated under federal and state labor laws. It comes before the Court on defendant CommonSpirit Health's second Motion to Dismiss for Lack of Personal Jurisdiction, Filing 120; Plaintiffs' Motion for Conditional Collective Action Certification under the Fair Labor Standards Act ("FLSA"), Filing 98; Plaintiffs' Motion to Exclude or Limit the Testimony of Aaron Austin, Filing 131; and Plaintiffs' Motion for Leave to File a Response to Surreply in Support of FLSA Certification, Filing 152. For the reasons stated herein, the Court finds it has personal jurisdiction over defendant CommonSpirit and denies its motion to dismiss. The Court finds that Plaintiffs should be granted conditional collective-action certification under the FLSA. In light of its finding on certification, the Court concludes that the motion to exclude Aaron Austin's testimony should be denied and Plaintiffs' request for a sur-surreply is moot.

## II.  BACKGROUND

Named Plaintiffs are seven nurses who work at Saint Elizabeth Regional Medical Center ("SERMC") in Lincoln, Nebraska. Filing 115 at 7-8. SERMC is a Nebraska corporation and is

directly owned by CHI-Nebraska d/b/a CHI-Health ("CHI-Health"). Filing 115 at 12. CHI-Health is a Nebraska corporation and, until recently, was a subsidiary of Catholic Health Initiatives ("CHI"). Filing 115 at 11. After a merger between CHI and another health system, Dignity Health, CHI-Health and SERMC became part of CommonSpirit Health ("CommonSpirit"). Filing 115 at 9. CommonSpirit is a corporation registered in Colorado and headquartered in Illinois. Filing 115 at 9.

The seven named plaintiffs, Nicole Walkinshaw, Tysha Bryant, April Endicott, Heather Nabity, Meghan Martin, Alandrea Ellwanger, and Troy Stauffer, all worked for SERMC at various points from 2015 to 2019. Filing 115 at 7-8. Since approximately 2015 Defendants have followed an "On-Call Policy" which governs nurses' compensation for time spent on call. Filing 115 at 19. Pursuant to the on-call policy, nurses are required "to be available for work at times other than during their regular-scheduled shifts." Filing 115 at 19. This can include being called back into their physical work stations or simply responding to telephone calls, text messages, and emails remotely. Filing 115 at 19-20. From February 6, 2015, until September 30, 2018, Defendants' policy was to pay Plaintiffs $2.00 an hour for on-call work performed during weekdays and $2.50 per hour for on-call work on weekends. Filing 115 at 20. In March 2016, Defendants adopted a written on-call policy which required nurses to be paid time and a half their regular rate for remote on-call work. Filing 115 at 20. Despite this policy, Plaintiffs allege they continued to be compensated for remotely performed on-call work at a rate between $2.00 and $2.50 per hour. Filing 115 at 20-22. The policy was amended in 2017. Filing 115 at 22-23.

In October of 2018, the on-call policy was again amended. Filing 115 at 24. The 2018 policy had many of the same requirements as the previous policies but changed on-call work compensation to "$3.00 per hour for 0 to 50 on-call hours and $4.00 per hour for 51-plus-on-call

hours." Filing 115 at 25. The 2018 Policy was still in effect on June 24, 2019, the date of the filing of the Amended Complaint. Filing 115 at 25.

Plaintiffs bring claims against SERMC, CHI-Health, and CommonSpirit for alleged violations of the Fair Labor Standards Act (FLSA), the Nebraska Wage and Hour Act (NWHA), the Nebraska Wage Payment and Collection Act (NWPCA), for breach of contract, and unjust enrichment. Filing 115 at 52-72.

CommonSpirit filed a motion to dismiss for lack of personal jurisdiction on August 1, 2019. Filing 44. The Court denied its motion on December 20, 2019, finding Plaintiffs had asserted facts adequate to establish personal jurisdiction over CommonSpirit. Filing 60 at 5-10. On August 10, 2020, Plaintiffs filed their Second Amended Complaint which is the present operative complaint. Filing 115. Thereafter, CommonSpirit again moved to dismiss for lack of personal jurisdiction. Filing 120.

Plaintiffs also move for conditional collective action certification under the FLSA, Filing 98, which Defendants oppose, Filing 116. Defendants sought and were granted leave to file a surreply with respect to Plaintiffs' conditional certification motion. Filing 145; Filing 146. Plaintiffs now seek leave to file a further reply to Defendants' surreply. Filing 152. Lastly, Plaintiffs seek to exclude the testimony of Aaron Austin which Defendants submitted in opposition to Plaintiffs' conditional certification motion. Filing 131.

### III.    ANALYSIS

### A.  Motion to Dismiss

*1.  Standard of Review for Motion to Dismiss for Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2)*

In order to defeat a motion for lack of personal jurisdiction, a plaintiff must plead "sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (alteration in original) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). When jurisdiction is at issue, "the nonmoving party need only make a prima facie showing of jurisdiction." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). The nonmoving party's prima facie showing is analyzed "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever*, 380 F.3d at 1072 (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 260 (8th Cir. 1974)). "[T]he court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Pangaea, Inc.*, 647 F.3d at 745 (quoting *Dakota Indus., Inc.*, 946 F.2d at 1387).

2.  *Personal Jurisdiction over CommonSpirit*

As set forth above, CommonSpirit previously moved to dismiss based on lack of personal jurisdiction and the Court concluded its motion should be denied because Plaintiffs alleged CommonSpirit had "contacts with Nebraska in relation to the subject matter of the present lawsuit." Filing 60 at 10. In its renewed motion to dismiss for lack of personal jurisdiction, CommonSpirit does not present any new facts or arguments in support of dismissal, but rather reasserts its same claims with respect to Plaintiffs' Second Amended Complaint.[1] *See* Filing 121 at 1 (CommonSpirit's brief in support of second motion to dismiss stating its "previously asserted

---

[1] Upon review, Plaintiffs' Second Amended Complaint does not alter any of the facts regarding jurisdiction as they relate to CommonSpirit. *Compare* Filing 25, *with* Filing 115. Thus, the facts and arguments regarding dismissal are nearly identical to those presented in CommonSpirit's first Motion to Dismiss.

arguments about the lack of personal jurisdiction remain applicable"). Because the Second Amended Complaint establishes personal jurisdiction over CommonSpirit for the same reasons the first complaint did, the Court again denies CommonSpirit's motion.

As set forth in great detail in the Court's prior order addressing personal jurisdiction over CommonSpirit, Filing 60 at 5-10, Plaintiffs do not need to pass a high burden to establish jurisdiction over a defendant at the motion-to-dismiss stage; only a prima facie case is required. *See Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (stating that for purposes of a motion to dismiss for lack of personal jurisdiction, "the plaintiff must make a prima facie showing" (citation omitted)). To assess whether a Court has personal jurisdiction over a nonresident defendant, "the Court must determine whether: (1) the requirements of the Nebraska long-arm statute are satisfied; and (2) the exercise of jurisdiction is permitted by the Due Process Clause of the Fourteenth Amendment." *Fastrich v. Cont'l Gen. Ins. Co.*, 2017 WL 3610535, at *3 (D. Neb. Aug. 21, 2017) (citing *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007)). Nebraska courts have interpreted the state's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016), to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). Thus, the Court need only determine whether the assertion of jurisdiction over CommonSpirit comports with constitutional limits.

As with Plaintiffs' first complaint, the Second Amended Complaint presents only an argument for specific personal jurisdiction over CommonSpirit, not general personal jurisdiction. "When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction." *Epps v. Stewart Info. Servs.*

5

*Corp.*, 327 F.3d 642, 648 (8th Cir. 2003) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 1872 n.8, 80 L. Ed. 2d 404 (1984)).

The Eighth Circuit uses a five-factor test when evaluating a defendant's contacts with the forum state for purposes of determining whether personal jurisdiction exists. *Epps*, 327 F.3d at 648.

> Those five factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.

*Id.* (citing *Burlington Indus., Inc. v. Maple Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). "The first three factors are primary factors, and the remaining two factors are secondary factors." *Johnson*, 614 F.3d at 794. In making a determination, Courts should "look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *K-V Pharm.*, 648 F.3d at 592-93.

Where the defendant in question is a nonresident parent corporation, personal jurisdiction can be established either by demonstrating the defendant is the resident subsidiary's "alter ego" or by showing the nonresident parent corporation had its own contacts with the forum state sufficient to establish personal jurisdiction. *Compare Epps*, 327 F.3d at 648-49; (personal jurisdiction established via piercing the corporate veil), *with Anderson v. Dassault Aviation*, 361 F.3d 449, 453 (8th Cir. 2004) (personal jurisdiction established via parent company's own contacts).

Here, all seven Plaintiffs have worked for SERMC in Nebraska during some point relevant to this litigation. Filing 115 at 7-8. SERMC is directly owned by CHI-Health. Filing 115 at 12. CHI-Health is a Nebraska corporation. Filing 115 at 11. According to the Second Amended Complaint, CHI-Health "created, implemented, and enforced the On-Call Policy governing the conditions and compensation of on-call time" and "directly employed the supervisors of all named

Plaintiffs." Filing 115 at 12. Finally, CHI-Health was a subsidiary of CHI and is now part of CommonSpirit. Filing 115 at 11. "Within 36 months of the January 31, 2019 closing date, 'substantially all of CHI's regional and hospital corporations . . . will merge into' CommonSpirit." Filing 115 at 9 (alteration in original). According to Plaintiffs, CommonSpirit and CHI were responsible for issuing bi-monthly pay stubs to Plaintiffs and maintaining employment and compensation records for Plaintiffs. Filing 115 at 33.

In addressing the first factor, the nature and quality of CommonSpirit's contacts with Nebraska, Plaintiffs have again pled enough facts to establish a prima facie case that CommonSpirit is subject to specific personal jurisdiction in Nebraska. For most of the timeframe alleged in the Second Amended Complaint, CHI was the parent company of CHI-Health. Filing 115 at 11. CHI was renamed CommonSpirit in January of 2019. Filing 115 at 5. CHI transferred its ownership of hospitals, medical facilities, clinics, and other health-related businesses throughout the country to CommonSpirit. Filing 115 at 5. CommonSpirit is the sole corporate member or controlling shareholder of CHI-Health and SERMC and employs Plaintiffs in Nebraska. Filing 115 at 10. While mere ownership of a subsidiary is not enough to confer personal jurisdiction over a foreign corporation, Plaintiffs allege CommonSpirit has more involvement in Nebraska than a mere ownership interest. After the merger, CommonSpirit's operations in Nebraska continued to use the CHI name. Filing 115 at 9. CommonSpirit issued bi-monthly pay stubs to Plaintiffs. Filing 115 at 33. CHI and CommonSpirit have been and continue to be responsible for Plaintiffs' working hours including maintaining wage rates and hours of work performed by Plaintiffs. Filing 115 at 32-33.

As with the Amended Complaint, Plaintiffs' Second Amended Complaint alleges facts establishing that CommonSpirit was far more involved than being a mere owner of CHI-Health

and SERMC. CommonSpirit had involvement in the payment and recordation of Plaintiffs' work. CommonSpirit does significant business in Nebraska which is not "fortuitous" and could have reasonably expected the nature of its contacts to give rise to liability in Nebraska.

The second and third factors, the quantity and relationship of the contacts to Plaintiffs' claims, also favor a finding of personal jurisdiction over CommonSpirit. The underlying theme of Plaintiffs' claims is undercompensated overtime work. *See generally* Filing 115. Plaintiffs allege that prior to the merger, CHI paid their salaries and that CommonSpirit has now taken over that duty. Filing 115 at 7, 10-11. This supports the reasonable conclusion that (1) prior to the merger, CHI paid the wages of nurses employed at its Nebraska hospitals and related health facilities, and (2) since the merger, CommonSpirit—which was formed by renaming CHI and through the "reorganization and renaming of CHI's current corporation"—has performed these functions. Filing 115 at 9. CommonSpirit, by paying the Plaintiffs, would reasonably have many contacts with Nebraska and those contacts relate to the core of this suit, thus establishing specific personal jurisdiction.

Finally, the last two factors, the interest of the forum state in providing a forum for its residents and convenience of the parties, also favor a finding of personal jurisdiction. Nebraska courts have an interest in enforcing federal and state statutes designed to protect Nebraska workers as well as enforcing contracts whose breach has allegedly infringed on Nebraska citizens' rights. The convenience of the parties favors Plaintiffs as well. All the named Plaintiffs work in Nebraska. As a multi-state corporation which performs millions of dollars of business in Nebraska it cannot be said that CommonSpirit is unduly inconvenienced by litigating a suit in this forum.

Therefore, the Court determines it has specific personal jurisdiction over defendant CommonSpirit based on CommonSpirit's alleged contacts with Nebraska in relation to the subject

matter of the present lawsuit. The Court denies CommonSpirit's second Motion to Dismiss under 12(b)(2).

### B. Conditional Collective Action Certification under the FLSA

The FLSA requires employers to pay their non-exempt, hourly employees at one and half times the regular rate for time they work over forty hours per week. 29 U.S.C. § 207. Plaintiffs allege Defendants violated this provision by failing to properly compensate them for remote on-call work that, alone or in combination with in-person work, amounted to more than forty hours per week. Filing 115 at 54. Plaintiffs now seek to have this cause of action certified as a collective action under the FLSA. Filing 98 at 1-2. Plaintiffs proposed collective definition is:

> All persons who are or were jointly or severally employed by CommonSpirit and/or by its predecessor Catholic Health Initiatives, CHI Health, and/or SERMC (i.e., Saint Elizabeth Regional Medical Center), as medical nurses, who were paid an hourly wage, and who were subject to the On-Call Policy respecting compensation for On-Call Work, from the date of the Court's order granting conditional certification through the present, at the following locations: CHI Health Laboratory in Omaha, Nebraska; Creighton University Medical Center in Omaha, Nebraska; Good Samaritan Hospital in Kearney, Nebraska; Immanuel Hospital in Omaha, Nebraska; Lakeside Hospital in Omaha, Nebraska; CHI Health-Mercy in Corning, Iowa; Mercy Hospital in Council Bluffs, Iowa; Midlands Hospital in Papillion, Nebraska; CHI Health Missouri Valley in Harrison County, Iowa; CHI Health – Nebraska Heart in Lincoln, Nebraska; CHI Health – Plainview in Plainview, Nebraska; CHI Health in Schuyler, Nebraska; Saint Elizabeth Medical Center in Lincoln, NE; Saint Francis Hospital in Grand Island, Nebraska; and CHI Health – Saint Mary's in Otoe, Nebraska (collectively "the Locations").

Filing 98 at 1-2.

The FLSA authorizes employees to bring a collective action against employers for overtime violations on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Plaintiffs seek certification from the Court to proceed as such a collective action and to provide notice to putative class members. Filing 98. They argue the evidence shows

the named Plaintiffs and other nurses who worked for Defendants at their Nebraska and Iowa facilities were similarly situated in that they were required to perform remote on-call work resulting in overtime and were not properly compensated for it. Filing 99 at 13-15. Defendants argue Plaintiffs have not met their burden and that the named Plaintiffs were part of an anomalous group of nurses who were improperly paid but that all other nurse employees were correctly compensated. Filing 116 at 19-31.

*1. Additional Facts Relating to Conditional Certification*

In support of their motion for conditional certification, Plaintiffs submitted evidence in the form of copies of CHI's HR and on-call pay policies, job descriptions for the various nurses employed by CHI, copies of Defendants' answers to interrogatories, and declarations from the named Plaintiffs. *See generally* Filing 100.

The HR documents generally show that that since 2018, CHI has had written policies purporting to govern overtime and on-call pay. *See* Filing 100-2; Filing 100-3; Filing 100-4. The documents show that, at least on paper, CHI's policy was to fully pay nurses for on-call work performed both at the jobsite and remotely. Filing 100-2; Filing 100-3; Filing 100-4. For example, the 2018 "On-Call/Call/Back/Low-Census Call Pay" policy states that employees required to work while on call are paid at a rate of time and half. Filing 100-3 at 2. It states that this includes "work relating to the principal activities of a position that can be taken care of with a phone call or access to work from home." Filing 100-3 at 2.

The RN job descriptions show that nurse employees at various levels and in varying departments across CHI health were required to take on-call shifts. *See* Filing 100-5; Filing 100-6, Filing 100-7; Filing 100-8; Filing 100-9; Filing 100-10; Filing 100-11; Filing 100-12; Filing 100-13; Filing 100-14; Filing 100-15.

10

Plaintiff Tysha Bryant submitted a declaration in support of the conditional certification motion. Filing 100-22. In it, Bryant states she worked as an hourly rate registered nurse in the Interventional Radiology ("IR") Department at SERMC from September 2015 to December 2019. Filing 100-22 at 1. During this time, she was required to perform remote on-call work when working on-call shifts. Filing 100-22 at 2. Before October 2018, she was only paid her on-call rate ($2.00 per hour on weekdays and $2.50 per hour on weekends) for such remote work, despite CHI's written policy providing the contrary. Filing 100-22 at 3. According to Bryant, her remote on-call work was not included in computing her overtime pay during this timeframe. Filing 100-22 at 3.

Plaintiff April Endicott also submitted a declaration in support of the conditional certification motion. Filing 100-24. Endicott worked as an hourly rate registered nurse in the IR Department at SERMC from April 2017 to the time of her declaration in July 2020. Filing 100-24 at 1. Like Bryant, Endicott was required to perform remote on-call work and claims she was not properly compensated for such remote work, including not having it used to compute her overtime pay. Filing 100-24 at 2-3. Endicott also states, "I am aware that nurses in other departments at SERMC have been assigned on-call shifts and [been] required to perform on-call work [remotely]." Filing 100-24 at 3. In particular, she claims to "have had conversations with, for example, several nurses in the Endoscopy Department at SERMC who . . . told [her] that if nurses in the Radiology Department receive any back pay for their on-call work, they should too." Filing 100-24 at 3.

Heather Nabity, Meghan Martin, Alandrea Ellwanger, and Troy Stauffer, also named Plaintiffs in the case, submitted similar declarations echoing Bryant and Endicott's statements about being improperly compensated for remote on-call work resulting in overtime when they

11

were employed as hourly rate RNs in SERMC's IR Department during the 2015-to-2019 timeframe. Filing 100-26 at 1-3; Filing 100-28 at 1-3; Filing 100-29 at 1-3; Filing 100-30 at 1-3.

In addition to also describing her lack of pay for remote on-call work resulting in overtime, Martin states, "I am aware that nurses in other departments at SERMC have been assigned on-all shift and required to perform on-call work [remotely]." Filing 100-28 at 3. Martin also states that in February 2019, she had conversations with several nurses in the Endoscopy Department who learned they would not receive back-pay for their remote on-call work. Filing 100-28 at 3. Based on this, Martin believes other CHI nurses would be interested in joining the present lawsuit were it to be conditionally certified as a collective action. Filing 100-28 at 3.

Stauffer states that on several occasions in 2016 and 2017, he expressed concern to his supervisors that he and other staff nurses were not being properly compensated for remote on-call work. Filing 100-30 at 3. He was informed that "the employer was not going to change the pay practice for the work performed by on-call staff nurses and that nurses would not receive back pay." Filing 100-30 at 3.

Defendants submitted evidence in opposition to conditional certification attempting to refute Plaintiffs' claims of CHI nurses being similarly situated with respect to unpaid remote on-call work. *See generally* Filing 117. In particular, Defendants submitted a declaration from an HR executive, Aaron Austin, copies of CHI and SERMC's remote call work policies, sample timecard edits, and excerpts from Plaintiffs' depositions. Filing 117. Plaintiffs filed expanded excerpts of Plaintiffs' depositions in reply. *See generally* Filing 137.

Aaron Austin states that he has been the Chief Human Resources Officer for CHI Nebraska d/b/a CHI Health since March 2019. Filing 117-1 at 1. He states that different hospital departments and different hospitals within the CHI network have different requirements for their nurses,

including whether they perform remote on-call work and with what frequency. Filing 117-1 at 2-5. He claims that only nurses in SERMC's IR Department were improperly compensated for remote on-call work due to a decision by that department's "rogue" director prior to 2018. Filing 117-1 at 7. According to Austin, all other nurses were correctly compensated for remote on-call work resulting in overtime. Filing 117-1 at 7-8.

The on-call and back pay policies Defendants submitted support that, at least in writing, Defendants' policy was to pay nurses for remote on-call work, even during the timeframe at issue in the lawsuit. *See, e.g.*, Filing 117-3 (2012 on-call pay policy); Filing 117-4 (2016 on-call pay policy); Filing 117-5 (April 2017 on-call pay policy); Filing 117-6 (June 2017 on-call pay policy). The sample timecard edits show that at least on occasion, hourly nurse employees in various departments made edits to include or modify time for remote on-call work. Filing 117-11 at 3, 5, 9, 81.

The excerpts from the named Plaintiffs' depositions generally focus on the fact that the Plaintiffs' personal experience with unpaid remote on-call work was limited to SERMC's IR Department. Filing 117-13; Filing 117-14; Filing 117-15; Filing 117-16; Filing 117-17; Filing 117-18; Filing 117-19. Ellwanger testified that while she believed nurses in the recovery and short-stay units took call, she was unsure if this involved remote work or not as her personal experience involved only the IR Department. Filing 117-14 at 4-5. Nabity similarly testified that her only knowledge of unpaid remote on-call work was from her experience in SERMC's IR department. Filing 117-17 at 35. Stauffer also testified that when he worked in the Cardiology Department, he did not perform remote on-call work. Filing 117-18 at 16-17.

However, some of the depositions also show that Plaintiffs had knowledge of nurses in other departments performing remote on-call work and potentially being interested in receiving

13

back pay for such time, thus implying they were not properly compensated. For example, Bryant admitted that when she worked in another hospital in Defendants' network called Saint Francis she did not perform remote on-call work like she did in SERMC's IR department. Filing 117-13 at 18. However, when asked, "Do you have a belief as to whether [nurses in other departments] performed on-call work, as we've defined it today [to mean remote work], during . . . their own call shifts?" she responded, "I don't know the details of their work, but they did perform [remote] on-call work." Filing 117-13 at 8. She claimed to know this both through what a nurse named Tammy in SERMC's Endoscopy's Department told her and "from knowledge of what the department does." Filing 117-13 at 8. Similarly, when asked, "Do you know . . . whether other departments at Saint Elizabeth's prior to October 2018 were not receiving pay for on-call work," Endicott responded, "Yes." Filing 117-15 at 27-28. This was corroborated by her conversations with a nurse named Josh Kendall. Filing 117-15 at 26; Filing 137-6 at 14. Martin likewise testified she was aware of nurses in the Endoscopy, ICU, and PCU who were required to perform remote on-call work. Filing 117-16 at 5-6; Filing 137-7 at 20 (responding affirmatively when asked, "Do you have personal knowledge of [remote] on-call work performed in the endoscopy department by Josh or Anna or Annie?"). However, she was not aware if they were properly compensated for this work or not. Filing 117-16 at 9. Walkinshaw testified that she was aware through a nurse named Christi Sorensen that nurses in the Endoscopy Department were not paid properly for remote on-call work. Filing 117-19 at 8-9.

   *2.   Applicable Standard for Determining Conditional Certification*

   The practice of district courts in the Eighth Circuit is to take a two-step approach to determining whether conditional class certification is appropriate. *See, e.g.*, *Martinez v. Cargill*

14

*Meat Sols.*, 265 F.R.D. 490, 496 (D. Neb. 2009); *Littlefield v. Dealer Warranty Servs., LLC*, 679

F. Supp. 2d 1014, 1016 (E.D. Mo. 2010).

> First, early in the litigation process, the class is conditionally certified upon plaintiffs' showing that the proposed class is similarly situated. "The plaintiff's burden at [this] stage is not onerous." Conditional certification allows plaintiffs to move forward with identification of proposed class members and notification of the opportunity to opt-in. Once[] the proposed class members have been identified and have voiced their consent to participation and discovery has closed, defendants have the opportunity to move for decertification of the class. At that point, "the court must determine whether the plaintiffs are, in fact, similarly situated."

*Petrone v. Werner Enters., Inc.*, No. 8:11CV401, 2012 WL 4848900, at *2 (D. Neb. Oct. 11, 2012)

(first alteration in original) (quoting *Littlefield*, 679 F. Supp. 2d at 1016-17).

At the first stage, the Court's determination "may be based only on the pleadings and any

affidavits in the record." *Morales v. Greater Omaha Packing Co.*, No. 8:08CV161, 2009 WL

1650016, at *4 (D. Neb. June 9, 2009) (citing *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d

1159, 1164 (D. Minn. 2007)). The plaintiff has the burden of presenting evidence "establishing a

colorable basis that the putative class members are the victims of a single decision, policy, or plan."

*Id.* (quoting *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007)).

"[T]he court does not make any credibility determinations or findings of fact with respect to

contrary evidence presented by the parties at this initial stage." *Lopez v. Tyson Foods*, No.

8:06CV459, 2008 WL 3485289, at *8 (D. Neb. Aug. 7, 2008) (quoting *Burch*, 500 F. Supp. 2d at

1186). Rather, "[a] colorable basis means that plaintiff must come forward with something more

than the mere averments in its complaint in support of its claim." *Id.* (quoting *Severtson v. Phillips

Beverage Co.*, 141 F.R.D. 276, 278–79 (D. Minn. 1992)).

The parties disagree on the application of this two-step process. Plaintiffs urge the Court

to apply the more lenient "colorable basis" standard at this stage in the proceedings as the above

cases have done. They argue that this is the procedure other courts within this district and circuit

15

have followed in addressing FLSA collective action cases. *See* Filing 99 at 11-12 (citing *Petrone, 2012 WL 4848900*, at *2 and *Morales, 2009 WL 1650016*, at *4 for the two-step certification process in FLSA cases).

Defendants argue the Court should bypass the more lenient standard and instead apply what it calls an "intermediate standard" because discovery has been conducted. Filing 116 at 11. Defendants urge the Court "to consider the actual facts and evidentiary record." Filing 116 at 11. Defendants argue a more stringent standard is warranted because the parties have already conducted some discovery and "the Plaintiffs' testimony repeatedly demonstrates that the Court cannot blindly rely on the veracity of assertions in the Complaint." Filing 116 at 12.

Defendants' argument for a stricter standard at this stage of the litigation is without merit. First, although the parties did conduct some discovery prior to Plaintiffs' filing their certification motion, discovery is far from complete. *See* Filing 81 (parties' stipulation extending deadlines for first sets of written discovery to June 2020 and for Plaintiffs' conditional certification motion to July 20, 2020); Filing 101 (Defendants' certificate of service showing amended discovery responses not served until July 20, 2020, the deadline for filing the conditional certification motion); Filing 173 (certificate of service showing Defendants' Responses to Plaintiffs' Third Requests for Production of Documents served December 8, 2020); Filing 162 (setting fact and deposition discovery deadlines at October 11, 2021). A limited amount of discovery does not permit the Court to conduct the sort of thorough evidentiary weighing which will be appropriate at a later stage of the litigation. *See, e.g.*, *Morales, 2009 WL 1650016*, at *5 (stating the final determination is appropriate "after discovery is largely complete and the matter is ready for trial" (quoting *Parker*, 492 F. Supp. 2d at 1164)); *Lopez, 2008 WL 3485289*, at *9 (rejecting defendants' attempt to impose a more stringent standard for certification where "[a]lthough some discovery

16

has taken place, the discovery was not merits based or intended to be completed at this stage of proceedings").

Second, even applying the "colorable basis" standard for conditional certification, the Court does not "blindly rely" on the pleadings as Defendants claim. Filing 116 at 12. Rather, as set forth above, "[a] colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim." *Lopez*, 2008 WL 3485289, at *8 (alteration in original) (quoting *Severtson*, 141 F. R.D. at 278-79). Plaintiffs have indeed presented additional evidence which the Court examines to determine if they have met their burden. Defendants' arguments seem to be an attempt to have the Court disregard Plaintiffs' evidence in its entirety and credit Defendants' evidence that the non-payment of remote on-call work resulting in overtime was an isolated oversight in the SERMC IR Department. Filing 116 at 23-27. The Court declines to make such credibility determinations on the limited record at this stage; the proper inquiry is whether Plaintiffs have presented evidence by which the Court can determine the proposed class members are likely similarly situated.

### 3. Plaintiffs Have Met Their Burden of Showing Conditional Certification Is Warranted

Plaintiffs argue their evidence establishes the members of the proposed collective action are similarly situated in that they were all subject to Defendants' practice of not properly compensating hourly nurse employees for remote on-call work resulting in overtime. Filing 99 at 13-14. Defendants, in turn, argue collective-action treatment is inappropriate. Filing 116 at 18-30. They point to the written policies which provide for payment for on-call remote work as proof there is no uniform, unlawful policy for a collective action to address because the policy that Defendants did have in place was, in fact, lawful. Filing 116 at 20-22. They also argue that only nurses within SERMC's IR Department were improperly compensated for remote on-call work

and thus there are no additional potential opt-in plaintiffs to join a collective action because all other nurses were paid properly. Filing 116 at 22-27. Lastly, they argue that collective-action treatment is inappropriate because calculating the amount owed to each nurse for uncompensated work requires individualized, rather than class-wide, determinations. Filing 116 at 29-32.

Plaintiffs have demonstrated a colorable basis to believe that the named Plaintiffs and other hourly nurses employed by Defendants are similarly situated. Plaintiffs' evidence demonstrates that despite the written policy, Defendants' practice was to not properly compensate hourly nurses who performed remote on-call work resulting in overtime. All of the named Plaintiffs submitted declarations and deposition testimony corroborating this claim. Furthermore, despite Defendants' claims to the contrary, there is evidence that this problem was not isolated to SERMC's IR Department. In particular, there is evidence that nurses in other departments, such as SERMC's Endoscopy Department, were also required to perform remote on-call work for which they were not fully compensated and who thus might be potentially interested in opting into the present litigation. Filing 100-24 at 3; Filing 100-28 at 3; Filing 117-3 at 8; Filing 117-15 at 27-28; Filing 137-6 at 14; Filing 117-19 at 8-9; Filing 117-16 at 5-6; Filing 137-7 at 20. Although Plaintiffs do not have extensive evidence from nurses outside SERMC's IR Department at this time, such a showing is not required at this stage of the proceedings. *See, e.g.*, *Chin v. Tile Shop*, LLC, 57 F. Supp. 3d 1075, 1091 (D. Minn. 2014) (stating "[t]he existence of more than one or two plaintiffs in a FLSA case at the time of the conditional-certification inquiry has been found sufficient to warrant collective-action treatment, even without a showing that other individuals wish to opt-in" and collecting cases from the Eighth Circuit to this effect (quoting *Lyons v. Ameriprise Fin., Inc.*, No. 10–cv–503, 2010 WL 3733565, at *4 (D. Minn. Sept. 20, 2010))).

18

Defendants' arguments against conditional certification are without merit. First, as to the argument that there can be no collective action because CHI had a lawful policy in place to pay all employees for remote on-call work, the mere existence of a policy is not proof that it was followed in practice. "[T]he presence of a written policy is not evidence that the policy was enforced, and certainly does not negate the possibility of an unwritten policy or general practice to the contrary." *Oliphant*, 2019 WL 2088052, at *3 (quoting *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1304 (D. Kan. 2010)). Here, Plaintiffs have presented evidence to substantiate their claims of being undercompensated for remote on-call work resulting in overtime despite the existence of the policy requiring them to be paid. Indeed, Defendants even seem to concede that the named Plaintiffs were improperly paid, thus casting doubt that the payment policy was actually followed in practice as they elsewhere claim. *See, e.g.*, Filing 116 at 3 (conceding that nurses in the IR Department were subject to an unlawful practice when they were not compensated for remote on-call work).

Defendants next argue that collective-action treatment is unwarranted because there are no additional opt-in plaintiffs. Filing 116 at 22-29. They claim the IR nurses were subject to a "rogue" director who ordered them not to record remote on-call work, but that no other nurse employees outside the IR Department were subject to a similar practice. Filing 116 at 10. However, Plaintiffs have presented evidence demonstrating that nurses in other departments at SERMC, including Endoscopy, performed uncompensated remote on-call work and would potentially be interested in joining the present lawsuit as set forth above. While Plaintiffs may not have complete knowledge of how every department at each of Defendants' hospitals in Nebraska and Iowa treated remote on-call work, they need not present such extensive evidence at this stage. Plaintiffs' evidence is sufficient to meet their burden of showing a colorable basis to believe that there are similarly situated opt-in class members. Defendants' argument that only the IR nurses were subject to a

"rogue" director who limited their compensation calls for the Court to weigh the evidence and assess the credibility of these contradictory claims. Such an inquiry is inappropriate at the conditional certification stage.

Lastly, Defendants' argument that collective-action treatment is unwarranted because the case requires individualized inquiries is also without merit. Filing 116 at 29-32. While it is true that each Plaintiff or potential opt-in plaintiff may not have worked the same hours and been improperly compensated for the same amounts on the same dates, the overarching issue renders them similarly situated for purposes of conditional certification: all named Plaintiffs and potential collective-action opt-in members performed remote on-call work resulting in overtime which was improperly compensated. Any additional inquiry is inappropriate at this time. *See Ondes v. Monsanto Co.*, No. 4:11CV197 JAR, 2011 WL 6152858, at *6 (E.D. Mo. Dec. 12, 2011) ("[A]rguments concerning the individualized inquiries required . . . are inappropriate at [the conditional certification] stage of the proceeding and can be raised before the Court at the second, or decertification, stage." (quoting *Dominquez v. Minn. Beef Indus.*, No. 06–1002, 2007 WL 2422837 (D. Minn. Aug. 21, 2007))).

Accordingly, the Court determines Plaintiffs have met their burden of showing a colorable basis for the granting of conditional collective-action certification. However, Plaintiffs' proposed collective is overly broad for the FLSA allegation contained in the Second Amended Complaint and based on the evidence Plaintiffs submitted. While Plaintiffs proposed collective refers to all hourly rate employees "who were subject to the On-Call Policy respecting compensation for On-Call Work," Filing 98 at 1-2, Plaintiffs have only alleged and demonstrated a collective consisting of hourly rate nurse employees *who performed remote on-call work resulting in overtime and were not properly compensated for it*, which, as explained below, is what they state in their proposed

20

notice but not their motion. *Compare* Filing 98 at 1-2, *with* Filing 137-12 at 1-2. Stated differently, the collective-action is aimed at those nurse employees who were improperly compensated, not just employees who were subject to the on-call pay policy. Thus, the Court grants Plaintiffs' Motion for Collective Action Certification with this modified class definition to conform with the pleadings, evidence, and proposed notice. *See, e.g.*, *Oliphant*, 2019 WL 2088052, at *2-4 (modifying an overly broad collective definition to comport with the "pleadings, motions, and briefs" which made it clear plaintiff was actually seeking a narrower collective).[2]

### 4. *Proper Form of Notice to Putative Class Members*

Defendants argue that, if the Court grants conditional certification, it should modify Plaintiffs' notice in several ways. Filing 116 at 32-24. The Court addresses each of its arguments in turn.

Plaintiffs' submitted a proposed Notice and opt-in form, Filing 100-31; Filing 100-32, which they later amended, Filing 137-12; Filing 137-13. The Amended Notice form contains the case name and states that hourly rate medical nurses at CHI locations in Nebraska and Iowa may be eligible to join the collective action lawsuit seeking overtime pay. Filing 137-12 at 1-2. It states that "[s]ome current and former employees" have sued Defendants "alleging that these employees and other similarly situated employees should have been paid but were not paid for overtime work they performed . . . while they were on call." Filing 137-12 at 1. It goes on to specify that the Court has certified a collective action "on behalf of all hourly employees of Defendants who worked as medical nurses . . . and were subject to the on-call policy or practice respecting compensation for . . . work performed remotely, without reporting to their duty stations." Filing 137-12 at 1. It

---

[2] Plaintiffs seek leave to file a sur-surreply in support of their motion for certification. Filing 152. Given the Court's resolution of their motion, the request for sur-surreply is moot.

summarizes the causes of action, informs the potential opt-in plaintiffs of their ability to join the suit if they wish, and provides other relevant information. Filing 137-12 at 2-5.

"The FLSA requires that notice to potential plaintiffs be 'accurate and timely,' so that potential plaintiffs 'can make informed decisions about whether to participate.'" *Martinez v. Cargill Meat Sols.*, 265 F.R.D. 490, 499 (D. Neb. 2009) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)). District courts are permitted to approve both the content and method of disseminating notice to potential class members to "ensure[] that the notices are timely, accurate, and informative," which will help prevent later disputes. *Id.* The court must "scrupulously avoid endorsing or appearing to endorse the merits of the underlying claim." *Id.* (citing *Hoffmann-La Roche*, 493 U.S. at 174, 110 S. Ct. 482).

First, Defendants argue that the Court should limit the collective period to three years from the date the Court enters its conditional certification order. Filing 116 at 32. While Plaintiffs agree that a three-year period is accurate, they also point out that the parties have entered into a stipulation tolling the statute of limitations for any opt-in plaintiffs for sixty days prior to the filing of their consent form. Filing 81 at 4-5; Filing 85 at 2. Accordingly, no modification of Plaintiffs' proposed notice is necessary in this respect.

Defendants next argue the opt-in period should be limited to forty-five rather than Plaintiffs' proposed sixty days. Filing 116 at 32. While Defendants cite to cases in which courts have approved forty-five-day notice periods, Filing 116 at 32, Plaintiffs likewise cite to cases in which sixty-day opt-in periods have been approved, Filing 136 at 31. Defendants make no argument why the sixty-day proposed period is unreasonable. The Court thus declines to modify the notice period.

22

Defendants also argue the proposed notice language should be limited to remote on-call work. Filing 116 at 32. While the Court agrees that remote on-call work is what is at issue in the FLSA claim, this fact is apparent from reading Plaintiffs' notice in its entirety, rather than focusing on an isolated sentence as Defendants do. *See* Filing 137-12 at 1 (explaining the lawsuit involves those nurses who engaged in "work performed remotely, without reporting to their duty stations"). Thus, no modification of the Notice is necessary in this regard.

Next, Defendants argue that the Notice mentions that Plaintiffs' claims involve both FLSA and state-law claims and that such reference to the state-law claims should be removed. The purpose of the notice is to provide accurate information to potential class members, *Martinez*, 265 F.R.D at 499, and the mere mention that the case involves state-law claims is not inaccurate or misleading. The notice in its entirety sets forth with clarity the FLSA collective for which potential opt-ins are eligible and thus no modification of the notice in this regard is warranted.

Defendants argue next that the notice contains improper "legal advice" because it notifies potential opt-in plaintiffs of when the consent-to-join form must be filed, the "evidence required to establish a claim, and the effect of any prior settlement agreements with Defendants." Filing 116 at 33. The Court does not find this information to constitute legal advice, but rather to provide correct information on eligibility and the steps needed to be included in the collective action. Since this information is necessary and accurate, it will not be modified.

Next, Defendants argue that the notice should not promise recovery. Filing 116 at 33. They point to a sentence which reads, "If Plaintiffs recover money from Defendants, you will be able to receive a share." Filing 137-12 at 3. The notice as a whole makes it clear that the lawsuit has not been decided and no recovery is guaranteed. *See, e.g.*, Filing 137-12 at 2 ("The Court has not ruled on whether Plaintiffs or Defendants will prevail in this lawsuit . . . ."). The notice further states

that potential opt-ins must meet certain qualifications. *See* Filing 137-12 at 2-3. Thus, the notice as a whole makes it clear that recovery is not guaranteed, and it need not be modified.

Defendants next take issue with Plaintiffs including a proposed website in the notice. Filing 116 at 33. Defendants argue they have no information on what the website will contain. Filing 116 at 33. In their first proposed notice, Plaintiffs did not include the website address or a description. Filing 100-31 at 5. However, Plaintiffs later filed an amended notice which lists the website as "www.chiwagelitigation.com." Filing 137-12 at 5. They describe that the website will include a description of the lawsuit largely matching the language in the notice as well as links to the Complaint, Answer, and court Orders. Filing 137-1 at 3. Because this information is accurate and not misleading, the Court finds Plaintiffs should be allowed to include the website link in the notice.

Defendants next take issue with being required to provide Plaintiffs with the mailing addresses, email addresses, social security numbers, and phone numbers for potential opt-in plaintiffs within five calendar days of the Court's approval of the notice. Filing 116 at 31. They argue they should only be required to disclose the mailing addresses of potential opt-in employees and should be given seven business days to do so. Filing 116 at 31. The Court agrees that requiring Defendants to provide the social security numbers and telephone numbers of potential opt-in members is unnecessary and raises privacy concerns. *See, e.g.*, *Oliphant*, 2019 WL 2088052, at *4 (citing *Martinez*, 265 F.R.D. at 501) (denying the plaintiffs' request for disclosure of opt-ins' social security numbers and telephone numbers "because potential plaintiffs have a privacy interest in" this information). However, requiring Defendants to provide mailing and, to the extent they have them, email addresses will ensure timely and efficient dissemination of information about the suit. *See, e.g.*, *Oliphant*, 2019 WL 2088052, at *4 (requiring disclosure of potential plaintiffs' mailing

24

and email addresses); *Hussein v. Capital Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182, 1198 (D. Minn. 2015) ("Courts have frequently required the dissemination of notice in several forms to ensure that potential plaintiffs receive notice in a timely and efficient manner."). Additionally, given the Court is allowing the more generous sixty-day opt-in period, it concludes that allowing Defendants seven business days to produce the contact information rather than five calendar days is reasonable.

Defendants next object to Plaintiffs' request to send a reminder notice midway through the opt-in period because it is unnecessary and makes it appear the Court wants plaintiffs to join the suit. Filing 116 at 34. The Court agrees with those courts that have found reminder notices to be a reasonable and useful tool to ensure interested plaintiffs are able to timely opt-in to the litigation. *See, e.g.*, *Hussein*, 152 F. Supp. 3d at 1198 ("[S]ending a reminder letter, via mail and email, at approximately the 30-day point is reasonable."); *Ortiz-Alvarado v. Gomez*, No. CIV. 14-209 MJD/SER, 2014 WL 3952434, at *6 (D. Minn. Aug. 13, 2014) ("The Court concludes that one reminder notice is reasonable to ensure that potential class members do receive the Notice and, if they so desire, file a timely opt-in notice."). To the extent Defendants believe that sending a reminder could be viewed as the Court "endorsing" Plaintiffs' position, Filing 116 at 34, Plaintiffs' proposal to include a sentence stating, "This Notice Serves to Notify You of this Pending Lawsuit. The Court Does Not Encourage or Discourage Participation [i]n This Case" dispels any such concern.

Lastly, Defendants request the Court add language to the notice cautioning potential opt-in plaintiffs that by joining the collective action, they will be required "to respond to written questions, produce documents related to your claims, testify under oath during a deposition or in a court about your work habit, or any combination of those things." Filing 116 at 34. Because such

a warning could have a chilling effect on potential opt-in plaintiffs joining the suit, the Court declines to modify the notice to include such language. *See, e.g.*, *Oliphant*, 2019 WL 2088052, at *4 (declining to include language warning opt-in plaintiffs that they may have to participate in the discovery process out of concern it would have a deterrent effect).[3]

Accordingly, with the above modifications, Plaintiffs' proposed Amended Notice and Amended Request-to-Join forms, Filing 137-12; Filing 137-13, are approved.

### C.  Motion to Exclude

Plaintiffs seek to exclude the declaration testimony of Aaron Austin which Defendants presented in opposition to Plaintiffs' Motion for Conditional FLSA Collective Action Certification because Defendants did not properly disclose him in discovery. Filing 131. Defendants argue his declaration is properly before the Court. Filing 143.

Defendants first submitted evidence from Austin in the form of a declaration in opposition to Plaintiffs' certification motion as set forth in greater detail above. Filing 117-1. Prior to filing Austin's declaration, Defendants did not disclose Austin as an individual likely to have discoverable information in their Rule 26(a) disclosures. Filing 133-2; Filing 133-3. Plaintiffs argue that the Court should therefore exclude his declaration.

Federal Rule of Civil Procedure 26(a) requires a party "without awaiting a discovery request, to provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information" relating to that party's claims or defenses. Fed. R. Civ. P. 26(a). Further, if a party later learns that a disclosure is incomplete or

---

[3] Defendants also objected to Plaintiffs proposed consent-to-join form including the word "employee" rather than the phrase "nurse employee" and requiring plaintiffs to join future court actions that may arise out of this dispute. Filing 116 at 34. Plaintiffs conceded these points; their proposed Amended Consent-to-Join form specifies "nurse employee" now and no longer references joining future actions. Filing 137-13 at 1. Thus, the Court need not address these concerns further.

incorrect, it "must supplement or correct its disclosures . . . in a timely manner." Fed. R. Civ. P. 26(e)(1). However, additional disclosure is not required "if the additional or corrective information has . . . otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants do not dispute that they failed to disclose Austin by name in their Rule 26(a) disclosures. *See* Filing 143 at 2-4. Rather, Defendants argue that they complied with Rule 26(e) because Austin's potential knowledge of the case was "otherwise made known" to Plaintiffs when Austin signed the verifications of the answers to interrogatories which Defendants served on Plaintiffs on June 8, 2020. Filing 143 at 2-3. The verifications in question consist of Austin's illegible signature and his handwritten name stating that he avers the answers are true to the best of his knowledge and belief based upon the information reasonably available to him. Filing 133-3 at 14; Filing 133-4 at 14; Filing 133-5 at 14. The verification does not state Austin's title, clearly indicate the proper type-written spelling of his name,[4] or provide his phone number or address. Filing 133-3 at 14; Filing 133-4 at 14; Filing 133-5 at 14.

The Court is dubious that the verifications comply with Rule 26(e). The spelling of Austin's name is of questionable clarity and the verifications do not provide his contact information. *See* Fed. R. Civ. P. 26(a) (requiring the disclosing party to reveal the person's "name and, if known, the address and telephone number"). Austin's own declaration states he has been an HR officer since March 2019 and possessed information about pay practices dating back to 2016. Filing 117-

---

[4] Two of the verifications contain a stray pen mark next to Austin's handwritten name that make his surname appear to be spelled "Austini." Filing 133-4 at 14; Filing 133-5 at 14.

1 at 1-3. Thus, it appears his identity was well-known to Defendants and could have been disclosed at the time of making their initial or amended disclosures in February and March 2020, respectively, *see* Filing 67; Filing 74, or at some point prior to responding to the certification motion. Defendants' argument that the verification under the present circumstances complies with Rule 26(e) appears to be either an intentional tactic to conceal Austin's identity from Plaintiffs or an attempt to save face in light of their failure to make a proper, timely disclosure.[5]

Nevertheless, Defendants' use of Austin's testimony, even if his identity was improperly disclosed, is harmless. *See* Fed. R. Civ. P. 37(c)(1) (exclusion required unless the failure was substantially justified or is harmless). Austin's declaration states that nurses outside SERMC's Interventional Radiology Department were properly compensated for all remote on-call work. *See* Filing 117-1. However, Plaintiffs submitted evidence that nurses other than the named Plaintiffs were potentially being improperly paid for remote on-call work and thus might be opt-in plaintiffs to this lawsuit. *See, e.g.*, Filing 100-24 at 3; Filing 100-28 at 3; Filing 117-3 at 8; Filing 117-15 at 27-28; Filing 137-6 at 14; Filing 117-19 at 8-9; Filing 117-16 at 5-6; Filing 137-7 at 20. As set forth above, at this stage of the inquiry, the Court examines the evidence to determine whether Plaintiffs have met their burden for conditional certification, not to resolve conflicting evidence or make credibility determinations. *See Lopez*, 2008 WL 3485289, at *8 ("[T]he court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." (quoting *Burch*, 500 F. Supp. 2d at 1186)). Thus, even considering Austin's declaration, conditional collective-action certification is warranted for the reasons set

---

[5] This is not the first time in this case that the Court has found Defendants to have engaged in questionable litigation tactics. *See* Filing 60 at 16 (stating Defendants' misrepresentation of case law in this circuit "flouts [their] duty of candor to the Court"); Filing 60 at 14-15 n.5 ("Defendants' attempt to create an inconsistency [in Plaintiffs' evidence] where there is none is unconvincing and detracts from the persuasiveness of its other, more ethically sound arguments.").

forth above. The motion to exclude Austin's declaration is therefore denied. The Court orders Defendants to comply with all discovery rules and orders moving forward and cautions that a failure to do so is likely to result in the exclusion of evidence at later stages of this case or other sanctions.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds it has personal jurisdiction over defendant CommonSpirit and denies its motion to dismiss. The Court further finds that Plaintiffs should be granted conditional collective-action certification under the FLSA as stated herein, that the motion to exclude Aaron Austin's testimony should be denied, and that Plaintiffs' request for a sur-surreply is moot. Accordingly,

IT IS ORDERED:

1. Defendant CommonSpirit Health's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2), Filing 120, is denied;

2. Plaintiffs' Motion for Conditional Collective Action Certification under the FLSA, Filing 98, is granted as stated herein;

3. Within seven business days, Defendants shall produce to Plaintiffs the list of those persons in its employ within the definition of the conditionally certified class, along with their mailing addresses and email addresses, in a workable electronic format;

4. Plaintiffs' Amended Proposed Notice and Amended Consent Form, Filing 137-12 and Filing 137-13, respectively, are authorized for mailing and emailing to all potential opt-in plaintiffs as modified above;

5. Plaintiffs' Motion to Exclude or Limit the Use of the Testimony of Aaron Austin, Filing 131, is denied; and

6.  Plaintiffs' Motion for Sur-Surreply, Filing 152, is denied as moot.

Dated this 17th day of December, 2020.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge