**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| NICHOLE WALKINSHAW, TYSHA BRYANT, APRIL ENDICOTT, HEATHER NABITY, MEGHAN MARTIN, ALANDREA ELLWANGER, TROY STAUFFER, and all other similarly situated former or current employees of Defendants, | ) ) ) ) ) ) | Case No. 4:19-cv-03012-BCB-SMB |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| COMMONSPIRIT HEALTH f/k/a CATHOLIC HEALTH INITIATIVES, CHI NEBRASKA d/b/a CHI HEALTH, and SAINT ELIZABETH REGIONAL MEDICAL CENTER, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**CLASS ACTION & COLLECTIVE ACTION SETTLEMENT AGREEMENT**

**1**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

RECITALS .................................................................................................................. 1

I.      DEFINITIONS.................................................................................................. 4

II.     CLASS CERTIFICATION ............................................................................ 11

III.    CLASS NOTICE ........................................................................................... 12

IV.    SETTLEMENT FUND................................................................................... 14

V.     DISTRIBUTIONS FROM THE CLASS SETTLEMENT FUND AND THE
ATTORNEYS' FEE AND EXPENSE FUND .............................................. 15

VI.    PLAN OF ALLOCATION ............................................................................ 19

VII.   SETTLEMENT ADMINISTRATION .......................................................... 21

VIII.  PAYMENT OF SERVICE AWARDS .......................................................... 23

IX.    PAYMENT OF ATTORNEYS' FEES AND REIMBURSEMENT OF
LITIGATION COSTS AND EXPENSES...................................................... 23

X.     NO ADMISSION OF WRONGDOING OR INFIRMITY OF CLAIMS ....... 25

XI.    APPROVAL .................................................................................................. 26

XII.   CONDITIONS OF SETTLEMENT .............................................................. 29

XIII.  RESTRICTIONS ON DEFENSE COUNSEL'S CONTACT with CLASS
MEMBERS ................................................................................................... 30

XIV.  ISSUANCE OF NOTICE UNDER THE CLASS ACTION FAIRNESS ACT .............. 31

XV.   RELEASES .................................................................................................... 32

XVI.  TERMINATION AND WITHDRAWAL ...................................................... 33

XVII. MISCELLANEOUS PROVISIONS.............................................................. 35

## INTRODUCTION

Subject to approval by the United States District Court for the District of Nebraska, this Class and Collective Action Settlement Agreement is made and entered into by and among Plaintiffs Nichole Walkinshaw, Tysha Bryant, April Endicott, Heather Nabity, Meghan Martin, Alandrea Ellwanger, and Troy Stauffer, individually and on behalf of the Class, and Defendants CommonSpirit Health, CHI Nebraska, and Saint Elizabeth Regional Medical Center to settle claims against Defendants, subject to the terms and conditions below. All capitalized terms shall have the meaning ascribed them by Section I of this Agreement.

## RECITALS

The following recitals are a material part of this Settlement Agreement.

A.      Plaintiffs filed their initial complaint on February 6, 2019, docketed as Case No. 19-cv-03012 in the United States District Court for the District of Nebraska, asserting claims on behalf of themselves and a proposed FLSA collective and Rule 23 class of hourly nurse employees for alleged failure to adequately compensate them for work performed remotely while on an on-call shift and violations of the FLSA, the NWHA, and the NWPCA.

B.      Plaintiffs filed an Amended Complaint on June 24, 2019, which, among other things, specifically named CommonSpirit Health and added CHI Nebraska and SERMC as defendants and added a proposed Rule 23 subclass and a breach of contract claim on behalf of the subclass.

C.      The Court denied Defendants' Rule 12(b)(6) motion and CommonSpirit Health's Rule 12(b)(2) motion on December 20, 2019.

D.      Defendants timely answered the Amended Complaint and asserted various affirmative defenses on January 3, 2020.

85111123.1

E.      Plaintiffs filed a Second Amended Complaint and a corrected version of it on July 31, 2020 and August 10, 2020, respectively, which added a second Rule 23 subclass and a breach of contract claim for that subclass and an unjust enrichment claim for both subclasses.

F.      CHI Health and SERMC answered the Second Amended Complaint and CommonSpirit Health filed a Rule 12(b)(2) motion to dismiss on August 25, 2020.

G.      The Court denied CommonSpirit Health's Rule 12(b)(2) motion and granted Plaintiffs' motion for conditional certification of a collective under the FLSA on December 17, 2020.

H.      CommonSpirit Health answered the Second Amended Complaint on December 31, 2020.

I.      The Parties conducted significant discovery during this litigation over an eighteen-month long period. Plaintiffs served each Defendant with more than 60 requests for production of documents and a total of 30 interrogatories, defended and took a total of 10 depositions, reviewed and produced over 3,000 pages of documents, and collected and reviewed more than 54,000 pages of documents from Defendants, and at least 1.2 GB of Defendants' timekeeping and payroll data for employees who have opted into the case or are members of the putative Rule 23 class.

J.      During the course of discovery and for purposes of settlement, Defendants produced data about the Class Members through April 11, 2022.

K.      As the amount of the settlement payment is based on data provided by Defendants, Defendants represent and warrant that to the best of their knowledge and belief, the timekeeping and payroll data produced by Defendants about Class Members is complete and accurate for the time period from February 6, 2015, through April 11, 2022, in its reflection of

the compensation paid to the Class and Collective for time worked in an hourly nurse position and in the identification of persons who meet the definition of the Class and the Collective.

L.     Plaintiffs and Defendants conducted arms-length negotiations at a mediation session with the private mediator Jill Sperber of Judicate West on December 8, 2021. Although the Parties did not reach agreement on a settlement at the end of the mediation session, they engaged in further arms-length negotiations through Ms. Sperber's assistance between December 9, 2021 and the end of January 2022. In February 2022, the Parties agreed to request that Magistrate Judge Cheryl Zwart conduct a settlement conference in this case. Plaintiffs and Defendants conducted further arms-length negotiations at a settlement conference with Judge Zwart on April 11, 2022, during which the class and collective recovery was negotiated separately from attorneys' fees and expenses/costs and negotiation about and agreement on the amount of attorneys' fees and expenses/costs was reached only after agreement on the class and collective recovery had been reached in principle. Counsel for Plaintiffs and counsel for Defendants signed a written Settlement Term Sheet at the end of the conference that day.

M.     In addition to the discovery conducted, Plaintiffs' Counsel (1) have fully analyzed and evaluated the merits of the claims and contentions of the Class Members and Collective Members, Defendants' defenses, and this settlement as it impacts the Class Members and Collective Members; (2) have researched the legal and factual issues associated with the Settlement Class's claims and contentions; and, (3) after taking into account the foregoing, along with the substantial risks of litigation (including the possibility that litigation might result in no recovery for the Class Members or Collective Members, or a recovery or alternate settlement less favorable to the Class Members or Collective Members, and any result from litigation or any alternate settlement might not occur for several years), Plaintiffs and Plaintiffs' Counsel are

satisfied that the terms of this Agreement are fair, reasonable, adequate and equitable, and beneficial to the Plaintiffs and the Class Members and Collective Members.

N.    Defendants deny the material allegations asserted in the Action, deny that Defendants are an employer or joint employer of Settlement Class Members or anyone else Plaintiffs or Class Counsel seeks or may seek to represent in this Action or any other litigation (whether individually or as a collective or class action), deny any wrongdoing or liability whatsoever and state that they are entering into the Settlement to avoid the cost, disruption, and uncertainty of litigation.

O.    The Court has not made any determination of the merits of any of the claims asserted in the Amended Complaint.

P.    The Parties desire to promptly and fully resolve and settle with finality all of the claims on the terms set forth herein and subject to the approval of the Court.

## I.    DEFINITIONS

As used in this Agreement, the following terms have the following meanings, unless a section or subsection of this Agreement specifically provides otherwise. Capitalized terms used in this Agreement, but not defined in this Section I, will have the meaning ascribed to them elsewhere in this Agreement.

A.    "Action" means the lawsuit entitled *Nichole Walkinshaw, Tysha Bryant, April Endicott, Heather Nabity, Meghan Martin, Alandrea Ellwanger, and Troy Stauffer and all other similarly situated former or current employees of Defendants, Plaintiffs vs. CommonSpirit Health (f/k/a Catholic Health Initiatives), CHI Nebraska (d/b/a CHI Health), and Saint Elizabeth Regional Medical Center, Defendants*, docketed as Case No. 19-cv-03012 in the United States District Court for the District of Nebraska.

B.  "Attorneys' Fee and Expense Amount" means the amount to be paid by or on behalf of Defendants pursuant to Section IV.2.

C.  "Attorneys' Fee and Expense Fund" means the Attorneys' Fee and Expense Amount plus any earnings and interest thereon, minus any expenses incurred while in Escrow.

D.  "CAFA" means the Class Action Fairness Act.

E.  "Class" means all persons who are or were alleged to be jointly or severally employed by CommonSpirit Health and/or by its predecessor Catholic Health Initiatives, CHI Health, and/or SERMC, as medical nurses in the State of Nebraska, who were paid an hourly wage, and who were subject to the on-call practice or policy respecting compensation for working remotely while on an on-call shift, from February 6, 2015 through April 11, 2022, at the following locations: the CHI Health Laboratory in Omaha, Nebraska; Creighton University Medical Center in Omaha, Nebraska; Good Samaritan Hospital in Kearney, Nebraska; Immanuel Hospital in Omaha, Nebraska; Lakeside Hospital in Omaha, Nebraska; Midlands Hospital in Papillion, Nebraska; CHI Health Nebraska Heart in Lincoln, Nebraska; CHI Health – Plainview in Plainview, Nebraska; CHI Health in Schuyler, Nebraska; SERMC in Lincoln, Nebraska; Saint Francis Hospital in Grand Island, Nebraska; and CHI Health – Saint Mary's in Otoe, Nebraska.

F.  "Class Counsel" means R. Joseph Barton of Block & Leviton LLP, Vince Powers of Powers Law, and Jason S. Rathod of Migliaccio & Rathod LLP.

G.  "Class List" means the lists produced by Defendants to Plaintiffs' Counsel on May 3, 2021, as amended on July 7, 2021, and March 23, 2022 that purports to identify the Class Members.

H.  "Class Member" means an individual who is a member of the Class.

I. "Class Notice" means a form of notice provided to the Collective Members and Class Members as approved by the Court.

J. "Class Notice Packet" means the Class Notice and any other forms approved or directed by the Court.

K. "Class Settlement Amount" means the amount to be paid by or on behalf of Defendants as provided in Section IV.1.

L. "Class Settlement Fund" means the Class Settlement Amount plus any earnings and interest thereon, minus any Court-approved deductions and expenses.

M. "Class Representatives" means the Plaintiffs whom the Court appoints as Class Representatives.

N. "Collective" means the Plaintiffs and persons who: (1) previously filed a consent to join this Action; (2) were allegedly employed by Defendants at any point between December 17, 2017, and December 17, 2020; (3) worked as an hourly rate medical nurse and was assigned an on-call shifts and performed work remotely while on call at any of the following locations: CHI Health Laboratory in Omaha, Nebraska; Creighton University Medical Center in Omaha, Nebraska; Good Samaritan Hospital in Kearney, Nebraska; Immanuel Hospital in Omaha, Nebraska; Lakeside Hospital in Omaha, Nebraska; CHI Health Mercy in Corning, Iowa; Mercy Hospital in Council Bluffs, Iowa; Midlands Hospital in Papillion, Nebraska; CHI Health Missouri Valley in Harrison County, Iowa; CHI Health – Nebraska Heart in Lincoln, Nebraska; CHI Health – Plainview in Plainview, Nebraska; CHI Health in Schuyler, Nebraska; SERMC in Lincoln, Nebraska; Saint Francis Hospital in Grand Island, Nebraska; and CHI Health – Saint Mary's in Otoe, Nebraska. This definition is intended to replicate the requirements of the Court's Order (D.E. #179) and in the event of any conflict, the Court's Order will control.

O.     "Collective List" means the list produced by Defendants to Plaintiffs' Counsel on December 30, 2020, as amended and supplemented on January 26, 2021, and July 7, 2021, that purports to identify the persons who potentially meet the requirements of the Court's Order (D.E. # 179) on FLSA conditional certification dated December 17, 2020.

P.     "Collective Member" means an individual who is a member of the Collective. Any person who previously filed a consent to joint this Action and is identified on the Collective List is presumptively a Collective Member.

Q.     "CommonSpirit Health" means CommonSpirit Health

R.     "Complaint" or "Second Amended Complaint" means the Corrected Second Amended Class Action Complaint filed on August 10, 2020 (Dkt. 115).

S.     "Court" means the United States District Court for the District of Nebraska.

T.     "Defendants" mean CommonSpirit Health (f/k/a Catholic Health Initiatives), CHI Nebraska (d/b/a CHI Health), and Saint Elizabeth Regional Medical Center.

U.     "Defense Counsel" means Karen Cain, Jason Plowman, Emma Schuering, and Matthew Linnabary of Polsinelli PC.

V.     "Effective Date" means the date on which the Final Approval Order becomes Non-Appealable.

W.     "Escrow Account for the Attorneys' Fee and Expense Fund" means an account into which the Attorney's Fee and Expense Amount will be paid.

X.     "Escrow Account for the Class Settlement Fund" means an account into which the Class Settlement Amount will be paid.

Y.     "Escrow Accounts" means the Escrow Account for the Class Settlement Fund and the Escrow Account for the Attorneys' Fee and Expense Fund.

Z.     "Expense Award" will have the meaning described in Section IX.1 of this Agreement.

AA.     "Fee Award" will have the meaning described in Section IX.1 of this Agreement.

BB.     "Final Approval Motion" means the motion to be filed by Class Counsel requesting that the Court grant final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e) and approval of the settlement under the FLSA.

CC.     "Final Order" means the Order and Final Judgment, substantially in the form of an Order described in Section XI.2 below.

DD.     "FLSA" means the Fair Labor Standards Act.

EE.     "Location(s)" means the CHI Health Laboratory in Omaha, Nebraska; Creighton University Medical Center in Omaha, Nebraska; Good Samaritan Hospital in Kearney, Nebraska; Immanuel Hospital in Omaha, Nebraska; Lakeside Hospital in Omaha; Midlands Hospital in Papillion, Nebraska; CHI Health Nebraska Heart in Lincoln, Nebraska; CHI Health – Plainview in Plainview, Nebraska; CHI Health in Schuyler, Nebraska; SERMC in Lincoln Nebraska; Saint Francis Hospital in Grand Island, Nebraska; and CHI Health – Saint Mary's in Otoe, Nebraska.

FF.     "Net Class Settlement Fund" or "Net Class Settlement Amount" means the Class Settlement Fund minus all Court-approved reductions such as any Service Award, approved settlement administration expenses, or any additional administrative expenses.

GG.     "Non-Appealable" means an order entered by the Court is no longer subject to appeal, which will occur: (i) if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any extension of time) has expired; or (ii) if any appeal is taken therefrom, on the date on which all appeals therefrom, including any petitions for rehearing or re-argument, petitions for rehearing *en banc*, and petitions for writ of *certiorari* or any other writ,

or any other form or review, have been finally disposed of, such that the time to appeal therefrom (including any extension of time) has expired, in a manner resulting in an affirmance of the Final Order.

HH.    "NWHA" means the Nebraska Wage and Hour Act.

II.    "NWPCA" means the Nebraska Wage Payment and Collection Act.

JJ.    "Parties" or "Settling Parties" means collectively Plaintiffs, individually and on behalf of the Class and Collective, and all Defendants collectively.

KK.    "Party" refers to any of the Parties.

LL.    "Plaintiffs' Counsel" means Block & Leviton LLP, Migliaccio & Rathod LLP and Powers Law and the attorneys from those firms who have entered an appearance in this action.

MM.    "Plan of Allocation" means the plan for distribution of the proceeds of the Settlement Fund as proposed by Class Counsel to be approved by the Court.

NN.    "Preliminary Approval Order" means the "Order Preliminarily Approving Settlement, Approving Form of Notice, and Setting Final Approval Hearing" in this Action, substantially in the form described in Section XI.1.

OO.    "Plaintiffs" means Nichole Walkinshaw, Tysha Bryant, April Endicott, Heather Nabity, Meghan Martin, Alandrea Ellwanger, and Troy Stauffer.

PP.    "SERMC" means Saint Elizabeth Regional Medical Center.

QQ.    "Service Award" will have the meaning set forth in Section VIII.1 of this Agreement.

RR.    "Settled Claims" means the Settled Class Claims as well as other claims released pursuant to this Settlement provided in Section XV.

SS.    "Settled Class Claims" means the claims that the Settlement Class will release pursuant to this Settlement provided in Section XV.1.

TT.    "Settlement" means the settlement and compromise of this Action as provided for in this Settlement Agreement.

UU.    "Settlement Administrator" means the third-party appointed by the Court, who is to be responsible for, among other things, providing the Class Notice Packet to Class and Collective Members and/or assisting with the administration of the Settlement.

VV.    "Settlement Agreement" means this Class Action Settlement Agreement and any accompanying Exhibits, including any subsequent amendments thereto and any Exhibits to such amendments.

WW.    "Settlement Class" mean the Collective and the Class, including all Subclasses.

XX.    "Settlement Class Member" means an individual who is a member of the Settlement Class.

YY.    "Settlement Fund" means the Class Settlement Fund plus Attorney's Fees and Expense Fund.

ZZ.    "Settlement Term Sheet" means the Settlement Term Sheet that counsel for Plaintiffs and counsel for Defendants signed on April 11, 2022.

AAA.    "Subclasses" means the 2016 Subclass and 2017 Subclass.

BBB.    "Subclass Member" means an individual who is a member of either of the Subclasses.

CCC.    "2016 Subclass" means all persons who are a Class Member and were subject to the on-call policy of Defendants respecting compensation for work performed remotely while on

an on-call shift from March 1, 2016 until May 31, 2017, at Saint Elizabeth Regional Medical Center in Lincoln, NE or at another Location subject to a similar policy.

DDD. "2017 Subclass" means all persons who are a Class Member and were subject to the on-call policy of Defendants respecting compensation for worked performed remotely while on an on-call shift from June 1, 2017 until September 30, 2018 at the following locations: Creighton University Medical Center; Good Samaritan Hospital in Kearney, Nebraska; Immanuel Hospital in Omaha, Nebraska; Lakeside Hospital in Omaha; Midlands Hospital in Papillion, Nebraska; Saint Elizabeth Medical Center in Lincoln, NE; and Saint Francis Hospital in Grand Island, Nebraska or at another Location subject to a similar policy.

EEE. "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including income tax and other taxes and charges on or regarding franchises, windfall or other profits, gross receipts, property, sales, use, capital stock, payroll, employment, social security, workers' compensation, unemployment compensation, or net worth; taxes or other charges in the nature of excise, withholding, *ad valorem*, stamp, transfer, value added or gains taxes; license, registration, and documentation fees; and customs' duties, tariffs, and similar charges.

FFF. "Termination Notice" will have the meaning set forth in Section XVI.1 of this Settlement Agreement.

## II. CLASS CERTIFICATION

1. **Motion**. Along with or as part of the Motion for Preliminary Approval, Plaintiffs will seek final certification of the Collective under the FLSA, and will seek to certify pursuant to Rule 23(b)(3), Counts II on behalf of the Class, Count III and IV on behalf of the

2017 Policy Subclass, Counts V and VI on behalf of the 2016 Policy Subclass and Count VII on behalf of both Subclasses.

2. **Non-Opposition**. Defendants will not object to or oppose certification of the Collective, the Class or the Subclasses at the Court or on any appeal for purposes of this Settlement. Defendants will not seek to decertify or otherwise modify the Collective at the Court or on appeal for purposes of this Settlement.

## III. CLASS NOTICE

1. **Provision of Class Notice.** Upon the date specified in the Court's Preliminary Approval Order, the Settlement Administrator will be responsible for providing Class Notice to all of the persons who have been identified as potential Class Members on the Class List and the Collective Members.

2. **Contents**. The Class Notice, in a form approved by the Court will contain: a brief description of the claims advanced by the Class and Collective; a summary of the terms of the Settlement Agreement; information on the attorneys' fees and costs sought by Class Counsel; a description of the proposed Plan of Allocation of the Settlement Fund to the Class and Collective; and will provide information about the Final Approval Hearing.

3. **Method of Providing Class Notice**. Class Notice will be provided to each individual Settlement Class Member: (a) by email to the extent that email is known and available or if email is not known or not available, by mailing via first class U.S. Mail, and (b) by posting the Class Notice (and other documents filed in the litigation) on a website maintained by the Settlement Administrator. Defendants have provided Class Counsel mailing and email addresses for all Settlement Class Members, to the extent such information is reasonably available in the records of Defendants.

4. **Settlement Administrator.** A Settlement Administrator shall be appointed by the Court pursuant to Section VII.1 of this Agreement to provide the services set forth below in Section VII.2. The Parties and their counsel will reasonably cooperate with the Settlement Administrator to facilitate providing Notice and other settlement-related communications and administration, and to resolve promptly any issues identified by the Settlement Administrator.

5. **Undeliverable Notices.** In the event that a Class Notice sent by U.S. Mail is returned as undeliverable, the Settlement Administrator will make reasonable efforts to obtain a valid mailing address and promptly resend the Class Notice to the Settlement Class Member by U.S. Mail.

6. **Class Data.** Defendants have previously provided Plaintiffs' Counsel with contact information in electronic format, as required by the Court, for each Settlement Class Member, consisting of each Settlement Class Member's name, last known street mailing address, and, to the extent available, last known personal and/or work email addresses. Defendants will provide updated or other information reasonably requested by Class Counsel and the Settlement Administrator necessary to effectuate the Settlement, including Social Security Numbers. Within 21 days after this Settlement Agreement is executed, Defendants will, to the extent not already disclosed or updated, provide Class Counsel with the following contact information in electronic form for each Settlement Class Member, to the extent such information is readily available in Defendants' files: (1) name; (2) last known street mailing address; (3) last known telephone number(s); (4) last known email address(es); (5) current employment status; and (6) Social Security number.

7.     **Class Notice Costs and Expenses.** The costs and expenses for the Class Notice and the Settlement Administrator will be paid from the Settlement Fund.

8.     **Declaration Regarding Class Notice**. Within 30 days after the date on which Notice is required to be sent, the Settlement Administrator will file a declaration with the Court confirming that the Notice and related information was sent in accordance with the Preliminary Approval Order.

## IV.     SETTLEMENT FUND

1.     **Payment of Class Settlement Amount into Escrow Account.** As settlement of the claims of Settlement Class, Defendants will pay, or cause to be paid, $800,000.00 into an Escrow Account for the Class Settlement Fund within thirty (30) days of the date that the Preliminary Approval Order is entered by the Court.

2.     **Payment of Attorneys' Fee and Litigation Expense Amount into Escrow Account.** As settlement of the claims of the Settlement Class for attorneys' fees and expenses, Defendants will pay, or cause to be paid, $750,000.00 into an Escrow Account for the Attorneys' Fee and Expense Fund within thirty (30) days of the date that the Preliminary Approval Order is entered by the Court.

3.     **Extent of Defendants' Obligation to Make Payments to the Settlement Fund.** The maximum amount that Defendants will be obligated to pay into the Settlement Fund(s) will be $1,550,000.00 consisting of the $800,000.00 paid to the Class Settlement Fund and the $750,000.00 paid into the Attorneys' Fee & Litigation Expense Fund Amount.

4.     **Custody of Settlement Fund.** The amounts in the Escrow Accounts will be deemed to be in the custody of the Court and will remain subject to the jurisdiction of the Court and will be administered in accordance with the terms of this Settlement Agreement and the Orders of the Court. The Class Settlement Fund will be paid to the Settlement Class

Members pursuant to the Plan of Allocation and the terms of this Agreement upon the Final Order becoming Non-Appealable. The Attorneys' Fee and Expense Fund will be paid to Class Counsel pursuant to the terms of this Agreement upon the Final Order becoming Non-Appealable.

5. **Management of the Settlement Fund.** Until the Final Order becomes Non-Appealable or until the Settlement is terminated in accordance with this Agreement, the Settlement Fund will be held in the Escrow Accounts and the Escrow Agent will act pursuant to the terms of the Escrow Agreement or as ordered by the Court. After the Final Order becomes Non-Appealable, Class Counsel will have the sole right and duty to manage the Settlement Fund in compliance with the terms of the Final Order or other Orders of the Court. Any earnings or interest earned by the Class Settlement Fund will become part of the Class Settlement Fund. Any earnings or interest earned by the Attorneys' Fee and Expense Fund will become part of the Attorneys' Fee and Expense Fund. To the extent that the Class Settlement Fund and the Attorneys' Fee and Expense Fund are placed in a single Escrow Account, any earnings, interest or expenses incurred while in Escrow will be divided *pro rata* between the Funds based on the initial amount deposited for each of those Funds.

6. **Qualified Settlement Fund.** The Settlement Fund is intended by the Settling Parties to be a "qualified settlement fund" for federal income tax purposes under Treas. Reg. § 1.468B-1 at the earliest date possible.

## V. DISTRIBUTIONS FROM THE CLASS SETTLEMENT FUND AND THE ATTORNEYS' FEE AND EXPENSE FUND

1. **Expenses Before the Effective Date.** Until the Final Order becomes Non-Appealable or the Settlement is terminated in accordance with this Agreement, Class Counsel will be authorized to pay:

(a)     from the Class Settlement Fund (i) any actual or estimated taxes on any income earned on the Settlement Fund, (ii) upon notice to Defense Counsel, all costs and expenses related to the preparation of such tax filings or payments, and (iii) with approval by the Court all costs and expenses in connection with Class Notice and the administration of the Settlement;

(b)     from the Attorneys' Fee and Expense Fund (i) any actual or estimated taxes on any income earned on the Settlement Fund, (ii) upon notice to Defense Counsel, all costs and expenses related to the preparation of such tax filings or payments. Any dispute regarding the reasonableness of any expense incurred, paid, or owing will be adjudicated by the Court, but in no event will such a dispute require Class Counsel to cause or allow the Class Settlement Fund or the Attorneys' Fee and Expense Fund to fail to make a tax payment in a timely manner.

2.     **Attorneys' Fees and Litigation Expenses/Costs.** Pursuant to any deadline set by the Court, Class Counsel may file any motion with the Court requesting the payment of attorneys' fees, reimbursement of litigation expenses and costs (other than those to be paid out of the Class Settlement Fund as set forth in Section V.4) out of the Attorneys' Fee and Expense Fund, in an amount not to exceed $750,000.00. Any amounts so awarded by the Court will be paid from the Attorneys' Fee and Expense Fund as directed by Class Counsel. The timing of the disbursement of any such amounts awarded will be in accordance with Section IX.3 of this Agreement.

3.     **Tax Reserve After the Effective Date**: Upon the Final Order becoming Non-Appealable, Class Counsel will be authorized to establish a reserve out of the Settlement Fund to pay any Taxes that are or will be owed (but not yet due) and for expenses related to

payment of Taxes or filing of tax returns or to the extent that there are costs of administration of the Settlement.

4.  **Distribution to Class Members.** After the Final Order becomes Non-Appealable, the Net Class Settlement Fund will be distributed to Settlement Class Members pursuant to the Court-approved Plan of Allocation. The following payments will be made from the Class Settlement Fund prior to any distributions to Settlement Class Members: (a) any Taxes on the income or earnings by the Settlement Fund, any tax-related expenses, and the creation of any reserve for future expenses (as described above); (b) any expenses incurred in connection with administration of the Class Settlement Fund (to the extent that there are any under this Settlement); and (c) payment of any Service Awards to the Class Representatives. After deduction of the foregoing (and the addition of any amounts not awarded as fees and expenses to Class Counsel from the Attorneys' Fees & Expense Fund), the Net Class Settlement Fund will be distributed to the Settlement Class Members in accordance with the Court-approved Plan of Allocation.

5.  **Provision of Class Payment Data to Defendants.** Class Counsel will provide Defense Counsel with the actual payment amounts distributed to each Class Member under the Plan of Allocation at least seven (7) days before payments are issued to Class Members. Information that identifies specific individual Class Member's payment information will not be published or filed with the Court except under seal (unless the Court orders otherwise); however, information about aggregate Class Member payment amounts or statistics (e.g. average, median, etc) about Class Member payment amounts may be publicly disclosed and do not need to be filed under seal.

6.	**Distributions of the Net Class Settlement Fund to the Settlement Class.** Distributions to Settlement Class Members who are entitled to receive an allocation from the Class Settlement Fund will be made as follows:

(a)	The Settlement Class Members' settlement proceeds will be distributed by check directly by the Settlement Administrator.

(b)	The Settlement Administrator shall make such distributions by check within the later of (i) 30 days of the Final Order becoming Non-Appealable or (ii) 30 days after the Settlement Administrator has received amounts from the Net Class Settlement Fund and a direction from Class Counsel regarding the allocation of any portion of the net proceeds of the Class Settlement Fund for the Settlement Class Members.

(c)	All checks issued to Settlement Class Members will provide that they are void after 90 days, unless the Court determines another time period is appropriate.

(d)	Unless the Court determines that other procedures are appropriate, if a check payable to a Settlement Class Member is returned as undeliverable to the Settlement Administrator within 90 days of issuance, the Settlement Administrator will make reasonable efforts to re-mail the check to the Settlement Class Member.  If the check is not cashed within 60 days, the Settlement Administrator will send notice informing the Settlement Class Member that unless the check is cashed in the next 30 days, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed (less any amounts incurred to re-issue the check) with a 60-day void by date.

7. **Treatment as Wages.** For income and payroll tax purposes, any amount from the Class Settlement Fund paid to the Settlement Class Members, 100% of the settlement payments made to Settlement Class Members will be allocated as wages subject to any required withholdings and deductions and reported as wage income as required by law; except that any amounts paid to the Class Representatives as Service Awards will not be treated as wage income. Other than the withholding and reporting requirements, the Settlement Class Members will be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received under this Settlement. Defendants will be responsible for the employer's share of payroll taxes on each Settlement Class Member's gross settlement payment.

8. **Costs and Expenses Related to Settlement Administration and Distribution**. The costs of administration of the Settlement including any costs relating to class notice, administration and distribution of the Class Settlement Fund, including any expenses to prepare any tax filings related to the Settlement Fund will be paid out of the Class Settlement Fund.

9. **Tax Liability for the Class Settlement and Attorneys' Fee and Expense Funds**. The Settling Parties will not have any liability or responsibility for the payment of any Taxes incurred by or with respect to the Class Settlement Fund or the Attorneys' Fee and Expense Fund, and any such Taxes will be paid out of the respective funds.

## VI. PLAN OF ALLOCATION

1. **Proposed Plan of Allocation.** Class Counsel will propose and submit a Plan of Allocation to the Court as to the recommended method of calculating, determining, and distributing the proceeds of the Net Class Settlement Fund to Settlement Class Members. In the Plan of Allocation, Class Counsel will propose, among other things: (a) a minimum payment to

be provided to Class Members who do not submit a claim form – with a $25 minimum for Class Members who had any on-call shifts on or before Oct 31, 2018 and a $15 minimum payment for Class Members who underline(only) had on-call shifts after Oct. 31, 2018, subject only to such Class Members verifying by endorsement of the check that they meet the Class definition and performed work remotely during on-call shifts for which they were not properly compensated; and (b) a separate allocation for Class Members who submit claim forms that is anticipated to be greater than the minimum amounts provided to Class Members who do not submit a claim form.

2. **Non-Involvement by Defendants.** Defendants shall have no responsibility for preparing or any right to provide input into the Plan of Allocation proposed by Class Counsel. Defendants will take no position on any suggested modification of the Plan of Allocation, unless the Court requests Defendants to take a position or the proposed Plan of Allocation does not propose the minimum payments set forth in VI.1.

3. **Modification of Plan of Allocation.** In the event that the proposed Plan of Allocation is rejected or modified by the Court or on appeal (including any rejection or modification of any minimum payment amount), such rejection or modification will not constitute a material modification of this Settlement Agreement, will not void this Settlement Agreement, and will not provide a basis for any Party to withdraw from this Settlement Agreement.

4. **No Claim Based on Distribution in Accordance with the Plan of Allocation.** The Settlement Class and its members will not have any claim against Plaintiffs, Plaintiffs' Counsel, Class Counsel, Defendants, Defense Counsel, the Settlement Administrator, or other individuals involved in the distribution under the Plan of Allocation, from any claim

based on any distributions of the Class Settlement Fund made substantially in accordance with this Settlement Agreement, the Plan of Allocation, or any Order by the Court.

## VII. SETTLEMENT ADMINISTRATION

1. **Appointment of Settlement Administrator.** Class Counsel will propose a third-party Settlement Administrator who will be approved and appointed by the Court to issue Class Notice and otherwise administer the Settlement and report to Class Counsel and the Court. The Settlement Administrator will have experience providing notice to Settlement Class Members and administering settlements in employment and/or wage-and-hour collective and class action settlements, and in supervising and administering settlement funds.

2. **Settlement Administrator's Responsibilities.** The Settlement Administrator will undertake the following tasks to administer this Settlement consistent with the terms of this Settlement, the Plan of Allocation, and the Orders of the Court and such other procedures required by the Court or as directed by Class Counsel:

a)     Print, mail, and email the Class Notice Packet to the Settlement Class Members in accordance with this Settlement Agreement and any order of the Court and undertake to trace and re-mail all undeliverable Class Notice Packets or other reasonable steps to locate missing Settlement Class Members;

b)     Provide Class Counsel and Defense Counsel with copies of any objections to the Settlement (to the extent such objections are not filed with the Court) and copies of any requests for exclusions;

c)     Respond to questions from Settlement Class Members or refer Settlement Class Members to Class Counsel for responses;

d)        Maintain and staff a toll-free phone number and a web site for the Settlement until at least six (6) months after distributions of the Class Settlement Fund have been made to Settlement Class Members;

e)        File with the Court a declaration confirming compliance with the procedures approved by the Court for providing notice to the Settlement Class;

f)        Distribute payments of the settlement proceeds to Settlement Class Members, consistent with instructions from Class Counsel and the Court-approved Plan of Allocation;

g)        Withhold from payments of the settlement proceeds to Settlement Class Members applicable payroll taxes, including determining the employer's share of taxes, and remitting such funds to the appropriate taxing authorities, along with any associated tax reporting, return and filing requirements;

h)        Monitor the Qualified Settlement Fund and file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitations the returns described in Treas. Reg. Section 1.468B-2(k));

i)        Any other responsibilities set forth in this Agreement and any other responsibilities agreed to by the Settling Parties related to administration of the Settlement and consistent with the orders of the Court or any other responsibilities ordered by the Court.

3.        **Defendants' Cooperation with Settlement Administrator:** Defendants will cooperate with the Settlement Administrator to effectuate the Settlement and the distribution of the Net Settlement Fund to Class Members including by timely arriving at an

amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due that are customarily borne by employers and shall promptly pay such amounts to the Settlement Administrator.

## VIII.   PAYMENT OF SERVICE AWARDS

1.      **Requests for Service Awards to Class Representatives.** Prior to the deadline for Class Members to object to the Settlement Agreement and by a date to be set by the Court, Class Counsel will be entitled to file any motion with the Court for service awards for the Class Representatives ("Service Awards"). Any Service Awards will be paid solely from the Class Settlement Fund and will be subject to the Court's approval at the Final Approval Hearing.

2.      **Defendants' Non-Opposition.** Defendants and their counsel will take no position regarding the application for or an award of Service Awards so long as the amount of the requested Service Award does not exceed $10,000.00 each.

3.      **Timing of Payment of Service Awards.** In the event that the Court grants any Service Award, disbursement of any Service Award from the Settlement Fund may be made upon the Final Order becoming Non-Appealable.

4.      **Non-Materiality of Service Awards to Settlement.** In the event that this Court refuses to permit a Service Award, in whole or in part, or any such award is rejected or modified on appeal, such rejection or modification will not constitute a material modification of this Settlement Agreement, will not void this Settlement Agreement, and will not provide a basis for any Party to withdraw from this Settlement Agreement.

## IX.    PAYMENT OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES

1.      **Attorneys' Fees and Expenses from the Settlement Fund.** Prior to the deadline for Class Members to object to the Settlement Agreement and by a date to be set by the

Court, Class Counsel will be entitled to file any motion with the Court for an award from the Attorneys' Fee and Expense Fund of: (a) attorneys' fees ("the Fee Award") and (b) reimbursement of litigation costs and expenses ("the Expense Award") in addition to (c) amounts to be paid for Notice and Settlement Administration expenses that will be paid out of the Class Settlement Fund. Any Fee Award or Expense Award will be paid solely from the Attorneys' Fee and Expense Fund and is subject to the Court's approval at the Final Approval Hearing. Any amounts to be paid out of the Class Settlement Fund for Notice and Settlement Administration Expenses will also be subject to approval by the Court. To the extent that the Fee Award and the Expense Award approved by the Court (and, as applicable after appeals) does not exhaust the amount of the Attorneys' Fee and Expense Fund, any remaining amounts in the Attorneys' Fees and Expense Fund will become part of the Class Settlement Fund.

2. **Defendants' Non-Opposition.** Defendants and their counsel will take no position regarding the application for or an award of the Fee Award or the Expense Award so long as the combined amount sought to be awarded does not exceed the amount in the Attorneys' Fees & Expense Fund.

3. **Timing of Payment of Attorneys' Fees and Reimbursement of Expenses.** In the event that the Court grants any Fee Award or Expense Award, disbursement of any Fee Award or Expense Award from the Attorneys' Fee and Expense Fund will be made only upon the Final Order becoming Non-Appealable. In the event that there is no appeal of the Final Approval of the Settlement, but an appeal solely of a Fee Award or an Expense Award (or a portion thereof), Class Counsel will be entitled to a disbursement from the Settlement Fund of such amount of attorneys' fees and/or such amount of expenses/costs as to which there is no appeal or the amount of which is not contested on appeal.

4. **Payment of Fees/Expenses to Class Counsel.** The Fee Award and the Expense Award will be paid from the Attorneys' Fees and Expense Fund into an account designated by Class Counsel to be distributed and allocated among any Class Counsel as agreed upon by Class Counsel. Neither Defendants nor their insurers will have any input as to the division of such fees and expenses among Class Counsel.

5. **Non-Materiality of Award of Attorneys' Fees and Reimbursement of Expenses to Settlement.** In the event that this Court refuses to award attorneys' fees or allow reimbursement of expenses/costs, in whole or in part, or any such award is rejected or modified on appeal, such rejection or modification will not constitute a material modification of this Settlement Agreement, will not void this Settlement Agreement, and will not provide a basis for any Party to withdraw from this Settlement Agreement.

6. **Defendants' Attorneys' Fees and Expenses**. Defendants will bear their own attorneys' fees, expenses, and costs. No amount of the attorneys' fees, expenses, or costs of this Litigation incurred by Defendants, or the administration of this Settlement incurred by any of the Defendants will be paid by, or charged to, any amounts paid in this Settlement or, directly or indirectly, to any Settlement Class Member.

## X. NO ADMISSION OF WRONGDOING OR INFIRMITY OF CLAIMS

1. This Settlement Agreement embodies a compromise of disputed claims and nothing in the Settlement Agreement will be interpreted or deemed to constitute any finding of wrongdoing or joint employment by Defendants or agreement by Defendants related to the appropriateness of class or collective action certification or give rise to any inference of liability in this or any other proceeding. This Settlement Agreement will not be offered or received against Defendants as any admission by any such Party with respect to the truth of any fact

alleged by Plaintiffs or the validity of any claim that had been or could have been asserted in the Action or in any litigation or of any liability, negligence, fault, or wrongdoing of any such Party.

2.      This Settlement Agreement is not, nor may it be deemed to be, nor may it be used as an admission of, or as evidence of any infirmity in the claims asserted by Plaintiffs and Settlement Class Members.

3.      This Settlement Agreement may be used in such proceedings as may be necessary to consummate or enforce this Settlement Agreement or the Final Order, and any Party may file this Settlement Agreement and/or the Final Order in any action that may be brought against it to support a claim, a defense, or a counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or in any action that may be brought to enforce any claim assigned pursuant to this Settlement Agreement.

## XI.      APPROVAL

1.      **Preliminary Approval Order.** Plaintiffs' counsel, on behalf of the Class, will move the Court to enter the Preliminary Approval Order ("Preliminary Approval Motion"). The Preliminary Approval Motion will seek an Order in a form agreed upon by the Settling Parties which will propose among other things:

(a)      Certifying the Claims on behalf of the respective Class and Subclasses pursuant to Rule 23, finally certifying the Collective under the FLSA, appointing Plaintiffs as the Class Representatives, and appointing Class Counsel pursuant to Rule 23(g);

(b)      Preliminary Approval of the Settlement as set forth in this Settlement Agreement, subject to further hearing and determination under Fed. R. Civ. P. 23(e);

(c)     Approval of the form of Class Notice, substantially in the form agreed-upon by the Parties, and the manner of distribution and publication which is consistent with this Agreement, Fed. R. Civ. P. Rule 23, and the requirements of due process;

(d)     Preliminary Approval of the Plan of Allocation;

(e)     Appointment of the Settlement Administrator and approve amounts to be charged by the Settlement Administrator and paid out of the Class Settlement Fund;

(f)     A deadline by which any requests for exclusion must be submitted to the Settlement Administrator;

(g)     A deadline for Class Members to submit claim forms;

(h)     A schedule for a hearing date for the Court to determine whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate, and whether an Order finally approving the Settlement Agreement should be entered ("Final Approval Hearing");

(i)      That no objection to the Settlement Agreement will be heard and no papers submitted in support of said objection will be received and considered by the Court at the Final Approval Hearing unless the objection and reasons therefore, along with copies of any supporting papers, are filed with the Clerk of the Court and served on the Parties within forty-five (45) days of the publication and/or distribution of the Class Notice;

(j)     A deadline for filing a Final Approval Motion and a motion for Class Counsel's application for Service Awards, Fee Award, and Expense Award;

and

(k)     To the extent requested by Defendants, approval of the form of notice by Defendants under the Class Action Fairness Act of 2005 ("CAFA").

2.      **Final Approval of the Settlement.** If the Court preliminarily approves this Settlement, and if neither Defendants nor Class Counsel has exercised any right to withdraw pursuant and within the times required by this Agreement, Class Counsel will file a Final Approval Motion, consistent with any deadline issued by the Court, which will seek entry of a proposed Final Order in a form to be agreed-upon by the Settling Parties and will, among other things request that the Court order and/or find as follows:

(a)     Order Final Approval of the Settlement of the claims of the Class set forth in this Settlement Agreement;

(b)     Adjudge that the Settlement is fair, reasonable, and adequate to the Settlement Class pursuant to Fed. R. Civ. P. 23(e) and meets the standard for approval under the FLSA;

(c)     Finally Approve the Plan of Allocation;

(d)     Dismiss the Action against Defendants with prejudice;

(e)     Adjudge that Plaintiffs and the Settlement Class will be deemed conclusively to have released and waived any and all Settled Class Claims against Defendants as provided in this Settlement Agreement;

(f)     Bar and permanently enjoin the Parties and the Settlement Class from prosecuting any and all Settled Claims, as provided in this Settlement Agreement, against any person from whom they have released claims;

(g)     Determine Class Counsel's request(s) for Service Awards, Fee Award, and

Expense Award;

(h)     Retain exclusive jurisdiction, without affecting the finality of the Order

entered, with regard to: (i) implementation of this Settlement Agreement; (ii)

disposition of the Settlement Fund and distributions from the Settlement Fund;

(iii) any disputes about the allocation of Attorneys' Fees and Expenses, and (iv)

enforcement and administration of this Settlement Agreement, including the

release provisions thereof; and

(i)     To the extent that Defendants have timely complied with CAFA and

provided CAFA Notice consistent with this Agreement, find that notice to the

appropriate state and federal officials has been provided as required by CAFA and

Defendants have satisfied their obligations pursuant to 28 U.S.C. § 1715.

## XII.    CONDITIONS OF SETTLEMENT

1.     **Court Approval.** Each of the following is an express condition of

Settlement: (a) the Court enters a Preliminary Approval Order substantially in the form as

required by this Agreement; and (b) the Court enters the Final Order, substantially in the form as

required by this Agreement.

2.     **Material Correctness of Defendants' Information About Class**

**Members**. A condition of this Settlement is that the information and data about the Settlement

Class—including the number of Class members and the timekeeping and payroll data (as to what

time was recorded and wages were paid for time worked in an hourly nurse position) and other

data—provided to Class Counsel through May 17, 2022 is materially correct. In the event that

such data about the Class produced by Defendants to Class Counsel through May 17, 2022, is not

materially correct, Class Counsel will have the unilateral right prior to the Final Approval

Hearing to withdraw from and void this Settlement so long as the notice of the exercise of such right is provided to the opposing Party within fourteen (14) days after the date Class Counsel learns of the material incorrectness of such data or the Class data. In the event that Class Counsel only learns after the Final Approval Hearing that the Class data produced by Defendants through May 17, 2022 was not materially accurate, the Parties retain other rights and remedies that they have under state or federal law beyond those provided in this Agreement.

3. **Exclusion of Certain Percentage of Class Members.** If more than 5% of the Class timely submits requests for exclusions from the Settlement, Defendants will have the right to withdraw from the Settlement Agreement so long as Defendants provide notice of the exercise of such right within ten (10) days after the deadline for Class Members to submit a request for exclusion. If Defendants exercise this right, the notice will become effective if thirty (30) days have passed and Defendants have not elected to modify or otherwise re-negotiate the Agreement. Upon the effective date of the notice, the Parties will have no further obligation under this Settlement and the Parties will revert to their positions in this litigation as of April 11, 2022.

4. **Non-Conditional Matters.** Court approval of the Service Awards, Fee Award, the Expense Award and the proposed Plan of Allocation are not conditions of the Settlement. No action by the Court or any courts of appeal related to the Service Awards, Fee Award, the Expense Award or the Plan of Allocation will prevent the Final Order allowing the approval of the Settlement from becoming Non-Appealable.

## XIII. RESTRICTIONS ON DEFENDANTS' AND DEFENSE COUNSEL'S CONTACT WITH CLASS MEMBERS

1. **Contact with Class Members**. Prior to the date Final Approval has been entered, neither Defense Counsel nor its staff, will initiate any communication with any Class

Member about this Action or Settlement except (a) with the prior written consent of Class Counsel (b) as provided in this Section or (c) allowed by the Court (including Court-approved communications). Defense Counsel will also instruct the appropriate persons in senior management at Defendants that Defendants should not initiate any group communication with the Class or Collective regarding this litigation or this settlement and that any inquiries received by Class Members about this litigation or this Settlement should be directed to the Settlement Administrator or Class Counsel.

2. **Communications Initiated by Class Members.** To the extent that a Class Member initiates any communication with Defense Counsel about this Action or the Settlement, Defense Counsel will respond by (a) advising the Class Member to contact Class Counsel or the Settlement Administrator and (b) promptly advise Class Counsel about the communication including the name and any contact information of the Class Member. To the extent that Defense Counsel learns of any group communication initiated by Defendants about this litigation or this Settlement, Defense counsel promptly will (a) advise Class Counsel about the communication and (b) provide a copy of any such communication, if it exists in writing.

3. **Remedy for Breach of this Provision.** In the event that any Defendant, Defense Counsel or any person acting on behalf of any of them, violates the provisions of this Section, any request for exclusion by any such Class Member will not count toward the threshold referenced in Section XII.3 of this Agreement.

XIV. **ISSUANCE OF NOTICE UNDER THE CLASS ACTION FAIRNESS ACT**

1. **CAFA Notice.** Pursuant to CAFA, Defendants, at their own expense, will prepare and provide the CAFA Notice, including the notices to the United States Department of Justice, the United States Department of Labor, and to the Attorneys General of all states in

which the Class Members reside, as specified by 28 U.S.C. § 1715, not later than ten (10) days after this Settlement agreement is filed in Court.

2. **CAFA Notice Provided to Class Counsel.** Defendants will provide Class Counsel with a copy of the CAFA Notice and materials that Defendants sent within three (3) business days after such notices have been sent. The CAFA Notice and materials will be provided automatically and without further request by Class Counsel.

## XV.  RELEASES

Upon the Final Order becoming Non-Appealable, and provided that each Party has performed all of the respective obligations under this Settlement Agreement to be performed on or prior to such date by such Party:

1. **Release of Defendants by Plaintiffs and the Settlement Class.** Plaintiffs and the Settlement Class Members (on behalf of themselves and on behalf of their heirs, descendants, executors, administrators, successors, and assigns), fully and finally release Defendants themselves and as applicable depending on whether the Party is an individual or an entity, their past, present, and future affiliates, divisions, members, joint venture partners, any merged entity or merged entities, agents, executors, parents, subsidiaries, predecessors-in-interest, successors-in-interest, assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with any of them, of and from any and all claims, or causes of action, asserted in the Second Amended Complaint, including any claims for costs, attorneys' fees, and/or expenses, whether in law or in equity, whether known or unknown, whether fixed or contingent, and those claims arising from the same factual predicate as those in the Second Amended Complaint, including but not limited to claims arising from the performance of work remotely during on-call shifts, breach of contract, unjust

enrichment, and violations of the FLSA, the NWPCA, NWHA that is based on the same factual predicate as the Second Amended Complaint, for the period from February 6, 2015 through April 11, 2022.

2. **Release of Plaintiffs and the Settlement Class by Defendants.**
Defendants (and to the extent Defendants have insurance, their insurers) fully and finally release each of the Plaintiffs, Plaintiffs' Counsel, Class Counsel and Settlement Class Members from any and all claims or causes of action, whether in law or in equity, whether known or unknown, that Defendants have or have had against Plaintiffs, each Settlement Class Member, Class Counsel (and any attorneys of those firms), arising out of the filing of this Action, including any claims for attorneys' fees, costs, expenses, or sanctions, whether such Claim arises under the FLSA, NWHA, NWPCA or any other federal law, state law, foreign law, common law doctrine, rule, regulation, or otherwise.

3. **Non-Released Claims.** Notwithstanding the foregoing or any other language in this Settlement Agreement, the Settling Parties are not releasing Claims to enforce this Settlement Agreement.

## XVI. TERMINATION AND WITHDRAWAL

1. **Right to Withdraw.** In the event that (a) the Court refuses to grant Preliminary Approval or enter the Final Approval Order, (b) the Court does not certify a Class substantially similar to the definition set forth in this Settlement Agreement, or (c) approval of the Settlement is reversed on appeal or materially altered, either Class Counsel or Defendants may void this Settlement by providing written notice to counsel for all other Parties to the Settlement within fourteen days (14) days after the event prompting the right to terminate ("Termination Notice"). In the event that the Final Order has not become Non-Appealable, the Party providing such Termination Notice will be entitled to withdraw based on the specified

condition not being met and may void the Settlement within the time period specified in Section

XVI.2.

2.  **Effectiveness of Termination Notice.** The Termination Notice will become effective to void the Settlement Agreement only if and after the Settling Parties have failed to reach a written agreement within thirty (30) days of the Termination Notice to modify this Settlement Agreement to resolve the issue.

3.  **Effect of Withdrawal.** In the event that the Court refuses to grant Preliminary Approval or enter the Final Approval Order, or such approval is reversed on appeal, the Settling Parties will seek in good faith to revise the Agreement if the reason for the denial or reversal is one that can be modified consistent with the original agreement to settle this case; otherwise, one of the Settling Parties can exercise its right to withdraw from the Settlement Agreement within the time specified above, or any other circumstance which causes the Final Order to not become Non-Appealable; however, no party may use subsequent legal developments other than the denial of or reversal of approval as a justification for renegotiating the settlement. If acting consistent with those provisions, the Parties have not entered into a written modification of the Settlement Agreement within thirty (30) days of such occurrence: (a) the monies in the Escrow Accounts, including any interest or earnings accrued while in Escrow, but less any amount paid or owing for taxes or other expenses incurred in connection with administering the Settlement Agreement while in Escrow, including any amounts necessary to prepare tax returns or monies paid or owing to the Settlement Administrator, will be returned to Defendants, upon written request within ten (10) business days of such written request; (b) the Settling Parties will not be released from the claims asserted in this Litigation; (c) this Agreement will be void *ab initio*; and (d) the Parties' positions, rights, and responsibilities will

be deemed to have reverted to their respective status in this Action as of April 11, 2022 and, except as may otherwise be expressly provided herein, the Settling Parties will proceed in all respects as if this Settlement Agreement never existed.

## XVII.  MISCELLANEOUS PROVISIONS

1.     **Confidentiality**. Plaintiffs, Plaintiffs' Counsel, Defendants, and Defense Counsel shall keep the terms of this Settlement Agreement confidential until either the Settlement Agreement or a motion for preliminary approval is filed with the Court.

2.     **Return or Destruction of Confidential Information**. For purposes of Paragraph 15 of the Amended Protective Order (Dkt. # 84), final termination of this Action will have been deemed to have occurred when the distribution of proceeds of the Settlement has been completed for Settlement Class Members. In addition to the archival copies of documents to which Counsel for any Party is entitled to retain pursuant to Paragraph 15 of the Amended Protective Order, Plaintiffs' Counsel and Class Counsel may maintain the Class data used to provide Class Notice or to calculate Distributions of the Settlement to the Class following final disposition, but such materials will remain subject to the terms of the Amended Protective Order. Additionally, the Settlement Administrator may maintain the Class data used to provide Class Notice or to calculate Distributions of the Settlement to the Class for one year following final termination, on the condition that the Settlement Administrator agrees to and does maintain such materials subject to the terms of the Amended Protective Order.

3.     **Tax Obligations and Tax Advice.** No opinion or advice concerning the Tax consequences of the Settlement Agreement has been given or will be given by counsel involved in the Action to the Settlement Class, nor is any representation or warranty in this regard made by virtue of this Settlement Agreement. The Tax obligations of the Settlement Class and the determination thereof are the sole responsibility of each Settlement Class Member, and it

is understood that the Tax consequences may vary depending on the particular circumstances of each Class Member. The Tax obligations of Defendants and the determinations thereof are the sole responsibility of each Defendant.

4.     **Binding Effect.** This Settlement Agreement will be binding upon, and inure to the benefit of, the successors, assigns, executors, administrators, affiliates, heirs, spousal beneficiaries, and legal representatives of the Settling Parties, provided, however, that no assignment by any Settling Party will operate to relieve such Party of its obligations hereunder.

5.     **Good Faith.** The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement; (b) agree to exercise their best efforts and to act in good faith to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Settlement Agreement; and (c) agree to exercise their best efforts and to act in good faith to cooperate to the extent necessary to obtain the fullest possible participation of all Settlement Class Members in any Settlement. The Settling Parties and their counsel agree to cooperate fully with one another in seeking entry of the Preliminary Approval Order and final approval of the Settlement. The Settling Parties also agree to promptly execute and/or provide such documentation as may be reasonably required to obtain preliminary and final approval of this Settlement.

4.     **Modification.** This Settlement Agreement may be amended or modified only by written instrument signed by Class Counsel on behalf of Plaintiffs and the Settlement Class and by Defense Counsel on behalf of Defendant(s) that they represent or their respective successors in interest and if such modification occurs after Final Approval, is only effective with approval of the Court.

5. **Severability.** Following the Final Order becoming Non-Appealable, should any clause, sentence, provision, paragraph, or part of this Settlement Agreement be adjudged by any court of competent jurisdiction, or be held by another competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment holding shall not affect, impair, or invalidate the remainder of this Settlement Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Settlement Agreement directly involved, and the remainder of the Settlement Agreement shall remain in full force and effect.

6. **Representations.** This Settlement Agreement constitutes the entire agreement among the Settling Parties, and no representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement.

7. **Authorization.** Each signatory to this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of the respective Parties he or she represents. Should any non-signing Party ever contend that they did not authorize their counsel to sign this Settlement Agreement on their behalf, counsel for that Party and their law firms shall defend, indemnify, and hold harmless the other Parties with respect to any and all claims, demands, actions, causes of action, or losses related to such contention.

8. **Counterparts.** This Settlement Agreement may be executed in one or more original, photocopied, or facsimile counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument.

9. **No Prevailing Party.** No Party will be considered a prevailing party for any purpose with respect to this Settlement except as necessary for the award of attorneys' fees, costs, and expenses specifically identified in this Settlement Agreement.

10. **Governing Law.** All terms of this Settlement Agreement will be governed by and interpreted according to the laws of the State of Nebraska without regard to its rules of conflicts of law and in accordance with the laws of the United States.

11. **Waiver.** The waiver by one Party of any breach of this Settlement Agreement by any other Party will not be deemed a waiver of any other breach of this Settlement Agreement. The provisions of this Settlement Agreement may not be waived except by a writing signed by the affected Party, or counsel for that Party, or orally on the record in court proceedings.

12. **Continuing Jurisdiction.** The Settling Parties agree to submit to the exclusive and continuing jurisdiction of the Court over the Settlement Agreement and will be bound by the terms of this Settlement Agreement, including, without limitation, disputes related to the interpretation, effectuation, implementation, and enforcement of the Settlement embodied in this Settlement Agreement and any disputes about the division of attorneys' fees or expenses among Class Counsel. Any and all disputes related to claims that are not satisfactorily resolved by the Settling Parties will be submitted to the Court for final resolution. The Final Order will provide that the Court will have continuing jurisdiction over this Settlement.

13. **Enforcement of this Agreement.** In the event that any Party to this Agreement believes that another Party to this Agreement has breached the terms of this Agreement, that Party will notify the alleged breaching Party and Counsel in writing setting forth the nature of the breach and the requested method to cure the breach at least fourteen (14) days

prior to filing any litigation to enforce the terms of the Settlement Agreement (and if the allegedly breaching Party is a Settlement Class Member regardless of whether that Settlement Class Member has separate counsel, Defendants must also notify Class Counsel in writing). In the event that the allegedly breaching Party fails to cure the alleged breached as set forth in the written notification after 14 days, the other Party may then file an action to enforce the Settlement Agreement.

14. **Extensions.** The Settling Parties reserve the right, subject to the Court's approval, to request any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

15. **Evidentiary Effect.** Neither this Settlement Agreement nor the Settlement, nor any negotiation, nor act performed, nor document executed, nor proceedings held pursuant to or in forbearance of this Settlement Agreement or the Settlement, even if this Settlement Agreement is cancelled or terminated: (a) is, or may be deemed to be, or may be used as an admission of, or evidence of the validity of any Settled Claims, or of any wrongdoing, negligence, misrepresentation, violation, or liability of any Settling Party; (b) is, or may be deemed to be, or may be used as an admission of, or evidence of any infirmity in the Complaint or claims asserted by Plaintiff and the Class; or (c) is, may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any Settling Party in any civil, criminal, or administrative proceeding in any court, administrative agency, or tribunal, including in this Action. This Settlement Agreement may be used in such proceedings as may be necessary to consummate or enforce this Settlement Agreement, the Settlement, or the Final Order; and any Settling Party may file this Settlement Agreement and/or the Final Order in any action to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good

faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

16. **Final and Complete Resolution.** The Settling Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to this Action. The Settlement compromises claims which are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement Agreement were negotiated in good faith at arm's-length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

17. **Duplicative Provisions.** In interpreting this Settlement Agreement, duplicative and/or overlapping release provisions will not be presumed or construed to be intended to release separate claims or have different meanings.

The Parties hereto, intending to be legally bound hereby, have caused this Settlement Agreement to be executed by them or their duly authorized counsel, on the date set forth below.

PLAINTIFFS:

_____     Dated: _____9-19-2022_____
Tysha Bryant
Named Plaintiff

_____     Dated: _____
Alandrea Ellwanger
Named Plaintiff

_____     Dated:_____
April Endicott
Named Plaintiff

_____     Dated:_____
Meghan Martin
Named Plaintiff

_____     Dated:_____
Heather Nabity
Named Plaintiff

_____     Dated:_____
Troy Stauffer
Named Plaintiff

_____     Dated:_____
Nichole Walkinshaw
Named Plaintiff


DEFENDANTS:

_____     Dated:_____
NAME
CommonSpirit Health

_____     Dated:_____
NAME
CHI Health

_____     Dated:_____
NAME
Saint Elizabeth Regional Medical Center

<u>PLAINTIFFS</u>:

_____     Dated: _____
Tysha Bryant
Named Plaintiff

*Alandrea Ellwanger*     Dated: 9-19-2022
Alandrea Ellwanger
Named Plaintiff

_____     Dated:_____
April Endicott
Named Plaintiff

_____     Dated:_____
Meghan Martin
Named Plaintiff

_____     Dated:_____
Heather Nabity
Named Plaintiff

_____     Dated:_____
Troy Stauffer
Named Plaintiff

_____     Dated:_____
Nichole Walkinshaw
Named Plaintiff

<u>DEFENDANTS:</u>

_____     Dated:_____
NAME
CommonSpirit Health

_____     Dated:_____
NAME
CHI Health

_____     Dated:_____
NAME
Saint Elizabeth Regional Medical Center

PLAINTIFFS:

_____     Dated: _____
Tysha Bryant
Named Plaintiff


_____     Dated: _____
Alandrea Ellwanger
Named Plaintiff

*April Endicott* (signature)          Dated: 9-19-22
April Endicott
Named Plaintiff


_____     Dated:_____
Meghan Martin
Named Plaintiff


_____     Dated:_____
Heather Nabity
Named Plaintiff


_____     Dated:_____
Troy Stauffer
Named Plaintiff


_____     Dated:_____
Nichole Walkinshaw
Named Plaintiff


DEFENDANTS:

_____     Dated:_____
NAME
CommonSpirit Health


_____     Dated:_____
NAME
CHI Health


_____     Dated:_____
NAME
Saint Elizabeth Regional Medical Center


43
85111123.1

PLAINTIFFS:

_____     Dated: _____
Tysha Bryant
Named Plaintiff


_____     Dated: _____
Alandrea Ellwanger
Named Plaintiff


_____     Dated:_____
April Endicott
Named Plaintiff

*Meghan Martin* (signature)             Dated: 9/19/22
Meghan Martin
Named Plaintiff


_____     Dated:_____
Heather Nabity
Named Plaintiff


_____     Dated:_____
Troy Stauffer
Named Plaintiff


_____     Dated:_____
Nichole Walkinshaw
Named Plaintiff


DEFENDANTS:

_____     Dated:_____
NAME
CommonSpirit Health


_____     Dated:_____
NAME
CHI Health


_____     Dated:_____
NAME
Saint Elizabeth Regional Medical Center

PLAINTIFFS:

_____          Dated: _____
Tysha Bryant
Named Plaintiff

_____          Dated: _____
Alandrea Ellwanger
Named Plaintiff

_____          Dated: _____
April Endicott
Named Plaintiff

_____          Dated: _____
Meghan Martin
Named Plaintiff

_____          Dated: 9/19/22
Heather Nabity
Named Plaintiff

_____          Dated: _____
Troy Stauffer
Named Plaintiff

_____          Dated: _____
Nichole Walkinshaw
Named Plaintiff

DEFENDANTS:

_____          Dated: _____
NAME
CommonSpirit Health

_____          Dated: _____
NAME
CHI Health

_____          Dated: _____
NAME
Saint Elizabeth Regional Medical Center

43

PLAINTIFFS:

_____     Dated: _____
Tysha Bryant
Named Plaintiff

_____     Dated: _____
Alandrea Ellwanger
Named Plaintiff

_____     Dated:_____
April Endicott
Named Plaintiff

_____     Dated:_____
Meghan Martin
Named Plaintiff

_____     Dated:_____
Heather Nabity
Named Plaintiff

_____     Dated: _Sept 19, 2022_
Troy Stauffer
Named Plaintiff

_____     Dated:_____
Nichole Walkinshaw
Named Plaintiff


DEFENDANTS:

_____     Dated:_____
NAME
CommonSpirit Health

_____     Dated:_____
NAME
CHI Health

_____     Dated:_____
NAME
Saint Elizabeth Regional Medical Center


41

## PLAINTIFFS:

_____     Dated: _____
Tysha Bryant
Named Plaintiff


_____     Dated: _____
Alandrea Ellwanger
Named Plaintiff


_____     Dated:_____
April Endicott
Named Plaintiff


_____     Dated:_____
Meghan Martin
Named Plaintiff


_____     Dated:_____
Heather Nabity
Named Plaintiff


_____     Dated:_____
Troy Stauffer
Named Plaintiff

_Nichole Walkinshaw_                 Dated: _9/19/2022_
Nichole Walkinshaw
Named Plaintiff


## DEFENDANTS:

_____     Dated:_____
NAME
CommonSpirit Health


_____     Dated:_____
NAME

59
85111123.1

PLAINTIFFS:

_____     Dated: _____
Tysha Bryant
Named Plaintiff

_____     Dated: _____
Alandrea Ellwanger
Named Plaintiff

_____     Dated:_____
April Endicott
Named Plaintiff

_____     Dated:_____
Meghan Martin
Named Plaintiff

_____     Dated:_____
Heather Nabity
Named Plaintiff

_____     Dated:_____
Troy Stauffer
Named Plaintiff

_____     Dated:_____
Nichole Walkinshaw
Named Plaintiff

DEFENDANTS:

_____     Dated:_____
NAME
CommonSpirit Health

_____     Dated: _9/22/2022_
NAME    Aaron Austin
CHI Health

_____     Dated: _9/22/2022_
NAME    Aaron Austin
Saint Elizabeth Regional Medical Center

DATED: September 27, 2022

DEFENSE COUNSEL AS TO FORM AND
CONTENT

_____

R. Joseph Barton
BLOCK & LEVITON LLP
1633 Connecticut Ave. NW
Suite 200
Washington, DC 20009
Tel: (202) 734-7046
jbarton@blockesq.com

_____

Karen K. Cain
POLSINELLI PC
900 W. 48th Place, Ste. 900
Kansas City, MO 64112
(816)753-1000
Fax: (816) 753-1536
kcain@polsinelli.com

*Attorneys for Defendants*

_____

Vincent M. Powers
POWERS LAW
411 South 13th Street, Suite 300
Lincoln, NE 68508
Tel: (402) 474-8000
powerslaw@me.com

_____

Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H Street NE
Washington, D.C. 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com

*Attorneys for Plaintiffs*

DATED: July ___, 2022                               DEFENSE COUNSEL AS TO FORM AND
                                                    CONTENT


_____                         _____
R. Joseph Barton                                    Karen K. Cain
BLOCK & LEVITON LLP                                 POLSINELLI PC
1633 Connecticut Ave. NW                            900 W. 48th Place, Ste. 900
Suite 200                                           Kansas City, MO 64112
Washington, DC 20009                                (816)753-1000
Tel: (202) 734-7046                                 Fax: (816) 753-1536
jbarton@blockesq.com                                kcain@polsinelli.com

                                                    *Attorneys for Defendants*


_____
Vincent M. Powers
POWERS LAW
411 South 13th Street, Suite 300
Lincoln, NE 68508
Tel: (402) 474-8000
powerslaw@me.com


_____
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H Street NE
Washington, D.C. 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com


*Attorneys for Plaintiffs*

DATED: September ___, 2022

DEFENSE COUNSEL AS TO FORM AND CONTENT

_____
R. Joseph Barton
BLOCK & LEVITON LLP
1633 Connecticut Ave. NW
Suite 200
Washington, DC 20009
Tel: (202) 734-7046
jbarton@blockesq.com

_____
Vincent M. Powers
POWERS LAW
411 South 13th Street, Suite 300
Lincoln, NE 68508
Tel: (402) 474-8000
powerslaw@me.com

_____
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H Street NE
Washington, D.C. 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com

*Attorneys for Plaintiffs*

_____
Karen K. Cain
POLSINELLI PC
900 W. 48th Place, Ste. 900
Kansas City, MO 64112
(816)753-1000
Fax: (816) 753-1536
kcain@polsinelli.com

*Attorneys for Defendants*

DATED: September ___, 2022

DEFENSE COUNSEL AS TO FORM AND CONTENT

_____
R. Joseph Barton
BLOCK & LEVITON LLP
1633 Connecticut Ave. NW
Suite 200
Washington, DC 20009
Tel: (202) 734-7046
jbarton@blockesq.com

_____
Karen K. Cain
POLSINELLI PC
900 W. 48th Place, Ste. 900
Kansas City, MO 64112
(816)753-1000
Fax: (816) 753-1536
kcain@polsinelli.com

*Attorneys for Defendants*

_____
Vincent M. Powers
POWERS LAW
411 South 13th Street, Suite 300
Lincoln, NE 68508
Tel: (402) 474-8000
powerslaw@me.com

_____
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H Street NE
Washington, D.C. 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com

*Attorneys for Plaintiffs*