IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NICHOLE WALKINSHAW; TYSHA BRYANT; APRIL ENDICOTT; HEATHER NABITY; MEGHAN MARTIN; ALANDREA ELLWANGER; TROY STAUFFER, and all other similarly situated former or current employees of Defendant,<br><br>Plaintiffs,<br><br>vs.<br><br>COMMONSPIRIT HEALTH f/k/a CATHOLIC HEALTH INITIATIVES; CHI NEBRASKA d/b/a CHI HEALTH; and SAINT ELIZABETHS REGIONAL MEDICAL CENTER,<br><br>Defendants. | NO. 4:19CV3012<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF SETTLEMENT |

Upon consideration of Plaintiffs' Motion for Class Certification and Preliminary Approval of Settlement, Filing 318, and the relevant parts of the record, the Motion is GRANTED and hereby ORDERED as follows:

**Class Certification**

1. For settlement purposes, Count II is hereby certified pursuant to Rule 23(a) and Rule 23(b)(3) on behalf of the "Class" defined as follows:

All persons who are or were alleged to be jointly or severally employed by CommonSpirit Health and/or by its predecessor Catholic Health Initiatives, CHI Health, and/or SERMC, as medical nurses in the State of Nebraska, who were paid an hourly wage, and who were subject to the on-call practice or policy respecting compensation for working remotely while on an on-call shift, from February 6,

1

2015 through April 11, 2022, at the following locations: the CHI Health Laboratory in Omaha, Nebraska; Creighton University Medical Center in Omaha, Nebraska; Good Samaritan Hospital in Kearney, Nebraska; Immanuel Hospital in Omaha, Nebraska; Lakeside Hospital in Omaha; Midlands Hospital in Papillion, Nebraska; CHI Health Nebraska Heart in Lincoln, Nebraska; CHI Health – Plainview in Plainview, Nebraska; CHI Health in Schuyler, Nebraska; SERMC; Saint Francis Hospital in Grand Island, Nebraska; and CHI Health – Saint Mary's in Otoe, Nebraska.

2. For settlement purposes, Counts III, IV, and VII are hereby certified pursuant to Rule 23(a) and Rule 23(b)(3) on behalf of the "2017 Subclass" of the Class defined as follows:

All persons who are a Class Member and were subject to the on-call policy of Defendants respecting compensation for work performed remotely while on an on-call shift from June 1, 2017 until September 30, 2018 at the following locations: Creighton University Medical Center; Good Samaritan Hospital in Kearney, Nebraska; Immanuel Hospital in Omaha, Nebraska; Lakeside Hospital in Omaha; Midlands Hospital in Papillion, Nebraska; Saint Elizabeth Medical Center in Lincoln, NE; and Saint Francis Hospital in Grand Island, Nebraska or at another location subject to a similar policy.

3. For settlement purposes, Counts V, VI, and VII are hereby certified pursuant to Rule 23(a) and Rule 23(b)(3) on behalf of the "2016 Subclass" of the Class defined as follows:

All persons who are a Class Member and were subject to the on-call policy of Defendants respecting compensation for work performed remotely while on an on-

call shift from March 1, 2016 until May 31, 2017, at Saint Elizabeth Regional Medical Center in Lincoln, NE or at another location subject to a similar policy.

4. The Court finds that Counts II-VII satisfy the requirements of Rule 23(a) as follows:

    a. The Class and the Subclasses are each so numerous that joinder is impracticable. The Class consists of thousands of individuals. The 2017 Subclass and the 2016 Subclass (collectively "the Subclasses") each consist of at least hundreds of individuals.

    b. Each claim raises common questions of law and fact that are capable of common answers. These common questions include, for example, (a) whether Defendants violated Neb. Rev. Stat. § 48-1203 by failing to pay minimum wage to the Class while Class Members were on call (Count II); (b) whether Defendants violated Neb. Rev. Stat. §§ 48-1229 and 48-1230 by refusing to timely pay wages at the agreed-upon rate under Defendants' written policies to the Subclasses for on-call work performed (Counts III & V); (c) whether Defendants breached the terms of their employment contract with the Subclasses by failing to pay wages for on-call work performed (Counts IV & VI); and (d) whether Defendants were unjustly enriched as a result of their failure to pay the Subclasses in accordance with their written policies and the Subclasses' receipt of lower compensation for on-call work (Count VII).

    c. Plaintiffs' claims are typical of those the Class because they arise from the same event, practice and/or course of conduct of Defendants' alleged failure to pay minimum wage to the Class. Plaintiffs' claims are typical of those of the Subclasses because they arise from the same event, practice and/or course of conduct of Defendants' alleged failure to follow their own written policies.

    d.  Plaintiffs' interests share common interests with the members of the Class and Subclasses. Plaintiffs have retained counsel with extensive experience litigating class actions including wage-and-hour class actions. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

  5.  The Court finds that Counts II-VII satisfy the requirements of Rule 23(b)(3) as follows:

    a.  Predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Predominance does not require "a plaintiff seeking class certification to prove that each element of her claims is susceptible to classwide proof." *Amgen*, 568 U.S. at 469 (citation and internal quotation marks omitted). "When there are issues common to the class that predominate, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, *such as damages* or some affirmative defenses peculiar to some individual class members.'" *Day v. Celadon Trucking Services, Inc.*, 827 F.3d 817, 833 (8th Cir. 2016) (quoting *Tyson Foods*, 577 U.S. at 453; emphasis added by Eighth Circuit). Common questions such as the following predominate with respect to Counts II-VII because the Class and the Subclasses are each unified by common issues of law and fact: whether Defendants failed to pay the Class a minimum wage for on-call work (Count II); whether Defendants violated Neb. Rev. Stat. §§ 48-1230 and 48-1231 by failing to pay timely wages for on-call work performed (Counts II, III, and V); whether Defendants failed to pay wages for on-call work pursuant to Defendants' written policies

4

(Counts III & V); whether Defendants breached their employment contract with the Subclasses (Counts IV & VI); and whether Defendants were unjustly enriched (Count VII).

      b.     A class action is superior to other methods of adjudication because the Settlement provides the Class and Subclasses with the opportunity to obtain prompt and cost-effective relief, and Class Members likely have limited resources to prosecute individual actions given the relatively small size of the claims.

6.     Plaintiffs Nichole Walkinshaw, Tysha Bryant, April Endicott, Heather Nabity, Meghan Martin, Alandrea Ellwanger, and Troy Stauffer are appointed the representatives of the Class and Subclasses.

7.     R. Joseph Barton of Block & Leviton LLP, Vince Powers of Powers Law, and Nicholas Migliaccio and Jason Rathod of Migliaccio & Rathod LLP are appointed Co-Lead Class Counsel.

**Preliminary Approval**

8.     Preliminary approval is the first step in the class settlement process. The request for preliminary approval only requires an "initial evaluation" of the fairness of the proposed settlement. Manual for Complex Litigation § 21.632 (4th ed. 2004). The purpose of preliminary approval is to determine "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing." William B. Rubenstein et al., Newberg on Class Actions § 13:10 (5th ed. 2013).

9.     The request for preliminary approval only requires an "initial evaluation" of the fairness of the proposed settlement. *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Cullan and Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2016 WL 5394684, at *6 (D. Neb. Sept. 27, 2016) (citing same section of *Manual for Complex Litigation* § 21.632). In granting preliminary

approval, the Court considers "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing." *Id*. "In making that determination, courts consider the terms of the settlement as compared to the merits of the plaintiff's case; the complexity, expense, and likely duration of litigating the matter to judgment; the defendant's financial condition; and the amount of opposition to the settlement, if any." *Id*. A court may also consider "procedural fairness to ensure the settlement is 'not the product of fraud or collusion,'" the "experience and opinion of counsel on both sides," "whether a settlement resulted from arm's length negotiations, and whether a skilled mediator was involved," and "the settlement's timing, including whether discovery proceeded to the point where all parties were fully aware of the merits." *Powers v. Credit Mgt. Services, Inc.*, No. 8:11CV436, 2016 WL 3983250, at *2 (D. Neb. July 25, 2016) (stating same).

10. Potentially considerable risks exist for Plaintiffs at class certification and FLSA decertification and as to both liability and damages at trial. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (finding that the court must not substitute "its own judgment as to optimal settlement terms for the judgments of the litigants and their counsel"). The Class Settlement Fund represents more than a fraction of the potential recovery and substantial value given the attendant risks of litigation. The Court finds that the terms of the Settlement, weighed against the merits of Plaintiffs' case, favor preliminary approval.

11. The Court finds that the complexity, expense, and likely duration of litigating the matter to judgment favors settlement. *See Cullan and Cullan LLC*, 2016 WL 5394684, at *7 (granting preliminary approval where "the settlements can deliver a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal").

6

12. Settlement negotiations took place following substantial discovery. The parties reached agreement only after arm's length negotiations and two full-day mediation sessions, first with a private mediator and then with Magistrate Judge Zwart. The Court finds that the Settlement is the result of informed, non-collusive, and arms' length negotiations that were conducted by experienced counsel after substantial discovery. *See Klug v. Watts Regulator Co.*, No. 8:15CV61, 2016 WL 7156478, at *7 (D. Neb. Dec. 7, 2016) (finding the settlement agreements were results of arm's length negotiations "involving a skilled mediator" that took place after "[d]iscovery has progressed to a sufficient point").

13. The parties are not aware of any financial difficulty of Defendants in paying the Settlement Fund. Plaintiffs' counsel are not presently aware of any Class Members who intend to oppose the Settlement. After notice issues and Class Members have an opportunity to participate, object, or opt out, the Court will be in a better position to assess the extent of the support from Class Members.

14. The Court finds that there are no obvious deficiencies and no grounds to doubt the fairness of the Settlement Agreement and concludes that the proposed Settlement Agreement is within the range of possible settlement approval, such that notice to the class is appropriate.

**Final Certification of FLSA Collective**

15. At the second certification stage, "a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Morales v. Greater Omaha Packing Co., Inc.*, No. 8:08-cv-161, 2011 WL 2881408, at *6 (D. Neb. Apr. 5, 2011).

16. The Court finds that the common factual and employment settings of the Named Plaintiffs and members of the FLSA Collective, the absence of any unique defense to their FLSA claims, and the fairness and procedural considerations weight in favor of maintaining certification of the FLSA Collective. The Court concludes that members of the FLSA Collective are similarly situated and final certification is appropriate for settlement purposes.

**Preliminary Findings with respect to the FLSA Collective Action Settlement**

17. A settlement of an FLSA claim in a private cause of action requires court approval. *Sporven v. Safe Haven Sec. Services, Inc.*, No. 8:20CV3032, 2021 WL 3172021, at *2 (D. Neb. July 27, 2021) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA." *Id.* "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation." *Grove v. Meltech, Inc.*, No. 8:20CV193, 2022 WL 119180, at *2 (D. Neb. Jan. 12, 2022).

18. A bona fide wage dispute exists when an employee and an employer disagree "with respect to coverage or amount due under the [FLSA]." *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 703 (1945); *Adams v. City of Kansas City, Missouri*, No. 19-CV-00093, 2022 WL 949815, at *3 (W.D. Mo. Mar. 29, 2022) (citing *Brooklyn Savs. Bank*). "The threshold for establishing whether a bona fide dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and liability of the issues." *Netzel v. W. Shore Group, Inc.*, No. 16-CV-2552, 2017 WL 1906955, at *4 (D. Minn. May 8, 2017).

19. Here, the FLSA claims under Count I of the Named Plaintiffs and the FLSA Opt-Ins allege that Defendants failed to pay them overtime for work performed remotely during an on-call shift ("Remote On-Call Work") when their work performed at the hospital combined with their Remote On-Call Work exceeded forty hours in a workweek and that Defendants failed to maintain time records of Remote On-Call Work and their FLSA violations were willful. SAC ¶¶ 127-37; *id*. ¶¶ 56-59, 123. Defendants' Answers deny that they have violated the FLSA and that they owe the FLSA Plaintiffs any wages or damages. Doc. # 122 ¶¶ 127-37; Doc. # 183 ¶¶ 127-37. The Court is inclined to find that bona fide disputes exist between the FLSA Plaintiffs and Defendants over the FLSA claims. *See Grove*, 2022 WL 119180, at *3 (finding existence of a bona fide dispute where "[t]he settlement class alleges that defendant failed to pay wages required under the FLSA and the defendants deny any wrongdoing and maintain they complied at all times with the FLSA").

20. "Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms' length settlement as indicia of fairness." *Grove*, 2022 WL 119180, at *2. Courts should take into account "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation" in evaluating a proposed FLSA settlement. *Id*. As such, "a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id*. (citation and quotation marks omitted).

21. As stated above, the Settlement is the result of informed, non-collusive, and arms' length negotiations that were conducted by experienced counsel after substantial discovery. The assistance of a mediator and a magistrate judge reinforces that the Settlement Agreement is non-collusive. *Netzel*, 2017 WL 1906955, at *6 ("Courts have held that negotiations involving counsel

9

and a mediator, like the present case, raise a presumption of reasonableness."). A settlement at this juncture of the litigation is more beneficial to the FLSA Plaintiffs and the Defendants, given the time, expense, and uncertainty of further litigation. The Settlement Agreement obviates the real risks to both parties that are inherent to the continued litigation of the matter. As such, the Court finds that the Settlement is entitled to a presumption of fairness.

22. The Court finds that there are no grounds to doubt the fairness of the Settlement Agreement to resolve bona fide disputes over the FLSA claims. However, since the FLSA involves only one stage of approval, the Court will reserve its formal determination of approval of the FLSA claims in the Settlement until the time for determining final approval of the Rule 23 state law claims.

**Class Action Settlement Notice**

23. The Court approves the Proposed Notice of Collective and Class Action Settlement ("Class Notice"), which is attached to the Declaration of Vincent Cheng, and directs its distribution to the Settlement Class.

24. The content of the Class Notice fully complies with due process and Federal Rule of Civil Procedure 23.

25. Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), a notice must provide: the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion,

stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Notice sent by first class mail or email to each member of the class is sufficient when the names and the mailing addresses or email addresses of the class members are known. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974); *Mazur v. Natl. Account Sys. of Omaha, LLC*, 8:14CV84, 2014 WL 4264798, at *2 (D. Neb. Aug. 29, 2014) (finding that notice by first class mail "constitutes the best notice practicable under the circumstances"); *Becker v. Wells Fargo & Co.*, No. 0:20-cv-2016, 2022 WL 1210948, at *2 (D. Minn. Apr. 25, 2022) (approving "the method of giving direct notice to Settlement Class members by email and, if no email address is available, by U.S. mail"). Here, the names and email and/or mailing addresses of the Class Members are known, and thus notice to the Class by email or, if it is not known or available, by first class mail is appropriate.

26. A proper notice should include "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B); *see Manual for Complex Litigation, supra*, § 21.312. Here, the proposed notice to the Class provides information on these subjects and informs Class Members about their rights under the Settlement as well as their right to be heard at the final Fairness Hearing.

27. The Court appoints CPT Group as the Settlement Administrator for providing Class Notice and otherwise assisting in administration of the Settlement. The Settlement Administrator shall provide notice to the Class no later than November 7, 2022. The Settlement Administrator

11

will file a declaration with the Court confirming that the Class Notice was sent in accordance with this Order by December 5, 2022.

**Plan of Allocation**

28. "A district court's principal obligation in approving a plan of allocation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *In re Resideo Techs., Inc., Securities Litig.*, No.19-CV-2863, 2022 WL 872909, at *4 (D. Minn. Mar. 24, 2022) (quoting *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 326 (3d Cir. 2011)). "A plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.'" *Yarrington v. Solvay Pharm.*, Inc., No. 09-CV-2261, 2010 WL 11453553, at *10 (D. Minn. Mar. 16, 2010) (quoting *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005))."[I]t is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims . . . ." *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *10; *In re Centurylink Sales Practices and Securities Litig.*, No. CV 18-296, 2021 WL 3080960, at *7 (D. Minn. July 21, 2021) (same).

29. The proposed Plan of Allocation provides a minimum payment to Class Members who do not submit a Claim Form and calculates each Authorized Claimant's share of the Remaining Net Settlement Amount based on the claims the Claimant has and the relative values, strengths, and weaknesses of the different subgroups and categories of claims in the case. The Court finds that the Plan of Allocation is fair, reasonable and adequate and preliminarily approves the Plan of Allocation.

**Class Action Settlement Procedures**

30. Any Class Member who wishes to object to this Settlement or otherwise to be heard concerning this Settlement shall timely inform the District Court in writing of his or her intent to object to this Settlement and/or to appear at the Fairness Hearing by following the procedures set forth in the Class Notice ("Objection"). To be considered timely, the Objection must bear a postmark that is no later than December 21, 2022. The Objection must set forth at least the following: (a) the full name, address and contact information for the Objector and the name and address of counsel (if represented by counsel); (b) the case name and number; (c) a written statement of any and all objections to this Settlement and include any supporting papers and arguments; (d) the signature of the Objector (or his or her attorney).

31. Any Class Member or other person who fails to make his, her or its Objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed settlement as incorporated in the Settlement Agreement, to the Judgment, to the Plan of Allocation, to the award of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel, unless otherwise ordered by the Court. To the extent that any objections or comments are transmitted to the Settlement Administrator, or the Parties' counsel, but are not filed with the Court, those persons are hereby directed to file such objections with the Court.

32. Any Class Member who wishes to be excluded from the Class and the Settlement will submit a written request for exclusion with the Settlement Administrator ("Request for Exclusion") that is postmarked that is no later than December 21, 2022 and set forth at least the following: (a) the full name, address and contact information for the Class Member (b) a clear statement that the Class Member wishes to be excluded; (c) the signature of the Class Member.

Any requests for exclusion will be submitted to the Settlement Administrator and will be filed with the Court.

33. The deadline for Class Members to submit a Claim Form to the Settlement Administrator is March 6, 2023.

34. The Settlement Fund will be deemed and considered to be *in custodia legis* of the Court and will remain subject to the jurisdiction of the Court until such time as such funds will be distributed pursuant to the Settlement Agreement and/or the order of the Court.

35. Class Counsel will file any Motion for Attorneys' Fees, Costs, and any motion for Class Representative Service Award by December 5, 2022.

36. Class Counsel shall file a Motion for Final Approval of the Settlement by January 31, 2023.

37. The Court will hold a final fairness hearing on February 10, 2023, at 9:00 am at the Roman L. Hruska Federal Courthouse at 111 South 18th Plaza, Suite 3190, Omaha, NE 68102. The Court may continue the date of the final fairness hearing if necessary without further notice to the Class, but any such continuance will be publicized on the settlement website.

IT IS SO ORDERED.

Dated this 6th day of October, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge